IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CYNTHIA ANNE DIVEGLIA,           :
formerly CYNTHIA ANNE             :
KAYLOR,                           :        No. 1:CV-00-1342
        Plaintiff,       :
      v.               :        (Judge McClure)
                          :
NORTHWESTERN MUTUAL LIFE :
INSURANCE COMPANY,                :
        Defendant.       :

# **M E M O R A N D U M**

March 23, 2004

## **BACKGROUND:**

On July 28, 2000, plaintiff, attorney Cynthia Anne Diveglia, initiated this civil action by filing a two-count complaint against defendant, Northwestern Mutual Life Insurance Company. Plaintiff alleged a breach of contract claim (Count I) and a bad faith claim under 42 Pa. C.S.A. § 8371 (Count II), based on defendant's termination of her disability benefits under a disability income policy purchased from defendant, which was effective July 28, 1994.

On June 6, 1997, plaintiff filed a claim for disability benefits after being diagnosed with, and treated for, breast cancer. Defendant approved her claim on August 11, 1997. Plaintiff returned to work in a limited capacity in February 1998,

-1-

after which time defendant made repeated requests for additional information regarding plaintiff's medical condition, finances, and occupational status. She refused to provide much of the requested information on the ground that it was irrelevant given that defendant had already determined that she was totally disabled. Finally, on March 17, 2000, defendant ceased paying total disability benefits on the ground that the medical documentation provided by plaintiff did not support ongoing total disability benefits.

Four motions are presently before the court. Defendant has filed a motion for summary judgment on both claims. Also pending are defendant's motion to compel discovery, plaintiff's motion to compel discovery, and plaintiff's motion *in limine* and motion to exclude defendant's expert testimony.

For the following reasons, we will grant in part defendant's motion for summary judgment. We will also grant in part defendant's motion to compel discovery. We will deny plaintiff's motion to compel discovery, and will defer ruling on plaintiff's motion *in limine*.

## DISCUSSION:

### I. Standard of Review

Summary judgment is appropriate if there are no genuine issues of material

fact in dispute and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Beers-Capitol v. Whetzel, 256 F.3d 120, 130 n.6 (3d Cir. 2001).

An issue is "genuine" if a reasonable jury could find for either party. See Anderson, 477 U.S. at 249. "Material" facts are those that might affect the outcome of the case. Id. at 248.

Initially, the moving party bears the burden of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. "It can discharge that burden by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party points to evidence demonstrating that no genuine issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact does exist and that a reasonable fact-finder could rule in its favor. Ridgewood Bd. of Educ. v. N.E, ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). Although "[s]peculation and conclusory

allegations do not satisfy this duty," <u>Ridgewood</u>, 172 F.3d at 252 (citing <u>Groman</u>

<u>v. Township of Manalapan</u>, 47 F.3d 628, 637 (3d Cir. 1995)), all inferences are

made in a light most favorable to the nonmoving party.  <u>Saucier v. Katz</u>, 533 U.S.

194, 201 (2001); <u>Carter v. Exxon Co. USA</u>, 177 F.3d 197, 202 (3d Cir. 2000).

## II. Statement of Relevant Facts

We briefly recount the relevant, material facts.  To the extent that the parties

disagree about some of the factual details, we recite the facts in the light most

favorable to plaintiff, the non-moving party.

Plaintiff purchased a disability income policy from defendant that was

effective on July 28, 1994 (the Policy).  The Policy insures against both "total" and

"proportionate" disability.  Until the end of the Initial Period (which runs until July

28, 2016 in plaintiff's case), plaintiff is considered totally disabled "when unable to

perform the principal duties of the regular occupation."  (Def.'s App. II Mot.

Summ. J., Rec. Doc. No. 30, Ex. A at 777, § 1.4.)  "Regular occupation" means

"the occupation of the Insured at the time the Insured becomes disabled."  (<u>Id.</u>,

§ 1.3.)  The Policy provides that the "specialty of trial law" may be plaintiff's

regular occupation if she is "exclusively engaged" in that specialty.  (<u>Id.</u>)

According to defendant's manual, "[t]here is only one principal duty for the trial

law specialty – the ability to advocate in court on behalf of a client."  (<u>See</u> Pl.'s

-4-

App. Opp'n Def's Mot. Summ. J., Rec. Doc. No. 41, Ex. 8 at 12.)

Sometime in 1997, plaintiff was diagnosed with, and treated for, breast cancer, and she applied for disability benefits under the Policy. Defendant approved her claim for total disability benefits on August 11, 1997. Defendant's approval was based on plaintiff's regular occupation being the specialty practice of trial law.

Sometime in February of 1998, plaintiff returned to work in a limited, non-trial capacity. Subsequently, by letter dated March 6, 1998, she revoked all prior medical authorizations, but indicated that she would sign more limited authorizations as needed.

A string of correspondences between the parties followed, in which defendant requested that plaintiff provide medical, tax, billing, financial, and occupational information. Plaintiff largely refused to provide this information on the ground that such information was irrelevant to her classification as totally disabled. She only continued to provide limited medical information, most notably the opinion of Dr. Andrew Seidman. Although Dr. Seidman opined that plaintiff might eventually be able to resume her duties as a trial lawyer, he did not recommend that she do so because the resumption of trial work had "the potential for increased fatigue and stress that may inevitably increase her risk of [cancer]

recurrence." (Def.'s App. I Mot. Summ. J., Rec. Doc. No. 30, Ex. A at 376.)

Defendant's claims representatives discussed Dr. Seidman's opinion with defendant's in-house medical staff, including registered nurse Patricia Sheehan and Dr. Randolph Powell. Nurse Sheehan and Dr. Powell were unaware of any objective medical basis for Dr. Seidman's opinion, and recommended a medical review of plaintiff's records.

Throughout 1999, the parties continued to spar over what information plaintiff was required to furnish to defendant. Plaintiff adamantly insisted that she continued to provide all necessary, relevant information and would not provide additional medical, financial, or occupational information. Through her counsel, she also alluded that defendant's repeated requests amounted to bad faith. Plaintiff further claimed to have copies of medical studies which supported Dr. Seidman's opinion. Plaintiff, though, never sent these studies to defendant, nor did defendant discover these studies on its own.

By letter dated March 27, 2000, Dr. Seidman restated his opinion that the stress of trial work could lead to a recurrence of cancer. Shortly thereafter, defendant's medical personnel concluded that "there is no current objective evidence to support continuing work limitations." (Rec. Doc. No. 30, Ex. A at 53.) Consequently, defendant informed plaintiff by letter dated April 14, 2000, that her

disability benefits were being discontinued.   Defendant invited plaintiff to submit "any additional information or documentation she would like [defendant] to consider in support of her claim."  (Rec. Doc. No. 30, Ex. A at 51.)  Plaintiff, under the belief that she had no duty under the Policy to research, photocopy, and send any medical studies to defendant, did not do so.  Plaintiff then initiated this action.

### III. Plaintiff's Claims

We now turn to the claims in this case in the order in which the parties addressed them.

### A. Bad Faith

Under Pennsylvania law, there is no common law remedy for bad faith on the part of an insurer.  See Keefe v. Prudential Prop. & Cas. Ins. Co., 203 F.3d 218, 224 (3d Cir. 2000) (citing D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 431 A.2d 966 (Pa. 1981)).  There is, however, a statutory remedy, which provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371.

Bad faith has been defined as "'[a]ny frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent.'" Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1997) (quoting Black's Law Dictionary 139 (6th ed. 1990)).  Generally, an insurer's failure to pay a claim amounts to bad faith when its conduct "imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.'"  Id.  (quoting Black's Law Dictionary 139 (6th ed. 1990)). Although an insurer must "act with the utmost good faith towards its insured," the insurer "is not required actively to submerge its own interest."  Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567, 571 (E.D. Pa. 2000).

To successfully oppose an insurer's motion for summary judgment, an insured must show by clear and convincing evidence, see Terletsky, 649 A.2d at 688, that: (1) the insured lacked a reasonable basis for denying benefits under the policy; and (2) the insured knew or recklessly disregarded its lack of a reasonable basis in denying the claim.  Keefe, 203 F.3d at 225; Klinger v. State Farm Mut. Automobile Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997); Kilmer v. Connecticut Indem. Co., 189 F. Supp. 2d 237, 244 (M.D. Pa. 2002).

-8-

The nub of plaintiff's bad faith claim is that defendant initially found her totally disabled, and that the information she did provide was sufficient to establish her total disability. Therefore, she argues, so long as she does not go to court and advocate, she remains totally disabled as a trial lawyer. Defendant, on the other hand, argues that the Policy permitted defendant to seek additional information to substantiate the continuing payment of disability benefits. Plaintiff counters that the Policy is ambiguous as to what additional information defendant can request. Additionally, plaintiff contends that much of the information which defendant sought was not relevant to her classification as totally disabled.

In Pennsylvania, insurance contract interpretation is a matter of law for the court to decide. See, e.g., Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999); Wagner v. Erie Ins. Co., 801 A.2d 1226, 1231 (Pa. Super. Ct. 2002). Our goal is to divine the parties' intentions as embodied by the language of the Policy. Neuhard v. Travelers Ins. Co., 831 A.2d 602, 604 (Pa. Super. Ct. 2003).

Plaintiff urges the court to find that numerous provisions of the Policy are ambiguous, and therefore the Policy should be construed against the insured. See, e.g., Scirex Corp. v. Federal Ins. Co., 313 F.3d 841, 848 (3d Cir. 2002); Neuhard, 831 A.2d at 604. Ambiguity only exists, though, if reasonable persons, in

construing the Policy as a whole, could fairly determine that the Policy's language is capable of supporting more than one meaning.  See, e.g., Hofkin v. Provident Life & Accident Ins. Co., 81 F.3d 365, 371 (3d Cir. 1996); Neuhard, 831 A.2d at 605.  We should not strain to read ambiguity in the Policy's language, and we should avoid finding ambiguity if possible.  See, e.g., Clarendon Nat'l Ins. Co. v. City of York, Pa., 290 F. Supp. 2d 500, 504 (M.D. Pa. 2003); Tyler v. Motorists Mutual Ins. Co., 779 A.2d 528, 531 (Pa. Super. Ct. 2001).  If the Policy's words are unambiguous, we are to ascribe to them their ordinary and plain meaning.  See Pa. C.S.A. § 1903(a); Clarendon, 290 F. Supp. 2d at 504.

Plaintiff insists that not only are the Policy's proof of loss provisions ambiguous, but that defendant had no right under the Policy to request any information beyond that which she provided to defendant.  To this end, plaintiff suggests that it was unreasonable (and therefore bad faith), for defendant to request additional information subsequent to its initial determination that plaintiff was totally disabled.  Plaintiff also takes issue with defendant's refusal to accept Dr. Seidman's opinion that stress induced by trial work could lead to a recurrence of cancer.  Accordingly, plaintiff contends that Dr. Seidman's opinion, along with the other information that she provided, establishes that she is totally disabled under the Policy.

We disagree with plaintiff's argument. There are a number of reasons for an insurer to request periodically additional information from an insured, such as to ascertain whether her financial, medical, or occupational circumstances have changed. See Mowers v. Paul Revere Life Ins. Co., 204 F.3d 372, 375 (2d Cir. 2000); see also O'Donnell ex rel. Mitro v. Allstate Ins. Co., 734 A.2d 901, 907-09 (Pa. Super. Ct. 1999). The recent case of Krisa v. Equitable Life Assurance Society, 113 F. Supp. 2d 694, 704 (M.D. Pa. 2000), is instructional. The Krisa case also involved an attorney alleging breach of contract and bad faith claims based on an insurer's discontinuance of total disability benefits. The insured in Krisa alleged that, to rebut a bad faith claim, the insurer had the burden of showing that objective information supported its decision to discontinue total disability benefits. Chief Judge Vanaskie disagreed with the insured, stating that the proper focus of a bad faith inquiry is on the nature of the insurer's investigation, as framed by the insurance policy's terms. Krisa, 113 F. Supp. 2d at 704. Thus, he concluded that even if a court determines that an insurer incorrectly discontinued benefits, summary judgment may still be entered in favor of the insured on a bad faith claim. Id.

We therefore turn to whether defendant's investigation, via its requests for additional information, was reasonable in view of the Policy's provisions. The

-11-

Policy's language is clear as to what information defendant may require:

> **Proof Of Loss.**  For a claim to be payable, *the Company must be provided with satisfactory written proof of loss. This is information that the Company deems necessary* to determine whether benefits are payable, and if so, the amount of the benefits.  The proof of loss will include information about the Insured's health, occupational duties, income both before and after the disability started (including income tax returns for the Insured and the businesses in which the Insured has or had an interest), overhead expenses and disability benefits *along with other information as may be required by the Company from time to time.  The company will also need to be provided information as described below under "Other Requirements."*
>
> . . . .
>
>    The Company will furnish additional claim forms from time to time while a claim for monthly benefits continues.
>
>    Written proof of loss must be given the Company within 90 days after the end of each monthly period for which benefits are claimed. . . .

(Rec. Doc. No. 31, Ex. A at 782, § 5.1 (emphasis added).)  Clearly, the Policy contemplates that defendant may require an array of additional information, such as information regarding plaintiff's "health, occupational duties, income both before and after the disability started (including income tax returns for the Insured and the businesses in which the Insured has or had an interest), overhead expenses and disability benefits . . . ."  (Id.)

Moreover, the "other requirements" mentioned in the proof of loss provision explicitly encompass much of the information that plaintiff deems "irrelevant" to her

classification as totally disabled:

> **Other Requirements.**
> - **!** **Authorizations.** From time to time, the Company will furnish the Insured with authorizations to obtain information. These authorizations must be signed by the Insured and returned to the Company.
> - **!** **Medical Examination**. The Company may have the Insured examined by a health care practitioner.
> - **!** **Personal Interview.** The Company may conduct a personal interview of the Insured.
> - **!** **Financial Examination.** The Company may have the financial records of the Insured or the Owner examined.
>
> Any examination or interview will be performed:
> - **!** at the Company's expense;
> - **!** by a health care practitioner, interviewer or financial examiners of the Company's choice; and
> - **!** as often as is reasonably necessary in connection with a claim.

(Id.)

Thus, under the Policy, defendant had the right to request from plaintiff further medical, financial, and occupational information. Plaintiff points to no provision in the Policy which *per se* prohibits defendant from requesting additional information after the initial determination of total disability. Granted, it is doubtless that defendant could not request an inordinate amount of information to delay payment of benefits to plaintiff. E.g., Ania v. Allstate Ins. Co., 161 F. Supp. 2d 424, 430 (E.D. Pa. 2001). Yet defendant did not delay payment of benefits.

-13-

Rather, defendant paid benefits to plaintiff until it determined, after numerous requests for additional information, that plaintiff was not totally disabled.

Morever, the additional information requested by defendant was not, as plaintiff contends, irrelevant. Defendant's requests for information were for the purpose of determining whether plaintiff continued to be totally disabled. For example, defendant requested financial and billing information. (See, e.g., Rec. Doc. No. 31, Ex. A, at 551-52, 572-73, 586.) Such information is material to the determination of total disability because, as defendant's claims manual illustrates, a trial attorney is considered totally disabled when, *inter alia*, "all of his income is generated by litigation work." (Rec. Doc. No. 41, Ex. 8, at 4.) Plaintiff admits that she returned to work in a non-trial capacity in 1998. (See Def.'s Stmt. Mat. Facts, Rec. Doc. No. 29, at ¶¶24-25; Pl.'s Stmt. Mat. Facts, Rec. Doc. No. 39, at ¶25.) Surely defendant acted reasonably in trying to confirm whether plaintiff had returned to work in a non-trial capacity.

Defendant also requested, on multiple occasions, any medical evidence, such as the studies plaintiff claimed to possess on stress, that supported plaintiff's position as to her medical condition. (See Rec. Doc. No. 31, Ex. A, at 51, 340-41.) Plaintiff claims that she was under no obligation to "go to the medical library, find the studies, photocopy them, and send them to defendant." (Pl.'s Stmt. Mat.

-14-

Facts, Rec. Doc. No. 39, at ¶47.)  Plaintiff further claims that defendant's

personnel acted in bad faith, or were negligent, in failing to locate pertinent medical

studies on their own, (<u>see</u> Rec. Doc. No. 40, at 4), portions of which plaintiff has

provided to the court.  (<u>See</u> Rec. Doc. No. 41, Ex. 28.)

We are unpersuaded that defendant's failure to recognize these studies

amounts to bad faith.  Plaintiff cannot disavow an obligation to produce such

studies, given defendant's right to request  "other information" under the Policy.

Nor can defendant's failure to locate the studies be a basis for bad faith because,

absent any direct evidence that defendant's personnel knew of their existence, it

amounts to negligence, which is not a basis for bad faith.  <u>See</u>  <u>Frog, Switch &</u>

<u>Mfg. Co., Inc. v. Travelers Ins. Co.</u>, 193 F.3d 742, 751 n.9 (3d Cir. 1999); <u>Krisa</u>,

109 F. Supp. 2d at 321.  Besides, defendant might not have even requested the

medical studies if plaintiff had provided defendant with the other information.

Related to its requests for medical information were defendant's requests for

medical authorizations so that defendant could further evaluate plaintiff's position

regarding stress and cancer recurrence.  (<u>See e.g.</u>, Rec. Doc. No. 31, Ex. A at 500,

506, 511, 549, 555-56, 558-59, 572-73, 584-85.)  Not only are the authorizations

plainly with the scope of the Policy, but defendant is under no obligation to accept

blindly the opinion of plaintiff's treating physicians.  <u>See</u> <u>Bundy v. Nat'l Safety Life</u>

Ins. Co., 503 A.2d 417, 425 (Pa. Super. Ct. 1985); cf. Black & Decker Disability

Plan v. Nord, 538 U.S. 822, --, 123 S. Ct. 1965, 1972 (2003) (ruling that ERISA

plan administrators need not explain why they credit certain medical opinions over

that of treating physician).

      Thus, all of the requested information would further defendant's investigation

and evaluation of plaintiff's claim of total disability.  We pause at this point,

though, to examine whether plaintiff's obligation to furnish additional information

under the Policy is a continuing obligation or is only limited to when defendant

initially determines eligibility for total disability benefits.  Interspersed throughout

plaintiff's opposition brief are insinuations to the effect that, once she was initially

found to be totally disabled, that determination was dispositive and that defendant

could not evaluate the determination on an ongoing basis.  (See Pl.'s Br. Opp'n

Def.'s Mot. Summ. J., Rec. Doc. No. 40, at 1-2, 10, 14.)  The Policy may appear

to be ambiguous on this point because the definition of "total disability" does not

speak of continuous disability, i.e., it merely states that an insured is "totally

disabled when unable to perform the principal duties of the regular occupation."

(Rec. Doc. No. 31, Ex. A at 777, § 1.4.)

      The Policy's definition of "total disability" is unambiguous, however, when

we consider the Policy as a whole.  See Valenti v. Allstate Ins. Co., 243 F. Supp.

2d 221, 228 (M.D. Pa. 2003). The Policy's language plainly suggests that an initial determination of total disability is not dispositive. For one, the proof of loss section expressly provides for benefits to be paid monthly based on additional claims forms furnished by defendant for monthly benefits to continue. (See Rec. Doc. No. 31, Ex. A at 782, § 5.1.) Further, the Policy contemplates partial payment of benefits, e.g., "[w]hen a total disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of total disability." (Id., Ex. A at 778, § 2.2.) There is no way for a total disability benefit to be paid in part unless it is found that the insured is no longer totally disabled. In addition, § 1.2 provides that "[t]he Initial Period starts on the Beginning Date and continues, *while the Insured is disabled*, for the length of time shown on page 3." (Id., Ex. A at 777, § 1.2 (emphasis added).)

We therefore find that the Policy's unambiguous language reasonably supported defendant's requests for additional information. Consequently, defendant had a reasonable basis to discontinue plaintiff's total disability benefits. Plaintiff has not presented clear and convincing evidence that would lead a reasonable jury to conclude that defendant acted in bad faith. Accordingly, we will grant defendant's summary judgment motion with respect to plaintiff's bad faith claim.

-17-

## **B. Breach of Contract**

Plaintiff also claims that defendant breached the terms of the Policy by discontinuing her disability benefits despite her providing defendant with monthly requests for continuation of benefits and attending physicians' statements, which collectively she claims prove her total disability under the Policy.

To establish a breach of contract claim under Pennsylvania law, plaintiff must show: "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  Under the Policy, plaintiff is considered totally disabled "when unable to perform the principal duties of the regular occupation."  (Rec. Doc. No. 30, Ex. A at 777, § 1.4.)  "Regular occupation" means "the occupation of the Insured at the time the Insured becomes disabled."  (Rec. Doc. No. 30, Ex. A at 777, § 1.3) The Policy provides that the "specialty of trial law" may be plaintiff's regular occupation if she is "exclusively engaged" in that specialty.  (Id.)  According to defendant's manual, "[t]here is only one principal duty for the trial law specialty – the ability to advocate in court on behalf of a client."  (Rec. Doc. No. 41, Ex. 8 at 12.)

Defendant argues that plaintiff bears the burden of proving that she was

totally disabled and has not done so.  Defendant further argues that plaintiff's

failure to furnish the requested information amounts to a failure to abide by the

terms of the Policy (discussed above in Part III.A), under which plaintiff was

obligated to furnish defendant with any requested information.  In effect, defendant

contends that plaintiff's noncompliance excuses its obligations under the Policy.

While plaintiff does have the burden of proving that she was totally disabled

and that defendant breached the contract, see Doe v. Provident Life & Accident

Ins. Co., No. 96-3951, 1997 U.S. Dist. LEXIS 5462, at *4 (E.D. Pa. Apr. 23,

1997), she presents sufficient evidence to preclude summary judgment for

defendant.  She continued to provide requests for continuation of benefits, in which

she stated that she had not resumed her former trial duties.  Her attending physician

statements also indicated that she should not resume trial work because the stress

could cause a recurrence of cancer.

A reasonable jury could determine that, despite plaintiff's failure to provide

the requested information, plaintiff was still totally disabled based on the

information made available to defendant.  See Krisa, 113 F. Supp. 2d at 702, 704.

A reasonable jury could reach this result regardless of whether defendant's

evaluation and rejection of her evidence of total disability was reasonable for bad

faith purposes.  See Krisa, 113 F. Supp. 2d at 702, 704.

## IV. Other Pending Motions

Also pending are defendant's motion to compel discovery of a variety of information (Rec. Doc. No. 17), plaintiff's motion to compel defendant to answer plaintiff's second request for production of documents (Rec. Doc. No. 47), and plaintiff's motion *in limine* and motion to exclude defendant's expert testimony (Rec. Doc. No. 61). The court had previously indicated that it would extend the deadline for filing motions *in limine* upon disposition of other pending motions. (See Order dated Oct. 11, 2001, Rec. Doc. No. 60.) The court will now extend the deadline for motions *in limine*, and consequently, will not rule on the plaintiff's pending motion *in limine* until the end of the new deadline, so that all motions may be ruled on contemporaneously. Defendant may also file a brief in opposition to plaintiff's pending motion *in limine*. We therefore proceed only to analyze the merits of the parties' pending discovery motions.

### A. Defendant's Motion to Compel Discovery

Defendant timely filed a motion to compel discovery to its interrogatories and document requests. Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence." Id.  Relevance is broadly construed as "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437, U.S. 340, 351 (1978).

Defendant's interrogatories and document requests aim to uncover information related to, *inter alia*, plaintiff's medical, financial, and occupational status leading up to and following the initial determination of her total disability. Plaintiff's objections to defendant's interrogatories and document requests largely mirror her argument above, i.e., that the information sought is irrelevant.  Plaintiff also refused to make herself, her physicians, and her law firm's designee available for depositions because she claimed that  none of them would provide any relevant information.  (See Pl.'s Mem. Opp'n Def.'s Mot. Compel Disc., Rec. Doc. No. 23, at 14.)

We will not reiterate why the requested information is relevant, and why defendant had the right to request such information under the Policy, given our full exploration of these issues in Part III.A above.  Defendant is entitled to medical, financial, and occupational information regarding plaintiff.

We will, however, limit the information sought to that arising after defendant's initial determination that plaintiff was totally disabled.  It is undisputed

that defendant initially approved plaintiff's application for total disability benefits.

It was only after that initial determination that defendant began to encounter

resistance to its information requests directed toward plaintiff. Compare Krisa, 113

F. Supp. 2d at 703 (when initial determination is in question, information prior to

application for benefits relevant). Moreover, defendant does not raise an

affirmative defense that plaintiff fraudulently misrepresented any information when

she initially purchased the Policy or when she initially applied for total disability

benefits. (See Def.'s Ans., Rec. Doc. No. 6, at 3-5.)

Thus, we will only compel plaintiff to respond to those interrogatories and

document requests tailored to obtain medical, financial, and occupational

information arising after plaintiff's initial application for total disability benefits was

approved, namely: interrogatory 8 (identify types of cases handled after claim);

interrogatory 10 (identify non-litigation matters handled after claim); interrogatory

12 (identify all tasks performed after claim); interrogatory 14 (identify malpractice

coverage obtained after claim); interrogatory 18 (identify hours worked or billed

after claim); and interrogatory 20 (identify amount of money generated after claim).[1]

---

[1] Interrogatories 22-24 seek identification of, and other information regarding, all lay and expert witnesses to be utilized by plaintiff at trial. As plaintiff indicated that she will timely inform defendant of these persons, we see no reason to compel her to respond at this time.

Regarding defendant's document requests, we will grant defendant's motion with respect to discovery request ten (statements made to malpractice carrier and amount of work performed after claim), and discovery request eleven (any documents related to interrogatories), limited to those interrogatories listed above.

We also find it untenable that plaintiff refused to allow defendant to depose either herself, her physicians, or her law firm's designee on relevancy grounds. It is hard to fathom how a party in this action and other material witnesses would not provide defendant with any relevant information. We will therefore order plaintiff to make herself, her physicians, and her firm's designee available for depositions.

## B. Plaintiff's Motion to Compel Discovery

Plaintiff seeks to compel discovery relating to five requests for documents. Defendant contends that plaintiff's requests were untimely. Plaintiff served the requests one day before the May 1, 2001 deadline for completion of discovery. Defendant timely filed objections on May 29, 2001. Plaintiff claims that the requests were based on deposition testimony obtained April 24, 2001, and that defendant had objected to her first requests.

Plaintiff was clearly less than diligent by serving requests so close to the deadline, and by failing to file a motion for enlargement of time. The purpose of the court's discovery deadline coming two weeks before the deadline for

-23-

dispositive motions was to ensure that the parties possessed all relevant information prior to the filing of any dispositive motions.  Yet, plaintiff's motion to compel came on July 18, 2001, about two and one-half months after the May 1, 2001 discovery deadline, about two months after defendant filed its motion for summary judgment on May 15, 2001, and about a month-and-a-half after defendant objected to plaintiff's requests on May 29, 2001.  Moreover, plaintiff's motion to compel is improper in the first instance because she failed to comply with Local Rule 26.3 by not first contacting defendant to address her discovery concerns, and by failing to explain to the court why an agreement could not be reached.[2]

Plaintiff, of course, is entitled to an adequate opportunity to obtain discovery to oppose a summary judgment motion.  See Celotex, 477 U.S. at 322.  The proper procedure, though, is to seek additional time through a submission of an affidavit under Federal Rule of Civil Procedure 56(f).  See Dowling v. City of Philadelphia, 855 F.2d 136, 139-40 (3d Cir.1988).  Plaintiff has not acted under Rule 56(f).  Failure to file an affidavit under Rule 56(f) "is usually fatal."  Pastore v. Bell Telephone Co., 24 F.3d 508, 511 (3d Cir.1994).  Nonetheless, we will construe her motion to compel as a request for additional discovery under Rule 56(f) to ensure

---

[2] We note that defendant's motion to compel discovery was filed almost a month before the discovery deadline and conformed to the local rules.

-24-

that plaintiff suffers no injustice.  See St. Surin v. Virgin Islands Daily News, Inc.,
21 F.3d 1309, 1313-14 (3d Cir. 1994).

A Rule 56(f) motion should generally be granted if the movant describes the
particular information sought, how that information would preclude summary
judgment, and why the movant has not previously obtained the information.  See,
e.g., Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450, 458 (3d Cir. 2003);
St. Surin, 21 F.3d at 1314.

We will deny plaintiff's motion because of her dilatoriness.  The court's
order setting the discovery deadline stated that "[a]ll fact discovery shall be
completed on or before May 1, 2001."  (Order dated Jan. 19, 2001, Rec. Doc. No.
15, at 1, ¶2.)  Clearly, "all" fact discovery means the completion of all discovery-
related matters.  Further amplification comes by way of Local Rule 26.4, which
provides that "[a]fter the expiration of the discovery deadline, the parties are
deemed ready for trial."

Plaintiff unreasonably served her second request for documents on April 30,
2001.  Obviously, no response could be expected by the next day.  She asserts that
defendant's scheduling conflicts prevented her from deposing some of defendant's
staff until April 24, 2001, and that the need for her second requests only became
apparent afterward.  Plaintiff could have avoided any time constraints by filing a

motion for enlargement of the discovery deadline.  Indeed, early on the court

provided that "all requests for extensions of the discovery deadline must be made

at least fifteen (15) days prior to the expiration of the discovery period."  (Order

dated Nov. 9, 2000, at ¶2.)  Not only did plaintiff fail to file such a motion prior to

the discovery deadline, but she failed to file a motion to like effect after the

deadline, when she knew that her requests for documents were still outstanding.

Similarly, plaintiff could have sought to extend the deadline for the filing of

dispositive motions in light of her outstanding requests, or file an affidavit under

Rule 56(f) to defer ruling on defendant's summary judgment motion until after her

discovery concerns were alleviated.  Plaintiff took none of these actions.

Additionally, plaintiff's motion to compel failed to comply with Local Rule

26.3 by not first contacting defendant to address her discovery concerns, and by

failing to explain to the court why an agreement could not be reached.  While

plaintiff admits her oversight, we cannot overlook her continued lackadaisical

approach to deadlines and the local rules.  The court has even excused her non-

conformance with the local rules once before as well.  (See Order dated June 12,

2001, Rec. Doc. No. 43.)  Thus, given plaintiff's dilatoriness, we will deny her

motion to compel discovery.

**CONCLUSION:**

Defendant's summary judgment motion will be granted in part and denied in part. We will grant summary judgment for defendant as to plaintiff's bad faith claim only. We will grant defendant's motion to compel discovery in part. We will deny plaintiff's motion to compel. We will extend the deadline for the parties to file motions *in limine* and rule on any motions, including that which is currently pending, contemporaneously. An appropriate order will issue.

s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CYNTHIA ANNE DIVEGLIA,          :
formerly CYNTHIA ANNE           :
KAYLOR,                         :          No. 1:CV-00-1342
               Plaintiff,       :
        v.              :          (Judge McClure)
                            :
NORTHWESTERN MUTUAL LIFE :
INSURANCE COMPANY,              :
           Defendant.         :

# O R D E R # 1

March 23, 2004

For the reasons set forth in the accompanying memorandum,

**IT IS ORDERED THAT:**

    1.    Defendant's motion for summary judgment (Rec. Doc. No. 27), is granted in part and denied in part.

    2.    Summary judgment is granted in favor of defendant as to plaintiff's bad faith claim (Count II).  The clerk is directed to defer entry of final judgment until there is a final disposition of the entire case.

    3.    Summary judgment for defendant is denied with respect to plaintiff's breach of contract claim (Count I).

    4.    Plaintiff's motion to compel discovery (Rec. Doc. No. 47), is denied.

5.      Defendant's motion to compel discovery (Rec. Doc. No. 17), is granted in part as follows:

a.      Plaintiff is directed to respond within twenty (20) days of this order to interrogatories eight, ten, twelve, fourteen, eighteen, and twenty.

b.      Plaintiff is directed to respond within twenty (20) days of this order to document request ten, and document request eleven in connection with interrogatories eight, ten, twelve, fourteen, eighteen, and twenty.

c.      Plaintiff is directed to make herself, her physicians, and her law firm's designee available for depositions.

d.      Defendant's motion is denied in all other respects.

6.      A separate scheduling order follows which, *inter alia*, outlines the new deadlines for the filing of motions *in limine* and briefs in opposition thereto, including in opposition to plaintiff's pending motion *in limine* (Rec. Doc. No. 61).

  s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge