## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CYNTHIA ANNE DIVEGLIA,    :   CIVIL ACTION
          Plaintiff,   :   NO. 1:CV-00-1342
                  :
      v.           :   JUDGE McCLURE
                  :
NORTHWESTERN MUTUAL LIFE  :
INSURANCE COMPANY,      :
          Defendant.  :
                  :

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION IN LIMINE

Dated:  May *17*, 2004      STEVENS & LEE

                          By:_____

                          E. Thomas Henefer
                          Attorney I.D. No. 55773
                          Kirk L. Wolgemuth
                          Attorney I.D. No. 45792
                          111 North Sixth Street
                          P.O. Box 679
                          Reading, Pennsylvania  19603
                          (610) 478-2000

                          Attorneys for Defendant Northwestern
                          Mutual Life Insurance Company

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................1

II.   FACTUAL HISTORY ..................................................................1

III.  ARGUMENT...............................................................................3

    A.    The Expert Testimony Should Be Precluded...........................................3

    B.    The Medical Journal Articles and the Medical Reports of
          Dr. Seidman and Dr. Borgen Are Hearsay and Therefore
          Cannot be Admitted at Trial....................................................................12

    C.    Testimony From Plaintiff Regarding the Alleged Insensitive
          Demeanor of Northwestern's Employees Should be
          Precluded. ............................................................................15

    D.    Expert Testimony and Medical Reports of Dr. Borgen Should
          be Precluded .........................................................................16

IV.   CONCLUSION...........................................................................18

# TABLE OF AUTHORITIES

## CASES

American Bearing Co., Inc. v. Litton Industries, Inc.,
 540 F. Supp. 1163 (E.D. Pa. 1982), aff'd, 729 F.2d 943 (3d Cir. 1984),
 cert.denied, 469 U.S. 854 (1984).............................................................9

Aubrey Rogers Agency, Inc. v. AIG Life Insurance Co.,
 2000 U.S. Dist. LEXIS 997 (Jan. 13, 2000 D. DE) ................................12

Bergman v. United Services Automobile Ass'n,
 742 A.2d 1101 (Pa. Super. 1999) ...............................................3, 4, 5, 6

Bobb v. Modern Products, Inc.,
 648 F.2d 1051 (5th Cir. 1981)...............................................................13

Ciba-Geigy Corp. v. Crompton & Knowles Corp.,
 1991 U.S. Dist. LEXIS 18369 (E.D. Pa. Dec. 30 1991) ..........................7

Dattilo v. State Farm Insurance Co.,
 1997 U.S. Dist. LEXIS 16188 (E.D. Pa. October 17, 1997), aff'd, 168
 F.3d 478 (3d Cir. 1998)......................................................................3, 4

Daubert v. Merell Dow Pharmaceuticals, Inc.,
 509 U.S. 579 (1993).........................................................................9, 14

Emigh v. Consolidated Rail Corporation, et al.,
 710 F. Supp. 608 (W.D. Pa. 1989) ........................................................13

Fechter v. Connecticut General Life Insurance Co.,
 800 F. Supp. 182 (E.D. Pa. 1992)...........................................................7

Hanson v. Parkside Surgery Ctr.,
 872 F.2d 745 (6th Cir. 1989), cert. den., 493 U.S. 944 (1989)................12

i

TABLE OF AUTHORITIES
(continued)

Page

JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.,
      No. 97-CV-0652, 1998 U.S. Dist. LEXIS 5098 (E.D. Pa. Apr. 14, 1998),
      aff'd, 178 F.3d 1279 (3d Cir. 1999)................................................3,7,9,10

Leinberry v. Anes Electronics, Inc.,
      1992 U.S. Dist. LEXIS 2264 (Feb. 21, 1992 E.D. Pa.)...........................13

Lithuanian Commerce Corp., Sava Lee Hosiery,
      179 F.R.D. 450 (D.N.J. 1998), aff'd in relevant part, 248 R.3d 1130 (3d
      Cir.2000)..................................................................................................7

Williams v. Rene,
      72 F.3d 1096 (3d Cir. 1995)................................................................8, 9

Wilson v. Chestnut Hill Healthcare,
      2000 U.S. Dist. LEXIS 1580 (E.D. Pa. Feb. 17, 2000)............................9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA ANNE DIVEGLIA, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:CV-00-1342 |
| | : | |
| v. | : | JUDGE McCLURE |
| | : | |
| NORTHWESTERN MUTUAL LIFE | : | |
| INSURANCE COMPANY, | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION IN LIMINE

### I. INTRODUCTION

Defendant, Northwestern Mutual Life Insurance Company

("Northwestern") files this Motion in Limine to (1) preclude expert testimony of

Elliot Leitner on the issue of breach of contract; (2) to preclude the admission of

the medical reports of Dr. Seidman and three medical journal articles; and (3) to

preclude any testimony about the demeanor of Northwestern's employees; and

(4)to preclude any expert testimony from Dr. Borgen.

### II. FACTUAL HISTORY

This case involves a breach of contract claim by a practicing attorney

arising out of her claim for disability benefits under a long-term disability policy

issued by Northwestern.  Plaintiff received disability benefits for a period

following her diagnosis with, and successful treatment for, breast cancer.

Although her cancer is in remission, Plaintiff claims she is entitled to ongoing

1

benefits although she is currently earning more than she was prior to her disability, because the stress of practicing trial law might cause a recurrence of her cancer (a position without scientific support and not supported by the medical community at large).

Plaintiff has produced a report from Elliot Leitner, a purported expert in insurance claims practices. As explained below, Leitner's testimony is inadmissible under Fed. R. of Evid. 403, 702 and 32(a)(3)(B).

Next, based on her exhibit list, Plaintiff intends to offer into evidence various medical reports from her treating physicians Dr. Seidman and Dr. Borgen and three medical journal articles. The exhibits are inadmissible hearsay, are not reliable and Northwestern's motion in limine must be granted. Plaintiff also intends to testify about the demeanor of one or more of Northwestern's employees. This testimony is not relevant and would be prejudicial. Finally, Plaintiff has recently identified Dr. Borgen as a witness. Plaintiff has not identified Dr. Borgen as an expert witness and has not provided the required Rule 26 disclosures and report. Dr. Borgen's testimony is also not reliable. Thus, his testimony must be limited to her condition and the treatment she received.

2

## III.  ARGUMENT

### A.  <u>The Expert Testimony Should Be Precluded.</u>

Leitner's proposed testimony should be excluded for four reasons. First, Leitner cannot offer testimony that will assist the trier of fact.  Second, Leitner's testimony should be excluded under Rule 403 because his testimony has no probative value and any probative value would be outweighed by the unfair prejudicial effect of the testimony and its likelihood to confuse the jury.  Third, Leitner's testimony is based on factual assumptions that are, in fact, without any factual support. Finally, his deposition testimony is not admissible because Plaintiff procured his absence from the courtroom.

### Leitner's Testimony Will Not Assist The Jury

Rule 702 contains a fundamental requirement that expert testimony must be helpful to the jury to be admissible.  Fed. R. of Evid. 702; <u>JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.</u>, No. 97-CV-0652, 1998 U.S. Dist. LEXIS 5098 at *14 (E.D. Pa. Apr. 14, 1998), <u>aff'd</u>, 178 F.3d 1279 (3d Cir. 1999); <u>Bergman v. United Services Automobile Ass'n</u>, 742 A.2d 1101, 1105 (Pa. Super. 1999).  The applicable case law confirms that Leitner's proposed testimony will not be "helpful."  This was true even before Plaintiff's bad faith claim was dismissed and is particularly true now that the issues are limited to a claim for breach of contract. Two cases are particularly instructive.

3

First, in <u>Dattilo v. State Farm Insurance Co.</u>, 1997 U.S. Dist. LEXIS 16188 (E.D. Pa. October 17, 1997), <u>aff'd</u>, 168 F.3d 478 (3d Cir. 1998), the District Court, in granting summary judgment, rejected the deposition testimony of plaintiff's expert witness on the issue of bad faith. <u>Id.</u> at *11-12. Although the decision was based on Rule 56 rather than the rules of evidence, the District Court nonetheless evaluated whether the expert witness would be permitted to testify if the case went to trial. <u>Id.</u> at *12. The court noted that the case did not involve a claim of malpractice in which the insurer's conduct would be judged by the standards of the insurance industry. Instead, bad faith is a legal concept which does not require scientific, technical or specialized knowledge or skill to assist the trier of fact. <u>Id.</u>

The second instructive case is <u>Bergman v. United Services Automobile Association</u>, 742 A.2d 1101, 1105 (Super. Ct. 1999). The Superior Court relied on the rationale of <u>Datillo</u>, and affirmed the exclusion of the expert testimony because the case did not involve highly sophisticated insurance concepts or practices or call for special knowledge, skill or experience to understand or analyze the insurance company's actions. 742 A.2d at 1107. The court also found that the expert's report was conclusory and invited abdication of the court's duty as a fact finder. <u>Id.</u>

The same can readily be said of Leitner's "expert" conclusions that:

- NML acted unreasonably when it terminated disability benefits due Mrs. Diveglia and the reason provided in its April 14, 2000 letter to Mr. Diveglia did not justify discontinuance of her claim.

- Based upon my review of the claim file, Mrs. Diveglia remained totally disabled in March, 2000, in accordance with the "Total Disability" provision of the policy contract.

- At the time of claim, Mrs. Diveglia was, and continues to be, unable to perform the principal duties of her specialty occupation: "trial attorney."

- Mrs. Diveglia furnished NML with satisfactory written proof of loss in full compliance with the policy contract and industry standards.

- NML did not conduct an Independent Medical Examination, or a review by an outside medical consultant and therefore acted contrary to insurance industry claim practices.

- Adequate investigation and reasonable inquiry into the possibilities favorable to Mrs. Diveglia's position would have resulted in the claim having been continued subsequent to March 17, 2000.

- The NML claim file did not contain any single document confirming that Mrs. Diveglia was not totally disabled as defined in the policy.

(Leitner's report and portions of his deposition testimony are attached as Exhibit "A".)

The Court must first determine whether Leitner's proposed testimony is related to some science, profession, business or occupation that is beyond the understanding of the average lay person. Fed. R. of Evid. 702; <u>Bergman</u>, 742 A.2d at 1105. If the facts can be fully and accurately described so the jury can analyze

5

the facts with the issues in the case without the special knowledge or training of an expert, then Leitner's opinions are inadmissible. Id.

This case does not involve complex or highly technical insurance issues and concepts where expert testimony might be helpful. Instead, this case involves a simple breach of contract claim, which the jury can easily comprehend and evaluate. Moreover, the facts underlying Leitner's opinion can be fully and accurately described to the jury by the Plaintiff and representatives of Northwestern. Special knowledge or training is simply not needed.

Further, the jury will be charged by the Court on the applicable law. They can easily understand the facts about the termination of benefits. There is no need for Leitner to use his testimony to usurp the Court's role to charge the jury on the law of breach of contract.

Moreover, Leitner's opinions are nothing more than factual conclusions which the Court should exclude. Fechter v. Connecticut General Life Insurance Co., 800 F. Supp. 182, 187, n. 12 (E.D. Pa. 1992); and Ciba-Geigy Corp. v. Crompton & Knowles Corp., 1991 U.S. Dist. Lexis 18369, *6 (E.D. Pa. Dec. 30 1991). Leitner's opinions that Plaintiff remained "totally disabled" and "continues to be unable to perform the principal duties of her specialty occupation" are the conclusions that the trier of fact must make after hearing all of the medical evidence and the law as stated by the Court. Moreover, Leitner is neither a

6

physician nor vocational expert and is not qualified to render opinions or conclusions of fact in these areas. Leitner has no ability to render such opinions under Rule 702. Leitner's opinion is nothing more than inadmissible -- and uninformed -- speculation. JMJ Enterprises, 1998 U.S. Dist. LEXIS 5098 at *16 (expert testimony is inadmissible if it relies on speculation); Lithuanian Commerce Corp., Sava Lee Hosiery, 179 F.R.D. 450, 460-62 (D.N.J. 1998), aff'd in relevant part, 248 R.3d 1130 (3d Cir. 2000) (expert may not opine on speculative assumptions).

Similarly, Leitner's proposed testimony that Northwestern "acted unreasonably" when it terminated benefits is not relevant since the bad faith claim was dismissed. The same argument applies to Leitner's opinion that Northwestern did not conduct an independent medical examination and therefore acted contrary to insurance industry claims practices. Simply put, industry practices have no relevance to the contract claim. Finally, Leitner's testimony that Northwestern failed to conduct an adequate investigation is also no longer relevant in this case.

### Leitner's Testimony Is Factually Inaccurate And Should Be Excluded

Leitner's testimony is also contrary to the facts of this case. Leitner bases a significant part of his opinion that plaintiff was totally disabled as a trial attorney, and that Northwestern acted unfairly in terminating benefits, on his belief

7

that Dr. Richard Powell and David Gosse (employees of Northwestern) agreed with the opinions of Drs. Seidman and Borgen. (Ex. A, pp. 78-79, 81-82.)

Leitner's statement could not be more wrong. In fact, both of these individuals testified that Northwestern did not accept the opinions of Drs. Seidman and Borgen. (Ex. B, pp. 21-29; Ex. C. pp. 20-22.). Leitner is also wrong because he ignored the fact that plaintiff was cancer free as of March 2000. (Ex. A at 66). It is undisputed that she was in remission at this point. Further, Leitner's opinion that Plaintiff remains unable to perform the principal duties of her specialty occupation is wrong because Plaintiff herself concedes she has practiced as a trial lawyer beginning at least in January 2003. (Ex. D).

Courts are obligated to reject expert testimony if it is factually unsupported and speculative. See Williams v. Rene, 72 F.3d 1096, 1101-03 (3d Cir. 1995).

Courts have often excluded expert testimony where the assumptions were not supported by the evidence. In American Bearing Co., Inc. v. Litton Industries, Inc., 540 F. Supp. 1163, 1173-74 (E.D. Pa. 1982), aff'd, 729 F.2d 943 (3d Cir. 1984), cert. denied, 469 U.S. 854 (1984), for example, the Court noted an expert opinion that relies on incorrect factual assumptions (in that case about other competitors entering the market) was inadmissible. See also, Wilson v. Chestnut Hill Healthcare, 2000 U.S. Dist. LEXIS 1580, *14 (E.D. Pa. Feb. 17, 2000).

8

Expert testimony that ignores critical facts should be excluded. <u>JMJ</u> <u>Enterprises</u>, 1998 U.S. Dist. LEXIS 5098 at *16. In determining whether expert testimony is "helpful" by Rule 702, the court should consider "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." <u>Daubert v. Merell Dow</u> <u>Pharmaceuticals, Inc.</u>, 509 U.S. 579, 591 (1993).

Here, neither Dr. Powell nor Mr. Gosse agreed with the opinions of plaintiff's doctors about stress and recurrence of cancer. Because Mr. Leitner's opinions are based upon this incorrect assumption, his testimony must be precluded. This is especially true because Leitner acknowledged that his opinion would change if Drs. Seidman's and Borgen's opinion that stress could increase the likelihood of a recurrence of cancer was wrong. (Ex. A p. 95). Similarly, Plaintiff has acknowledged that she is again a practicing trial attorney at least as of January 2003.

### Leitner's Testimony Is Inadmissible Under Rule 403

Fed. R. of Evid. 403 prohibits admission of evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it misleads the jury. This applies to expert testimony. <u>JMJ Enterprises</u>, 1998 U.S. Dist. LEXIS 5098.

Leitner's testimony will mislead and create confusion. Because his testimony is based on inaccurate factual assumptions, his testimony will confuse the jury and interfere with the Court's role to charge the jury on the law. In short, Leitner's testimony has no probative value, will confuse the jury and will be unfairly prejudicial and should be excluded under Rule 403.

Further, Rule 403 is properly applied where the expert is "acting as an advocate, and not as an objective evaluator of evidence." JMJ Enterprises, 1998 U.S. Dist. LEXIS 5098 at * 27. Leitner is little more than a hired gun acting as a mouthpiece for plaintiff's legal arguments. For example, he sharply attacks Nurse Sheehan as being too uninformed about the policy provisions to render a determination of total disability. [Ex. A at 24]. But her role was not to adjudicate the claim; instead, she provided medical advice to the claims adjustors. Curiously, Leitner's opinion is circular because he claims Northwestern was totally bound by the opinion of Dr. Seidman, who did not know the policy terms, yet could not rely on its own medical personnel. [Ex. A at 52-53, 75].

He also engages in pejorative attacks on Northwestern by, for example, referring to its claims handling as a "plot," claiming Dr. Powell was trying to be a "secret doctor" (although he later had to concede that the file documented the consultations with Dr. Powell), claiming that Northwestern didn't care whether plaintiff lived or died, and claiming that the denial of benefits "blows

10

my mind." [Ex. A at 27, 23, 54, 85, 78, 60]. He also argued repeatedly with

counsel during his deposition. [E.g., 37, 54-55, 58-59, 60]. In short, Leitner is not

an objective evaluator of the evidence; instead, he intends to make plaintiff's legal

(and unfounded) arguments from the witness stand with the unearned aura of an

expert witness. His testimony should therefore be precluded under Rule 403. Id.

### Leitner's Deposition Testimony is Not Admissible

Recently, Plaintiff informed Northwestern that she intends to use the

discovery deposition of Leitner in lieu of his live appearance at trial. Rule

32(a)(3)(B) prohibits the admission of the discovery deposition.

Rule 32(a)(3)(B) provides that a deposition of a witness may be used

for any purpose if the Court finds that the witness is more than 100 miles from the

courthouse unless it appears that the absence of the witness was procured by the

party offering the deposition. Aubrey Rogers Agency, Inc. v. AIG Life

Insurance Co., 2000 US Dist. Lexis 997, *19 (Jan. 13, 2000 D. DE) (by selecting

an expert more than 100 miles from the courthouse, plaintiff procured his absence

from trial and deposition is not admissible); Hanson v. Parkside Surgery Ctr., 872

F.2d 745, 750 (6th Cir. 1989), cert. den., 493 U.S. 944(1989) (same).

In the present case, Plaintiff has failed to secure Leitner's presence at

trial and has not offered any reason for his failure to do so. Accordingly, the

deposition testimony is not admissible.

11

## B. The Medical Journal Articles and the Medical Reports of Dr. Seidman and Dr. Borgen Are Hearsay and Therefore Cannot be Admitted at Trial.

Plaintiff has identified medical journal articles and the medical reports of Dr. Seidman and Dr. Borgen to support her claim. These proposed exhibits are inadmissible hearsay.

Hearsay is a statement, other than one made by the declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted. (Rule 801(c), Fed. R. Evid.) Here, there is no question that the exhibits are being offered for a hearsay purpose, namely, to prove that plaintiff is disabled.

Medical reports, however, are not independently admissible under any exception to the hearsay rule. Emigh v. Consolidated Rail Corporation, et al., 710 F. Supp. 608, 610 (W.D. Pa. 1989); see also, Bobb v. Modern Products, Inc., 648 F. 2d 1051, 1055 (5th Cir. 1981) (cross-examination which attempts to impeach a witness by using hearsay evidence (medical report) will not be permitted). For example, Rule 803(4) allows statements for purposes of medical diagnosis or treatment to be admitted as an exception to the hearsay rule. (Rule 803(4) Fed. R. Evid.). However, this exception only excepts a patient's statements made for purposes of medical diagnosis or treatment and not the medical opinions contained therein. See Leinberry v. Anes Electronics, Inc., 1992 U.S. Dist. Lexis 2264, *8-9

12

(Feb. 21, 1992 E.D. Pa.). Here, it is the medical opinions contained in the reports, not plaintiff's statements, which are objectionable hearsay.

Similarly, the three requirements for the "residual" hearsay exception in Fed. R. of Evid. 807 are not met. First, the reports and Attending Physician Statements of Dr. Seidman and Dr. Borgen are not being offered as evidence of a material fact. Rather, they are being offered for the opinions contained in the reports and should therefore be evaluated under Rule 702 and <u>Daubert</u>. It is probable that the opinions rendered in the reports and Attending Physician Statements by these physicians would not survive a <u>Daubert</u> challenge.[1] It is clear that any medical opinion testimony offered by plaintiff for the proposition that increased stress will increase the likelihood of a recurrence of her cancer is not reliable and therefore not admissible. Under the Federal Rules of Evidence, the trial judge must act as a "gatekeeper" to insure that all expert testimony or evidence is not only relevant but also reliable. <u>See</u> <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589 (1993). Rule 702 provides that:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

---

[1]    Dr. Barbara Weber, the Director of the Breast Cancer Program and the Cancer Genomics Program at The University of Pennsylvania Cancer Center has opined in her report that there is not enough consistent evidence on which to base practice recommendations on the issue of stress, the immune system and cancer. This position is accepted in the oncologic community and is supported by The National Cancer Institute.

13

Fed. R. of Evid. 702.

As the proponent of such evidence, plaintiff has the burden of showing that her expert is qualified to render an opinion, that the opinion is reliable and that it would assist the trier of fact in resolving a disputed issue. Schmerling v. Danek Medical, Inc., 1999 U.S. Dist. LEXIS 13952 at *19 (E.D. Pa. Sept. 10 1999); and Daubert, 43 F.3d at 1316.

Applying the factors discussed above, the medical reports and Attending Physicians Statements plaintiff might offer to link stress to increased chances for recurrence of cancer is unreliable and would not satisfy Rule 702's standards. Again, this proposition has been studied and subject to peer review. Dr. Weber notes in her report that the relevant studies establish absolutely no correlation whatsoever to stress and the recurrence of cancer. Further, the theory proposed by plaintiff's physicians is not generally accepted in the oncologic community, has no scientific support and is not accepted by the National Cancer Institute.

Secondly, the general purposes of the hearsay rules will not be best served by the admission of the medical reports of Dr. Seidman into evidence. Thus, for whatever reason, plaintiff believes that Dr. Seidman's testimony will not further her interests. That being the case, his hearsay opinions should not be used to further her interests.

14

Similarly, the three medical journal articles Plaintiff identified are hearsay and are not excepted by Rule 803(18) of the Federal Rules of Evidence. This exception will apply only if the article is relied upon by an expert witness on direct examination or called to the attention of an expert witness on cross-examination <u>and</u> the article is established as a reliable authority by an expert witness. Plaintiff has not identified any expert witness who relied on the three medical journal articles identified as exhibits. Moreover, Northwestern's expert, Dr. Weber, has already commented on these articles in her reports and has found them unreliable. The medical journal articles are therefore hearsay and inadmissible.

### C. <u>Testimony From Plaintiff Regarding the Alleged Insensitive Demeanor of Northwestern's Employees Should be Precluded.</u>

Plaintiff may testify about the demeanor of Northwestern's representatives. Specifically, she claims that one or more representatives were insensitive in their conversations with Plaintiff. Even if this were true, the employee allegedly involved was removed from adjusting her claim in July 1997 – before benefits were approved and almost 3 years before benefits were subsequently denied. Under Rule 402 of the Federal Rules of evidence, evidence must be relevant to be admissible. Even if an employee was insensitive, which Northwestern denies, this fact had nothing to do with the denial of benefits in April

15

of 2000. The only claim remaining in this case is breach of contract and this testimony is not relevant to that claim.

In addition, even if this testimony is relevant, the probative value is substantially outweighed by the danger of unfair prejudice. The jury should not base its decision on whether Northwestern breached the policy terms on the demeanor of one employee that occurred 3 years before benefits were terminated. Thus, the testimony must be precluded.

### D. EXPERT TESTIMONY AND MEDICAL REPORTS OF DR. BORGEN SHOULD BE PRECLUDED

On April 28, 2004 Plaintiff identified Dr. Borgen, one of Plaintiffs' treating physicians, as a witness for the first time. Plaintiff has not identified him as an expert witness and has not provided any of the information required by Rule 26(a) or 26(e)(1) of the Federal Rules of Evidence. As such, Dr. Borgen's testimony must be limited to the treatment he rendered and should not contain any expert opinions, especially any opinions regarding her medical capacity to be a trial lawyer after her cancer went into remission.

Plaintiff has only recently identified Dr. Borgen as a witness and has never identified him as an expert witness. Thus, the scope of his testimony is limited under Rule 701 of the Rules of Evidence. Dr. Borgen's opinions may not be based on scientific, technical or other specialized knowledge within the scope of Rule 702. Accordingly, he may testify factually about her condition and the

treatment she received.  However, Dr. Borgen may not render an expert opinion that Plaintiff should avoid stress to lessen the likelihood that her cancer will return. This opinion, although not accepted by the oncologic community, would require an expert witness to deliver it to the Jury.  As noted above, Plaintiff has never identified any expert witnesses in this case and made the appropriate disclosures.

There is no question that any opinions regarding stress and the recurrence of her breast cancer would require an opinion based on scientific or other specialized knowledge.  However, Rule 702 places safeguards on such opinions by requiring that the testimony  be based on sufficient facts or data,  the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.  By failing to timely identify Dr. Borgen and failing to identify him as an expert witness, the Defendant has no idea what opinions Dr. Borgen may render and has no way of verifying whether his opinions would satisfy the requirements of Rule 702.  As noted earlier, the opinions contained in his reports and testimony  are not reliable and should be precluded under <u>Daubert</u>.  If necessary, Defendant requests that a <u>Daubert</u> hearing be scheduled to determine if Dr. Borgen's testimony is reliable.

Accordingly, any testimony from Dr. Borgen must be limited to the treatment and her condition.

17

## IV. CONCLUSION

For the foregoing reasons, Northwestern respectfully requests this

Court to grant its motion in limine.

Dated:  May 17, 2004     STEVENS & LEE

By _____

E. Thomas Henefer
Attorney I.D. No. 55773
Kirk L. Wolgemuth
Attorney I.D. No. 45792
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania  19603
(610) 478-2000

Attorneys for Northwestern Mutual Life
Insurance Company

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CYNTHIA ANNE DIVEGLIA,     :    CIVIL ACTION
               Plaintiff,    :    NO. 1:CV-00-1342
                         :
       v.               :    JUDGE McCLURE
                         :
NORTHWESTERN MUTUAL LIFE    :
INSURANCE COMPANY,         :
               Defendant.    :
                         :

### CERTIFICATE OF COUNSEL

I certify that the number of words contained in the foregoing brief

excluding table of contents is 3988 according to the Microsoft Word Count feature.

Dated:  May 17, 2004          STEVENS & LEE

                       By: _____
                           E. Thomas Henefer
                           Attorney I.D. No. 55773
                           Kirk L. Wolgemuth
                           Attorney I.D. No. 45792
                           111 North Sixth Street
                           P.O. Box 679
                           Reading, Pennsylvania  19603
                           (610) 478-2000


                           Attorneys for Defendant Northwestern
                           Mutual Life Insurance Company

## CERTIFICATE OF SERVICE

I, KIRK L. WOLGEMUTH, ESQUIRE, certify that on this date, I served a certified true and correct copy of the foregoing Defendant's Motion in Limine, Memorandum of Law in Support of Motion in Limine and Exhibits upon the following counsel of record, by depositing the same in the United States mail, postage prepaid, addressed as follows:

Archie V. DiVeglia, Esquire
119 Locust Street
Harrisburg, PA  17101

_____
Kirk L. Wolgemuth

Date:  May 17, 2004