IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CYNTHIA ANNE DIVEGLIA<br>formerly CYNTHIA ANNE KAYLOR<br>Plaintiff<br><br>v.<br><br>NORTHWESTERN MUTUAL LIFE<br>INSURANCE COMPANY<br>Defendant | Civil Action No. 1 CV-00-1342<br><br><br>(Judge James McClure) |

### PLAINTIFF'S BRIEF IN SUPPORT OF SECOND MOTION IN LIMINE TO EXCLUDE EARNINGS AND LIABILITY INSURANCE APPLICATIONS

**I. STATEMENT OF PROCEDURAL HISTORY**

Plaintiff's Complaint was filed July 28, 2000, and Defendant filed a timely response. Written and deposition discovery has been exchanged. Defendant filed a Motion to Compel on April 6, 2001 and Plaintiff filed a Motion to Compel on July 18, 2001. Defendant also filed a Motion for Summary Judgment on May 15, 2001. Plaintiff also filed a Motion in Limine on October 12, 2001. All prior Motions have been ruled upon by the Court, except Plaintiff's Motion in Limine. Expert reports have been exchanged and expert discovery has been concluded, except for the deposition of Plaintiff's surgeon, Patrick Borgan, M.C. scheduled

1

for May 21, 2004.

## II. STATEMENT OF FACTS

Plaintiff had incurred breast cancer that had spread to all 16 lymph nodes examined and was required to undergo non-protocol chemotherapy. Her physicians disabled her from trial work to reduce stress as a means of enhancing long term remission and so stated on the Attending Physician statements requested by Defendants. For two years benefits were paid based upon Plaintiff's physicians' disability statements that reduction of stress through disability from trial work would enhance long term remission (App. 1). Defendant terminated Plaintiff's disability benefits on April 14, 2001, setting forth as the singular reason for termination that medical documentation provided did not support ongoing disability due to medical restrictions or limitations (App 2).

The adjuster who terminated benefits, Suzanne Balestreri and the adjuster who reviewed that decision, Sharon Hyde, both testified that this alleged lack of medical documentation was the sole reason benefits were terminated (App. 3, N.T.10(13-25), 11(1-23); App.4 N.T. 11(1-20), 12(3-7), 28(13-19).

As is set forth in Appendix 1-4, and the pleadings (App. 5), the only issue relating to termination of benefits was whether the plaintiff submitted sufficient

2

medical data to support continuing disability benefits from the Defendant. Plaintiff's Complaint was filed not to initiate benefits but to continue to receive benefits she was entitled to receive under the disability contract with Northwestern. This is an important distinction not acknowledged by the defendant. Defendant seeks to introduce Plaintiff's W-2's from 1998 to present as well as applications for liability insurance of the corporation of which she is a shareholder. None of these documents are relevant to the issue at hand: Whether Plaintiff submitted sufficient medical information to be continued totally disabled as a trial lawyer as set forth by the Policy and Defendant's Claims Manual.(App. 6 and 7) Defendant's Claims Manual interpreting its policy clearly states as long as Plaintiff is disabled as a Trial Lawyer, regardless of the income she earned, was entitled to disability and the benefits were due and payable. (App. 7, pages 11,12) Plaintiff in her second Motion in Limine seeks to exclude wage information as not relevant, and likely to be prejudicial, confuse and divert the jury's attention from the issue at hand.

### III. STATEMENT OF ISSUE INVOLVED

WHETHER THE DEFENDANT IS PRECLUDED FROM INTRODUCING INTO EVIDENCE PLAINTIFF'S W-2'S FROM 1998-2003, CORPORATE EARNINGS RECORDS AND CORPORATE LIABILITY INSURANCE APPLICATIONS OF THE SAME TIME FRAME.

### IV. ARGUMENT

**The defendant is precluded at trial from introducing Plaintiff's W-2's corporate earnings records and Corporate liability insurance Application because they are collateral to the issue before the jury and their introduction will be prejudcial.**

Relevant evidence is defined by F.R.E. 401 as: "'Relevant evidence' means having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The essence of relevancy is, therefore, that the evidence be of consequence to the determination of the action. U.S. v. Fountain 2 F3d 656, 667 N. 6(6th Cir. 1993).

Here, the reason given for termination of benefits is clearly set forth in the termination letter (App. 2) and verified by the adjusters involved: lack of medical documentation of continuing disability. (App. 3, N.T. 10 (13-25), 11(1-23) and (App. 4. N.T. 11(1-20), 12 (3-7); 28 (13-19). Additionally, the pleadings

specifically set forth that this alleged lack of medical documentation was the reason for termination (App. 5). As such, what is of consequence to the trial determination is evidence relating to whether Plaintiff had submitted sufficient medical documentation to obtain continuing disability benefits.

Nonetheless, Defendant seeks to introduce into evidence matters relating to income and liability insurance, matters that are so collateral to the issue before the Court that it not only wastes the Court's time and resources, but also will likely confuse the jury to the extent of prejudicing Plaintiff's claim.

Defendant undoubtably will argue that it is entitled to bring before the jury every aspect of the claim since it had not waived its requests for information and Plaintiff's failure to supply information requested was a breach of contract. Such an argument is fallacious in that:

> (1) The termination letter itself did not reference these collateral issues even though it would typically do so (App.2; App.9. N.T. 34 (2-5);

> (2) The adjuster who terminated the claim and the adjuster who reviewed the termination both testified at depositions that the reason for termination was the alleged lack of medical documentation. (App.3, N.T. 10(13-25),

11(1-23) and App. 4, N.T. 11 (1-20); 12 (3-7); 28(13-19))

(3) After July 1999, the Defendant ceased written requests for inappropriate documentation;

(4) From November 1999 through April 14, 2000, the date of termination none of the adjuster's logs or letters to Plaintiff's counsel reference anything but needing medical documentation of disability;

(5) In Defendant's answer to Paragraph 9 of Plaintiff's Complaint (termination was for lack of medical documentation) it admits that this was the basis of the denial of the claim, although Defendant did state "it is denied the averments in paragraph 9 of the complaint accurately or completely summarize the relevant terms of the letter which is in writing and speaks for itself." However, nothing in that letter refers to denying further benefits for any other reason;

(6) Defendant's own insurance expert states that benefits were terminated

because of the alleged lack of medical documentation (App.10, P. 23 and 25, last paragraph).

Despite the clear fact that denial of continuation of benefits was solely on the basis of lack of sufficient medical documentation, the Defendant wants to bring before the jury matters other than related to the specifically stated or pleaded basis for termination. What Plaintiff earned during her period of disability is not relevant. It's not relevant because:

(1) Her earnings were not involved in any manner to the stated reason for terminating benefits:

(2) Under the policy as long as Plaintiff is disabled by her physicians as a trial lawyer, with the sole duty of a trial lawyer under the policy being the ability to advocate before a court, she was permitted to earn an unlimited amount of earnings. (App. 6, 7, Page 11, Example 3; and 11, N.T.17-18)

The introduction of such evidence will be prejudicial to Plaintiff because once the jury learns of Plaintiff's earning, they, in all probability will conclude that Plaintiff was not substantially financially harmed, despite her disability, and thus their attention will be improperly diverted and the basis for the jury's verdict would be for a reason not related to the terms of the contract.

Plaintiff's earnings as reflected in her W-2's and corporate fees earned records in no manner indicates the nature of her work duties after she returned to her office in February 1998. Again, under the policy, Plaintiff was permitted to return to employment and earn an unlimited income. Her disability benefits are only affected if she advocated before the court. (App. 6,7; page 11, example 3;11 N.T. 17-18)

Although Plaintiff did return to work as a lawyer, she never advocated any matter before a court. This was documented in all of her Requests for Continuing Disability benefits, her testimony, and in defendant's own investigation .

Plaintiff's W-2's and Corporate records reflect income and earnings, but not as a trial lawyer as defined under the policy. Additionally, the income and earnings are not straight forward and will take considerable time to explain to the jury. For example, Plaintiff's 1998 earnings as reflected by her W-2 was substantial. However, that income was a component of a January 1, 1998 CAT fund payment for a medical Malpractice case settled in 1997 before her disability payments began. Other years income included substantial referral fees from cases Plaintiff referred to other counsel because she was not able to pursue the cases because of her disability. Thus, if defendant is permitted to introduce these

documents, considerable time and effort will be needed to explain that the source of income was not from performing trial work during the period of disability. This will be a waste of time because the policy clearly allows unlimited earnings as long as advocating for a client before a court does not occur. As such, Plaintiff seeks to have the court issue a pre-trial ruling excluding all discussion, testimony or evidence attempting to introduce Plaintiff's W-2's or Corporate earning records as non-relevant evidence under Federal Rules of Evidence 401-403.

    Defendant's attempt to introduce corporate liability insurance applications is even more collateral to the issue at hand. These applications are completely devoid of any information as to whether Plaintiff advocates on behalf of her clients in court. (App. 8 ) Plaintiff clearly indicated to defendant in her Request for Continuing Disability benefits she was handling some personal injury claims, but no in court advocacy. The insurance was necessary to protect against missing any statute of limitations, or negligent advice, or such. Thus, the applications do nothing to advance the inquiry of this case and therefore they are not relevant.

    Introduction of these applications will also require unnecessary testimony and may confuse and divert the attention of the jury. This will be a waste of effort

and time, and the Court should exclude all attempts to introduce them and all testimony or argument relating to them.

Respectfully submitted,

By: _____
Archie V. Diveglia. Esq.
PA. Attorney I.D. 17104
2 Lincoln Way West,
New Oxford, PA 17350
Telephone: (717) 624-2500
Fax: (717) 624-3851

DIVEGLIA AND KAYLOR, P.C.            ATTORNEY IN CHARGE FOR
                                     Plaintiff, Cynthia A. Diveglia

## CERTIFICATE OF SERVICE

    I, ARCHIE V. DIVEGLIA, attorney for Plaintiff Cynthia A. Diveglia, on this 17th day of May, 2004, do hereby state that I have served a copy of <u>Plaintiff's Brief in Support of Second Motion in Limine</u> upon counsel for Defendant by placing a copy of the same in the United States mail, first class, postage prepaid to:

E. Thomas Henefer, Esquire
Stevens & Lee located at
P.O. Box 679
Reading, PA 19603-0679

                                            Respectfully submitted,

By: _____
      Archie V. Diveglia. Esq.
      PA. Attorney I.D. 17140
      2 Lincoln Way West
      New Oxford, PA 17350
      Telephone: (717) 624-2500
      Fax: (717) 624-3851

DIVEGLIA AND KAYLOR, P.C.         ATTORNEY IN CHARGE
FOR

                                            Plaintiff, Cynthia A. Diveglia