

FILED
HARRISBURG, PA

MAY 2 7 2004

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA ANNE DIVEGLIA | § | |
| formerly CYNTHIA ANNE KAYLOR | § | |
| Plaintiff | § | |
| | § | Civil Action No.  1 CV-00-1342 |
| v. | § | |
| | § | |
| NORTHWESTERN MUTUAL LIFE | § | |
| INSURANCE COMPANY | § | |
| Defendant | § | (Judge James McClure) |

## PLAINTIFF'S PRETRIAL MEMORANDUM

Date conference held by Counsel: May 18, 2004

A.  Jurisdiction is established under U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and cost.

B.  **SUMMARY STATEMENT OF FACTS AND CONTENTIONS AS TO LIABILITY**.

1.  **Statement of Facts**

1

This action involves a claim for continuation of disability benefits under a disability policy issued by defendant. Defendant received plaintiff's application to purchase a disability policy with the defendant, conducted an audit and issued to plaintiff a disability policy effective on July 28, 1994. The policy in question was a specialty policy relating to the specialty of trial law. Under the policy and disability Claims Manual, Plaintiff is disabled as a trial lawyer if she is unable to perform the singular duty of advocating before a court.

In April 1997 Plaintiff was diagnosed with infiltrating lobular carcinoma of her left breast with 16 positive lymph nodes, a condition so severe that it is found in only one or two percent of breast cancer patients. She underwent non-protocol chemotherapy to treat her condition. .

On June 6, 1997, Plaintiff applied for benefits under the policy as a disabled trial attorney. On August 11, 1997 defendant approved of Plaintiff's claim for disability benefits as a disabled trial attorney. The Plaintiff's first payment was made on August 18, 1997, (30 days after the 90day waiting period the ended July 18, 1997) for the beginning date of disability of April 18, 1997.

Plaintiff was at high risk of recurrence at over 90% Her two physicians at Sloan-Kettering provided to defendant disability statements restricting her from employment as a trial lawyer so as to reduce stress and thus enhance her chance of

long term remission and survival. This recommendation was part of her treatment plan. After Plaintiff completed her high-dose non-protocol chemotherapy, her physicians at Sloan Kettering completed defendant's disability statements as requested and consistently set forth that she was disabled as a trial lawyer with the last disability statement being dated 18 days prior to termination of benefits.

Plaintiff's physicians' recommendation set forth in defendant's Attending Physician Statements forms remained consistent over a two year period, and continued thereafter as set forth in Dr. Borgen's deposition. Nonetheless, defendant, without having any cancer specialist's medical opinion to contradict or challenge plaintiff's physicians' opinions, and without researching the issue of the relationship between stress and recurrence, ceased making further payments in March 2000.

The singular stated reason for termination of benefits was that the medical documentation provided did not support ongoing disability due to medical reasons or limitations. The reason given for not accepting plaintiff's physicians' basis for disability (stress reduction would enhance long term remission) was that Defendant's Medical Director stated that there were no medical research studies published to support their opinions. However, at the time of termination of benefits, the defendant had no medical studies or opinion of any cancer specialist

to contradict the opinions of Plaintiff's physicians that stress reduction would

enhance long term remission of Plaintiff's cancer.  Defendant's medical director,

upon whom defendant's adjusters relied upon did not have certification in

oncology, had no experience with the chemotherapy regime provided to the

Plaintiff, had no hospital affiliations, was unpublished, had not practiced medicine

for 15 years, and was not recognized by his peers as an authority on cancer

treatment/

### 2. Contentions as to liability

Defendant's singular stated reason for termination of benefits, failure to

provide sufficient medical documentation of proof of continuing disability, was

without a basis.  It is contended Plaintiff provided sufficient proof that she was

disabled as a trial lawyer as defined by the policy and Claims Manual of

defendant.

Without having a reasonable basis  to challenge plaintiff's physicians'

recommendation, defendant's actions constituted a breach of contract.  Plaintiff

provided sufficient proof of loss to support continuing disability payments.

Defendant's requests for medical documentation beyond that which was provided

by plaintiff's physicians was unnecessary under the contract and placed an

unreasonable burden of proof upon the plaintiff.  Plaintiff was totally disabled as a

trial lawyer as of the date of termination and she continued to be totally disabled as a trial lawyer as defined by Northwestern, up to January 2003.

### C. STATEMENT OF UNDISPUTED FACTS

(See Attachment No. 1)

### D. DAMAGES

Plaintiff is claiming a loss of monthly disability benefits from March 2000, to January 2003, as well as interest, premium and dividend reimbursements and/or the Future Increase Benefits purchased under her policy from March 2000 through January 2003. Calculations of that loss is attached as Attachment 2.

### E. WITNESSES

1. Cynthia A. Diveglia
   41 Berky Road
   East Berlin, PA 17316

2. Dr. Patrick Borgen, Chief of Surgical Breast
   Memorial Sloan Kettering Hospital
   1275 York Avenue
   10th Floor, MRI 1026
   New York, New York 10021

3. Elliot Leitner
   2450 Cobblewood Drive
   NorthBrook, IL 80062

4. Mark Brecher
   115 South 21st Street
   Philadelphia, PA 19103

5. Bradley Newman
   1505 Penn Street
   Harrisburg, PA

6. David Gosse
   via videotape/or in person
   Northwestern Mutual Employee
   As on cross examination

7. Dr. Richard Powell
   via videotape/or in person
   Northwestern Mutual Employee
   As on cross examination

8. Suzanne Balestreri
   via videotape/or in person
   Northwestern Mutual Employee
   As on cross examination

9. Sharon Hyde
   via videotape/or in person
   Northwestern Mutual Employee

As on cross examination

10. Patricia Sheehan
    via videotape/or in person
     Northwestern Mutual Employee
     As on cross examination

11. Eileen Carter
    via videotape/or in person
     Northwestern Mutual Employee
    As on cross examination

12. Minnie Armstrong
     via videotape/or in person
    Northwestern Mutual Employee
    As on cross examination

**F. SUMMARY OF EXPERT WITNESS TESTIMONY**

See attached report of Elliot Leitner (Attachment 3)

**G. SPECIAL COMMENTS ABOUT PLEADINGS AND DISCOVERY:**

None

**H. SUMMARY OF LEGAL ISSUES INVOLVED**

1. WHETHER THE DEFENDANT IS PRECLUDED FROM

PRESENTING TESTIMONY OR USING THE REPORT OF DR.

WEBER OR OTHERWISE REFERRING TO HER REPORT.  (Legal

authorities set forth in Plaintiff's Brief in Support of Motion in

Limine)


2.  WHETHER THE DEFENDANT IS PRECLUDED FROM

PRESENTING OR USING THE REPORT OF ITS INSURANCE

EXPERT OR OTHERWISE REFERRING TO HER REPORT (Legal

authorities set forth in Plaintiff's Brief in support of Motion in

Limine).


3.  WHETHER DEFENDANT IS PRECLUDED FROM

INTRODUCING TESTIMONY OF NATALIE VERSNIK AND

KEN EVANS.


4.  WHETHER DEFENDANT IS PRECLUDED FROM

INTRODUCING INTO THE TRIAL PROCESS EVIDENCE OF

ALLEGED NON-COMPLIANCE TO THE TERMS OF THE

POLICY AND OTHER NON-RELATED DOCUMENTS, OTHER

THAN AS SET FORTH IN ITS STATED REASON FOR DENIAL

OF FURTHER BENEFITS (See Legal authorities set forth in
Plaintiffs"s Brief in Support of Motion In Limine)

5.  WHETHER DEFENDANT IS PRECLUDED FROM
INTRODUCING INTO EVIDENCE DISCUSSIONS AND
MEMORANDUMS OF DISCUSSIONS RELATING TO
COMPROMISE SETTLEMENT (See Legal authorities set forth in
Plaintiffs"s Brief in Support of Motion In Limine)

6.  WHETHER DEFENDANT IS PRECLUDED FROM
INTRODUCING INTO EVIDENCE THE MALPRACTICE
APPLICATIONS OF DIVEGLIA AND KAYLOR, P.C. AND
STATEMENTS OF EARNINGS OF PLAINTIFF (SEE
PLAINTIFF'S SECOND MOTION IN LIMINE FOR LEGAL
AUTHORITIES)

7.  WHETHER PLAINTIFF'S BURDEN OF PROOF FOR
CONTINUING BENEFITS IS LIMITED ONLY TO PROOF
RELATED TO THE SINGULAR STATED REASON SET FORTH
IN THE TERMINATION LETTER OF APRIL 14, 2000.

## I.  STIPULATION DESIRED

1.  Plaintiff's medical records, attending physicians reports, Requests for Continuance of Disability and contract of Disability Insurance  be authenticated and any portion thereof admissible  without witness testimony and any portion thereof admissible.

## J.  ESTIMATED TRIAL DAYS: 5-6

## K.  THERE ARE NO OTHER MATTERS PERTINENT TO THE CASE TO BE TRIED.

## L.  SCHEDULE OF EXHIBITS (ATTACHMENT 4)

## M.  SPECIAL VERDICT QUESTIONS:

1.    Did Plaintiff by submitting the attending physician reports of Dr. Borgen and Dr. Seidman provide sufficient proof of continuing disability?

2.    Did Northwestern breach the disability contract by abruptly

terminating disability benefits to Plaintiff, despite the fact that

plaintiff's physicians' recommendation of no trial work did not

change?

3.    Did Northwestern breach the disability contract by abruptly

terminating disability benefits to Plaintiff without advance

notice to the Plaintiff?

4.    Did Northwestern have sufficient medical documentation to

justify terminating Plaintiff's disability benefits, contrary to the

recommendations of Plaintiff's surgeon and oncologist?

Respectfully submitted,

By: _____

Archie V. Diveglia, Esq.
PA. Attorney I.D. 17140
2 Lincolnway West
New Oxford, PA 17350
Telephone:  (717) 624-2500
Fax:    (717) 624-3851

DIVEGLIA AND KAYLOR, P.C.
ATTORNEY IN CHARGE FOR
Plaintiff, Cynthia A. Diveglia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CYNTHIA ANNE DIVEGLIA,                                   :
                                                         :
                          Plaintiff,                     :      CIVIL ACTION NO. 1: CV-00-1342
                                                         :
             v.                                          :
                                                         :
NORTHWESTERN MUTUAL LIFE                                  :
INSURANCE COMPANY,                                       :
                          Defendant.                     :

## JOINT STATEMENT OF UNDISPUTED FACTS

1.  This case involves a claim for breach of contract arising under a long-term disability policy issued by Northwestern.

2.  Plaintiff purchased a disability income policy from defendant which was effective on July 28, 1994.

3.  The policy provided for monthly benefits of $5,500.00 plus a consumer price index factor so her actual benefits were $5,949.00 per month.

4.  Plaintiff applied for benefits on June 6, 1997 after being diagnosed with, and treated for, breast cancer.

5.  In her application for benefits, plaintiff claimed to be engaged in the occupation of a trial lawyer and, on August 11, 1997, Northwestern approved the claim for disability benefits.

6.  Benefits were paid continuously to March 17, 2000, following which Northwestern denied further benefits under the policy.

7.  The Policy insures against either "total" or "proportionate disability" based on the insured's "regular occupation."

8.  The policy defines total disability, in relevant part, as:

Until the end of the Initial Period, the Insured is totally disabled when unable to perform the <u>principal duties of the regular occupation</u>.

9. The Policy defines "proportionate disability" in terms of the insured's having the required loss of earned income due to an inability to perform one or more but not all of the "principal duties of the regular occupation" or "to spend as much time at the regular occupation as before the disability started."

10. Proportionate disability is based on the percentage loss of earned income following disability.

11. "Regular occupation" is defined as "[t]he words 'regular occupation' mean the occupation of the Insured at the time the Insured becomes disabled."

12. The Policy further notes that the regular occupation may be "the specialty of trial law" if the insured is "exclusively" engaged in that specialty.

13. The Policy contains, among other things, the following provision:

For a claim to be payable, the Company must be provided with satisfactory written proof of loss. This is information that the Company deems necessary to determine whether benefits are payable, and if so, the amount of the benefits. The proof of loss will include information about the Insured's health, occupational duties, income both before and after the disability started (including income tax returns for the Insured and for businesses in which the Insured has or had an interest), overhead expenses and disability benefits, along with other information as may be required by the Company from time to time. The Company will also need to be provided information as described below under 'Other Requirements

14. On March 6, 1998 plaintiff wrote to an investigator retained by Northwestern and revoked all medical authorizations that she had previously signed.

15. Plaintiff's counsel refused to provide tax information that was requested and refused to sign the authorizations that Northwestern had requested.

16. Although Northwestern on more than one occasion requested tax information, billing information and other related financial and occupational information, plaintiff's counsel refused to provide the requested documents as not relevant to the claim.

17. While plaintiff received benefits, Northwestern continued to receive attending physician statement ("APS") forms from her treating physicians.

18. Plaintiff in fact did return to work in February 1998 and reported that her duties (a) did not include court appearances and (b) were limited to tasks such as legal research, interviewing new clients, preparing settlement documents, statements of demand and discovery.

19. The Policy contained, among other things, the following provision:

**Authorizations.** From time to time, the Company will furnish the Insured with Authorizations to obtain information.  These authorizations must be signed by the insured and returned to the Company.

20. Despite this requirement, plaintiff never again returned the authorizations Northwestern requested.  Instead, she provided modified authorizations.

21. According to these statements, plaintiff was generally working 30-40 hour weeks.

22. The parties began to dispute Northwestern's need and right to obtain certain information Northwestern requested about the claim other than the periodic physicians' statements.

23. Plaintiff refused to comply with Northwestern's requests for tax returns and for the medical authorization in the form requested by Northwestern.

24. Thereafter, the parties engaged in correspondence regarding the impasse over records.

25. Dr. Randolph Powell, a board certified internist and one of Northwestern's medical directors, wrote to one of plaintiff's treating physicians to obtain additional information various issues including Dr. Seidman's opinion on "the current reasons your patient is unable to resume her pre-disability litigation duties?"

26. Dr. Seidman provided a letter supporting plaintiff's claim for disability benefits.

27. Nurse Sheehan reviewed Dr. Seidman's letter and discussed the claim further with Dr. Powell.

28. She noted that Dr. Powell was unaware of any objective medical basis for Dr. Seidman's opinion and recommended that a further medical review take place after records of further treatment (contemplated for March 1999 by Dr. Seidman's letter) were obtained.

29. In April 1999, plaintiff advised that she remained disabled and had not been back to see her physician.

30. Northwestern continued to pay benefits at this time but noted that the claim was under review and that, in Northwestern's view, the policy requirements may not be met.

31.  Plaintiff's counsel responded on April 25, 1999 and disputed Northwestern's position.

32.  On July 21, 1999, David Gosse, a senior claim administrator responded to plaintiff's counsel.

33.  In the letter, Mr. Gosse addressed, among other things, plaintiff's claim that her counsel knew of at least three  three medical studies that supported her claim for benefits.

34.  In his July 1999 letter, Mr. Gosse specifically asked plaintiff's counsel to provide copies of the alleged studies.

35.  Although benefit payments continued, plaintiff's counsel had not responded to Mr. Gosse's letter as of November 18, 1999.

36.  On November 30, 1999, plaintiff's counsel responded to Mr. Gosse's letter.

37.  Plaintiff did not provide any of the requested financial or occupational information, and did not provide the alleged medical studies that purportedly linked stress to recurrence of cancer.

38.  Northwestern later received updated treatment records which Dr. Powell and Nurse Sheehan reviewed.

39.  Nurse Sheehan wrote a second letter to Dr. Seidman specifically requesting that he comment on whether his recommended work restrictions were supported by scientific studies.

40. This visit was initially scheduled for November 30, 1999 but did not occur until March 27, 2000.

41. Following the submission of Dr. Seidman's March 2000 APS, Dr. Powell and Nurse Sheehan conducted a further medical review.

42. Northwestern discontinued plaintiff's benefits on April 14, 2000.

43. At that time, Northwestern invited plaintiff to submit "any additional information or documentation she would like us to consider in support of her claim" within 30 days.

44. Plaintiff responded on April 25, 2000 by challenging the denial but did not include any additional information such as scientific studies that would support an alleged link between stress and recurrence of cancer.

45. Northwestern indicated that the termination of benefits would not be reversed on May 30, 2000.

46. Plaintiff was diagnosed as having invasive lobular carcinoma that had metastatically invaded 16 out of 16 lymph nodes with perineural and vascular invasion.

47. Plaintiff's entire treatment has been at the Sloan Kettering Cancer Center by a surgeon and an oncologist employed by Sloan Kettering.

48. The Defendant's adjusters relied on the opinion of Dr. Powell and Nurse Sheehan.

49. Defendant's Medical Director at the time of termination stated he was unaware of any studies in major medical journal that support stress reduction despite reading medical journals.

50. The Defendant could have sent the medical file of Plaintiff to an independent oncologist for review but did not do so.

51. Plaintiff on a monthly basis provided to Defendant her request for continuation of benefits in which she specifically set forth she was not performing trial work.

52. Defendant has not claimed or alleged that Plaintiff in any manner has engaged in fraudulent conduct requiring the submission of corporate records, tax returns, etc. (entire claim log of defendant).

53. Defendant has not ever disputed Plaintiff's earnings as of date of disability.

54. Plaintiff stopped working in April 1997 due to breast cancer.

55. Plaintiffs' income in 1996 was $110,500 and for purposes of this case was determined to be her base income.

56. Plaintiff continued to accept personal injury cases throughout her disability but asserts that she did not handle court appearances or attend any depositions in these cases until January 2003.

57. In 1998, plaintiff was paid $197,500 by her employer.

58. In 1999, plaintiff was paid $30,500 by her employer.

59. In 2000, plaintiff was paid $63,000 by her employer.

60. In 2001, plaintiff was paid $129,000 by her employer.

61. In 2002, plaintiff was paid $53,300 by her employer.

62. In 2003, plaintiff was paid $136,800 by her employer.