**ORIGINAL**



IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA ANNE DIVEGLIA formerly CYNTHIA ANNE KAYLOR Plaintiff | § § § § | |
| v. | § § § | Civil Action No. 1 CV-00-1342 |
| NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY Defendant | § § § § | (Judge James McClure) |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE

### I. COUNTER-STATEMENT OF FACTS

This action involves a claim for continuation of disability benefits under a disability policy issued by defendant. Defendant received plaintiff's application to purchase a disability policy with the defendant, conducted an audit and issued to plaintiff a disability policy effective on July 28, 1994. The policy in question was a specialty policy relating to the specialty of trial law. Under the policy and disability Claims Manual, Plaintiff is disabled as a trial lawyer if she is unable to perform the singular duty of advocating before a court. (App.1, Page 11, example 3)

In April 1997 Plaintiff was diagnosed with infiltrating lobular carcinoma of her left breast, a rare cancer that only about 5% of patients are diagnosed with (App.2, N.T. 9 (18-23)). Additionally, all 16 lymph nodes tested were positive for cancer, a condition so

1

severe that it is found in only one of three hundred breast cancer patients of Dr. Borgen (App. 2, N.T. 16(3-9)). She underwent non-protocol chemotherapy to treat her condition.

On June 6, 1997, Plaintiff applied for benefits under the policy as a disabled trial attorney. On August 11, 1997 defendant approved of Plaintiff's claim for disability benefits as a disabled trial attorney. The Plaintiff's first payment was made on August 18, 1997, (30 days after the 90day waiting period that ended July 18, 1997) for the beginning date of disability of April 18, 1997.

Plaintiff was at high risk of recurrence at over 90%, with recurrence almost always, uniformly fatal (App. 2 N.T. 28 (4-5)). Because of this severe risk, her two physicians at Sloan-Kettering provided to defendant disability statements restricting her from employment as a trial lawyer so as to reduce stress as part of the treatment plan to enhance her chance of long term remission and survival.(App. 2, N.T. 26 (16-25); 27(1-8))  After Plaintiff completed her high-dose non-protocol chemotherapy, her physicians at Sloan Kettering completed defendant's disability statements as requested and consistently set forth that she was disabled as a trial lawyer with the last disability statement being dated 18 days prior to termination of benefits.

Plaintiff's physicians' recommendation set forth on defendant's Attending Physician Statements forms remained consistent over a two year period, and continued thereafter (App.2 N.T. 25 (9-25)). Nonetheless, defendant, without having any cancer specialist's medical opinion to contradict or challenge plaintiff's physicians' opinions,

2

and without researching the issue of the relationship between stress and recurrence, ceased making further payments in March 2000. The singular stated reason for termination of benefits was that the medical documentation provided did not support ongoing disability due to medical reasons or limitations. (App. 3) The reason given for not accepting plaintiff's physicians' basis for disability (stress reduction would enhance long term remission) was that Defendant's Medical Director mistakenly believed that there were no medical research studies published to support their opinions. (App. 4, N.T. 22(23-25) 23(1-6); 36-37)) At the time of termination of benefits, the defendant had no medical studies or opinion of any cancer specialist to contradict the opinions of Plaintiff's physicians that stress reduction would enhance long term remission of Plaintiff's cancer. (App. 4, N.T. 36-37)) Defendant's medical director, upon whom defendant's adjusters relied upon did not have certification in oncology, had no experience with the chemotherapy regime provided to the Plaintiff, had no hospital affiliations, was unpublished, had not practiced medicine for 15 years, and was not recognized by his peers as an authority on cancer treatment (App. 5).

    Plaintiff contends she provided sufficient proof of loss to support continuing disability payments, and defendant, without having a reasonable basis to challenge plaintiff's physicians' recommendation, terminated disability benefits. Thus, defendant's actions constituted a breach of contract. Defendant now seeks to exclude at trial the proof of loss evidence it was previously provided and exclude Plaintiff's Physician's testimony.

## II. STATEMENT OF ISSUES INVOLVED

    A.    WHETHER THE ATTENDING PHYSICIAN STATEMENTS OF ONE OF PLAINTIFF'S TWO TREATING PHYSICIANS AND MEDICAL ARTICLES ARE ADMISSIBLE BECAUSE THEY ARE NOT HEARSAY?

    B.    WHETHER THE TESTIMONY OF DR. BORGEN IS ADMISSIBLE BECAUSE HE WAS PLAINTIFF'S TREATING PHYSICIAN AND HIS TESTIMONY RELATES TO TREATMENT RECOMMENDATIONS?

    C.    WHETHER PLAINTIFF'S TESTIMONY RELATING TO THE DEMEANOR OF DEFENDANT'S EMPLOYEES IS ADMISSIBLE BECAUSE DEFENDANT INTENDS TO INTRODUCE INTO EVIDENCE DOCUMENTS THAT RAISE THE ISSUE OF ANIMOSITY BETWEEN THE PARTIES?

## III. ARGUMENT

    A.    **Introduction**

Plaintiff does not intend to call her insurance expert, Elliot Leitner, because his report fundamentally addressed "bad faith" on the part of Northwestern. On defendant's Motion for Summary Judgement, that portion of the claim has been dismissed by the Court in its ruling of March 23, 2004.

The balance of this brief will address other issues raised by defendant in its Motion and brief in support of its Motion.

B.  **The attending physician reports of Dr. Seidman are admissible because they are not hearsay.**

Federal Rule of Evidence, 801(c) defines hearsay as follows: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted". Where a statement is made to merely show something existed, it is not hearsay. Reis Biological Ins. v. The Bank of Sante Fe, 780 F.2d 888, 890-891 (10th Cir. 1986) (permissible to admit documents merely to show they existed). Here, the Attending Physician Statements of Dr. Seidman are being offered not to "prove" Plaintiff was disabled, but rather as three-fold evidence of other matters: (1) They are offered as evidence Plaintiff complied with the terms of the policy in providing on a timely and regular basis (including just days before termination of benefits) the medical forms of Northwestern required to be completed by Plaintiff's treating physician; (2) They are also being offered for the purpose that the opinions expressed at the request of Northwestern of this particular doctor were consistent for the two years prior to the date of termination of benefits and consistent with the recommendation of Dr. Borgen, Plaintiff's other and current treating physician; and (3) They are offered to show Northwestern terminated benefits without a change in circumstances or opinions of Plaintiff's treating physicians. Thus, the hearsay rule does not apply and Plaintiff intends to introduce

the video deposition testimony of several of defendant's employees on these reports for the purposes set forth. Of further importance, the, defendant lists these attending physician reports as exhibits (33, 53, 87, 139). Such use would, at minimum, act as a waiver to the objection.

C.  **The medical journal articles are not hearsay.**

Federal Rule of Evidence, 801(c) defines hearsay as follows: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Where a statement is made to merely show something was stated, it is not hearsay. Reis, *Id.* Where a document is offered for a reason other than the truth of the matter asserted, it is not hearsay. Dunn v. Owens-Corning Fiberglass, 774 F. Supp 929, 943, (D.V.I. 1991) Citing as authority George v. Celotex Corp., 914 F. 2d 26 (2d Cir. 1990) (Report admitted to show foreseeability of risk.)

Here, Plaintiff seeks to introduce into evidence medical journal articles that defendant's medical director claims he never saw despite his admission he read the journals in which there were published. This is important not only as it relates to his credibility, but also because Defendant's asserted reason for termination of benefits was alleged lack of medical documentation. (App.4) Defendant asserts that even though Plaintiff's physicians' set forth in their attending physician

6

statements that stress reduction by not doing trial work would enhance long term survival, there were not studies that supported that recommendation. (App. 4)

Dr. Powell, defendant's medical director, specifically testified that he had never seen any articles that supported or did not support Plaintiff's physicians' recommendations. (App.5   N.T. 21-22). Defendant's adjuster, Gosse, who was involved in terminating the benefits, testified that he relied on the Medical Director's opinion, and also testified that Northwestern's Medical Department "researched the heck out of it." (Existence of studies but was told "they could not find any studies that confirm this opinion." (App 6 N.T.20- 22).

Plaintiff seeks to introduce the journal articles to show that defendant did not "research the heck out of it" or they would have found that, indeed, there were studies that supported Plaintiff's physician's recommendations and thus the reason for termination was baseless. Therefore, the studies are admissible not for the truth of the matter at issue, but for two purposes: (1) to show that the basic premise for the termination of benefits (i.e. no studies to support relationship between stress and recurrence of cancer) was in error and; (2) to attack the credibility of the Medical Director and nurse that Northwestern "researched the heck out of it" or in the alternative, if the Medical Director denies that he did any research, to impeach the credibility of David Gosse that he had no basis to make that statement. If

7

defendant's employees are permitted to discuss lack of medical journal articles to support Plaintiff's physicians' recommendations, Plaintiff would be severely prejudiced by not being allowed to confront those witnesses with the articles they stated did not exist.

Defendant seeks to have Dr. Barbara Weber testify that there were no journal articles that supported Plaintiff's physicians' opinions. Thus, it would be prejudicial or at minimum, put Plaintiff at a severe disadvantage to allow her to discuss the "lack" of supporting studies yet not allow Plaintiff to introduce such studies especially on cross-examination of her. <u>Bobb v. Modern Products,Inc.</u>, 648 F2d 1051, 1055-1056 (5th Cir. 1981) Of interest is defendant's medical expert agrees the supporting studies did exist, but criticizes the underlying data (App.7). The point, however, is that the studies did exist, and benefits were terminated under the false belief that the Medical department researched the issue and stated that no studies existed which supported plaintiff's physician's disability statements and disability benefits were thereby terminated for that reason.(App. 3-4)

Further, defendant's exhibit list sets forth exhibits (75, 102) which reference the studies or the lack of Plaintiff providing them. Again, Plaintiff would be at a severe disadvantage in not being able to cross-examine on the journal articles.

8

### D. Dr. Borgen's testimony is admissible

Defendant seeks to exclude or limit the testimony of Dr. Borgen on the basis that he is an expert witness pursuant to F.R.C.P. 26 (a) and (e)(1) and disclosures were not filed pursuant to that rule. Further, defendant argues Dr. Borgen's opinions do not withstand a <u>Daubert</u> challenge. Defendant's objections are seriously mistaken.

Federal Rule of Civil Procedure 26 (2) (b) relating to expert testimony is in pertinent part as follows:

(2) *Disclosure of Expert Testimony*

"(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness."

The rule continues with further disclosure requirements. As such, only if the expert has acquired facts or developed opinions in anticipation of litigation or trial is he deemed an expert for disclosure purposes. <u>Nelco Corp.v Slater Elec. Inc.</u> 80 F.R.D. 411, 414( E.D. NY 1978) Here, Dr. Borgen is not an expert as defined by the Rule, but rather has been her treating physician from the very first day of her

9

diagnosis and treatment (App. 2 N.T.14 ). He continued to follow her throughout the last seven years and will remain her treating physician (App. 2 N.T.20 (1-7)).

Although he is a recognized expert in cancer treatment, his testimony is that of Plaintiff's treating physician, who provided to Northwestern responses to their questions and the basis of his recommendations. Even though his testimony is as an expert on breast cancer, he is an expert treating physician, not an expert "retained or specially employed to provide expert testimony in the case" His recommendation that she do no further trial work was a treatment recommendation based upon the severity of her condition and not a hired expert opinion. (App. 2 N.T. 26 (16-25); 27 (1-8); 29 (7-17)).

Dr. Borgen additionally responded as to the empirical basis of his opinion as follows:

> Q. Doctor, in your clinical practice and in your recommendations that you made to Cynthia, did you have a basis as to whether or not that recommendation would have an effect on her ability to not have a recurrence?
>
> A. Yes, I did. My overwhelming experience over the last 15 years has been that when things look bad, you do everything you can to try to reverse that, and stress reduction has been in my experience a significantly positive thing in terms of outcome, and conversely, increased stress or lack of stress reduction has - - I very often have seen a negative impact on outcome, and so I said earlier I certainly don't recommend that every patient take off from work and that wouldn't be reasonable, but there are cases like this where I

think it's extremely valuable.
(N.T. 26,(16-25); 27, (1-8))

Again it needs to be noted the empirical basis of this opinion is not a study of 100-200 patients, as is the basis of most studies found in medical journals, but rather treatment and knowledge of over 10,000 patients (App. 2  N.T. 10(16-17).

Even defendant admits that even if Dr. Borgen is deemed as an expert under Rule 26, he is still permitted to testify regarding treatment he rendered (Defendant's Brief at 16).  Part of the treatment was that she not return to trial work.  That treatment recommendation was not a response to a hypothetical question, but part of Plaintiff's actual overall treatment plan because of the severity of the cancer she incurred.  (App.2  N.T. 26 (16-25); 27(1-8); 29 (7-17)), which was based upon Dr. Borgen's empirical treatment and knowledge of over 10,000 breast cancer patients.

A full reading of Dr. Borgen's testimony reveals that all of his direct testimony is based upon his treatment of Plaintiff.  Some of the opinions expressed in response to defendant's cross examination questions relate, in part, to his experience as a cancer specialist.  However, even those responses do not re-designate him from a treating physician with considerable expertise in breast cancer to a hired expert under Rule 26.  Further, defendant asked the question and

11

can not now complain of the answers it received to its questions.

Even if this court rules Dr. Borgen is a Rule 26 expert, no prejudice has been claimed, nor could prejudice reasonably be claimed. Defendant has had his records and Attending Physician Statements for years (See Defendant's Exhibit List in Pre-Trial Memorandum). It was supplied his Curriculum Vitae and took a discovery deposition of Dr. Borgen. Defendant's statement that "By failing to timely identify Dr. Borgen and failing to identify him as an expert witness, the Defendant has no idea what opinions Dr. Borgen may render and has not way of verifying whether his opinions would satisfy the requirements of Rule 702" is not credible. Dr. Borgen's opinion was clearly and consistently expressed over a two year period before suit in his attending Physician Statements. (App.8 N.T. 21-24) His records and reports were set forth on Defendant's exhibit list forwarded to Plaintiff's counsel nearly two years ago. Defendant hired an expert and her report of May 10, 2001, specifically addresses the treatment recommendations of no trial work to reduce stress and avoid recurrence (App. 7).

Last, Defendant seeks to exclude Dr. Borgen's testimony on the basis it is not reliable and fails to meet the <u>Daubert</u> threshold. This argument also fails because his testimony is that of a treating physician whose testimony related to why, as part of his overall treatment plan, he recommended plaintiff not resume trial work (App. 2   N.T. 26(16-25); 27(1-8); 29(7-17)).

Additionally, Defendant's argument fails because Dr. Borgen's opinion and recommendations regarding stress and recurrence of breast cancer is based on specialized knowledge of personally attending to over 10,000 breast cancer patients and is soundly based on his own clinical empirical experience as Chief of Breast Surgery of the oldest cancer treatment center in the country (App.2 N.T. 7-8)). His clear testimony is that this correlation between recurrence of breast cancer and stress is generally accepted. (App. 2 N.T. 27(9-17); 40 (22-25)). Thus, even under the Pennsylvania Frye standard, Dr. Borgen's testimony would be admissible. Daubert, of course, does not require "general acceptance" and has a more relaxed standard. Certainly, Dr. Borgen's clinical knowledge and experience with over 10,000 breast cancer patients sets forth a logical and reliable basis for his opinion. Although, he admits his recommendation that Plaintiff not return to trial work may not be universally accepted, it is not novel science or speculative but because of its very nature stress is difficult to quantify by clinical studies. (App.2 N.T. 40(12-25); 41(1-9)). Moreover, and more important, his opinion and recommendation is a treatment recommendation particular to extreme cancer cases, where, as with the Plaintiff, the cancer is rare, the extent of it is so serious that only between one and two percent of breast cancer patients have such severity, and few survive (App. 2, N.T. 36; 42(16-25); 43(1-14)). Those who have recurrence die. (App. 2 N.T. 28(4-5)). As a treatment recommendation of an extremely rare and dangerous cancerous condition it is outside of the parameters of Daubert.

Nonetheless, since the recommendation has a strong empirical basis, even if subject to a <u>Daubert</u> analysis, his treatment recommendation and opinion are logical and reliable. By analogy, long before <u>Daubert</u>, even in the absence of medical studies, and before the causal relationship between smoking and lung cancer was generally accepted by the medical community, "proof" that cigarette smoking was harmful was admissible because the logic of the harm was so compelling. <u>Pritchard v. Liggett& Myers Tobacco Co.</u>, 295F.2d 292, 296(3d Cir. 1961)

E.   **Testimony regarding demeanor of defendant's employees should not be precluded.**

Defendant has set forth on its exhibit list documents which reflect upon Plaintiff's demeanor regarding various contacts with defendant employees and her demeanor in general (Defendant's exhibits 8, 14). Additionally, Mary Neveln is listed as a witness, as well as N. Versnek. Considering some of the offensive remarks of Mary Nevlen about Plaintiff, (e.g. " . . . difficult time getting her to answer direct questions:"; "The insured repeatedly avoided answering the question . . ..''; after attempting to side-step the question again . . ..") it would be patently unfair on examination of Plaintiff not to allow her to discuss the inappropriate rudeness and crudeness of defendant's employees, yet allow the defendant to enter into evidence by document and testimony, unjustified snipes at plaintiff and

unflattering portrayal of her.

Therefore, if Plaintiff is precluded from testifying as to the demeanor of defendant's employees, defendant should likewise be precluded.

Respectfully submitted,

By: _____

Archie V. Diveglia. Esq.
PA. Attorney I.D. 17140
2 Lincolnway West
New Oxford, PA 17350
Telephone: (717) 624-2500
Fax: (717) 624-3851

DIVEGLIA AND KAYLOR, P.C.
ATTORNEY IN CHARGE FOR
Plaintiff, Cynthia A. Diveglia

## CERTIFICATE OF SERVICE

     I, ARCHIE V. DIVEGLIA, attorney for Plaintiff Cynthia A. Diveglia, on this 7th day of June, 2004, do hereby state that I have served a copy of <u>Plaintiff's Brief in Opposition to Defendant's Motion in Limine</u> upon counsel for Defendant by placing a copy of the same in the United States mail, first class, postage prepaid to:

E. Thomas Henefer, Esquire
Stevens & Lee located at
P.O. Box 679
Reading, PA 19603-0679

                                            Respectfully submitted,

                                            By: _____
                                                Archie V. Diveglia. Esq.
                                                PA. Attorney I.D. 17140
                                                2 Lincoln Way West
                                                New Oxford, PA 17350
                                                Telephone: (717) 624-2500
                                                Fax: (717) 624-3851

     DIVEGLIA AND KAYLOR, P.C.                ATTORNEY IN CHARGE
FOR

                                                Plaintiff, Cynthia A. Diveglia