TOTAL DISABILITY -
DURING INITIAL PERIOD
AFTER INITIAL PERIOD
Rev. 3/97          Page 1

**TOTAL DISABILITY**
  **- DURING INITIAL PERIOD**
  **- AFTER INITIAL PERIOD**

# CONFIDENTIAL

Our ability to determine whether or not an Insured is totally disabled is critical to effective claim analysis. How we do so depends on:
- the contract definition of total disability for the particular contract series involved, *and*
- whether the claim falls within the Initial Period (known as "own occupation period" in pre-LL contracts) or after.

***During the Initial Period, regardless of policy series,*** an Insured is considered to be totally disabled if unable to perform the principal duties of his or her *own occupation* at the time he or she becomes disabled.

***After the Initial Period, for JJ, KK, and KL contracts,*** an Insured is considered to be totally disabled if unable to perform the principal duties of "any occupation for which (the Insured) is or becomes reasonably fitted by education, training or experience with due regard to his vocation and earnings prior to disability."

> [Note that the JJ contract does not include the "due regard" clause
> but it is our administrative practice to apply it.]

***After the Initial Period, for LL, MM, MM90, and QQ contracts,*** an Insured is totally disabled if "unable to perform the principal duties of his occupation and not gainfully employed in any occupation".

> [The term "Initial Period" was first introduced with the LL series.]

---

➲ *Always review the LL and later series definition when reviewing pre-LL claims. Apply the definition most favorable to the Insured.*

➲ For specific contract language, refer to the *Contract and Benefits* section of this manual or the appropriate contract.

---

*Exhibit A* shows the steps to follow in evaluating claims during the Initial Period.
*Exhibit B* illustrates the steps to follow in evaluating claims after the Initial Period has expired.

Plf's
EXHIBIT 3
4-24-01
BROWN & JONES

## Procedures for Determining Total Disability *During* Initial Period

During the Initial Period, we determine whether the Insured is unable to perform the *principal duties* of his or her "*own*", or regular, occupation. A *principal* duty is one which is important to the Insured's profession based on time spent and income generated. After the Initial Period, we also determine whether the Insured is employed in another occupation.

We evaluate each Insured's situation by:

[1] asking what duties the Insured performed *before* disability, and the percentage of time spent on each, for *each* of the Insured's jobs or professions; if a question arises about whether a particular duty is a principal one, we should look at the income derived from it;

[2] reviewing the duties the Insured is still performing;

[3] evaluating the duties the Insured is still capable of performing in light of his or her medical condition.

Most people perform from three to eight principal duties at work. These do not include duties which are incidental or do not contribute to the Insured's income. Since every job is different, you will need to examine each situation to determine what constitutes an Insured's principal duties.

If after disability an Insured is unable to perform any pre-disability principal duties, he or she is considered *totally disabled*. If he or she can perform some but not all, we consider the Insured *partially disabled*.

### Job Titles and Place of Employment
Job titles and place of employment are *not* determinative factors. Our contracts cover the Insured's ability to perform the principal duties that generate income; they do not guarantee employment with a certain employer or business or in a particular position.

### Specialty Occupations
If the Insured is working full-time as a trial lawyer or a board-certified medical specialist, our guidelines concerning specialty occupations may apply. The QQ contract automatically includes language addressing specialty occupations. See *Employment of Insured* section of this manual for further details.

CONFIDENTIAL

**Own Occupation Examples**

The following examples illustrate the concepts of principal duties and own occupation to determine total disability.

- **SITUATION:** A thoracic surgeon spends 70% of his time doing surgery and 30% of his time consulting with patients before and after their surgery. He only takes patients who are referred by other physicians. When he determines that a patient does not need surgery, he refers the patient to another physician. He has a medical impairment that prevents him from performing surgery. He opens a family practice.

  **CONCLUSION:** *This Insured is totally disabled.* All of his job duties directly related to surgery and all of his income was generated by surgery. All of the patients coming to him sought surgery. Therefore, we would view this Insured as having only one principal duty (surgery) of the regular occupation and he is totally disabled because he is unable to perform that principal duty.

- **SITUATION:** An orthopedic physician in a sports medicine clinic spends 20% of his time in surgery, 30% of his time consulting with patients before and after their surgery, and 50% of his time providing non-surgical treatment to patients who do not want surgery. 70% of his income is related to the surgical part of his practice, including the pre- and post-op visits, and 30% from non-surgical duties. He has a medical impairment that prevents him from performing surgery, but he can continue to perform his non-surgical duties.

  **CONCLUSION:** *This Insured is partially disabled.* He is able to perform a principal duty (non-surgical treatment) that produced almost a third of his pre-disability income. As partially disabled, he would receive a Proportionate Benefit based on his loss of income. If his patient load further declines because he can no longer do surgery or if he is released by the clinic because of his disability, the Proportionate Benefit may increase to 100% of the Full Benefit.

- **SITUATION:** An attorney spends 40% of her time in court, 20% of her time on litigation that is settled before trial, and 40% of her time doing estate planning. She has a medical impairment that prevents her from practicing trial law, but she continues to do estate planning.

  **CONCLUSION:** *This Insured is partially disabled.* Benefits would be based on income loss. Although we recognize trial law as an occupational specialty, the Insured was not engaged in trial law full-time at the time the disability began. Since she is still able to perform one of her principal duties (estate planning), she would be considered partially disabled.

CONFIDENTIAL

TOTAL DISABILITY -
DURING INITIAL PERIOD
AFTER INITIAL PERIOD
Rev. 3/97          Page 4

- **SITUATION:** A trial attorney spends 45% of his time in the courtroom litigating cases and 55% of his time taking depositions, meeting with clients, settling cases, and preparing for trials. All of his income comes from litigation. He has a medical impairment that prevents him from making court appearances.

  **CONCLUSION:** *This Insured is totally disabled.* All of his duties are related to his ability to conduct trials and all of his income is generated by litigation work. All of his clients come to him because of his ability to conduct trials. Therefore, we view him as having one principal duty (courtroom advocacy) and because he is unable to perform it, he is totally disabled from the practice of trial law.

- **SITUATION:** During the Initial Period, an Insured is unable to perform any of the principal duties of his "own" occupation but is capable of performing some other occupation. He chooses not to change occupations and get another job.

  **CONCLUSION:** *This Insured is totally disabled.* Under our contract, benefits are due during the Initial Period if an Insured is totally disabled for his own occupation.

> *Remember:* The key to analyzing each of these claims is identifying the principal duties of the Insured's occupation (including specialty occupation) at time of disability and determining whether the Insured can perform those duties while impaired. Our focus is on *time spent* on a job duty and the *income generated* by it.
>
> If the Insured is unable to perform his principal duties, he is totally disabled for his own occupation. If he can perform one or more but not all duties, or has a loss of time, he may be partially disabled.

CONFIDENTIAL

## Procedures for Determining Total Disability *After* Initial Period

We call the six-month period preceding the end of the Initial Period the *own occupation transitional evaluation period*. During this time, we determine whether or not the Insured meets the more stringent definition of total disability applied after the Initial Period.

This transitional evaluation is important. It's significant because sufficient inquiry of an Insured's situation will ensure that benefits are appropriately payable beyond the Initial Period. Prompt and adequate investigation will also ensure that the Company does not lose the right to apply this different definition of total disability to the Insured's situation.

**Follow these steps if appropriate:**

[1]  Six months before the Initial Period ends, a system greenbar form is generated for each policy:

| | SUPERVISOR - GIVE THIS TO THE CLAIM ANALYST<br>ANALYST - THE OWN OCCUPATION PERIOD ENDS IN SIX MONTHS | | | | | | | 2:07 THURSDAY, JUNE 1, 1994 |
|---|---|---|---|---|---|---|---|---|
| | ANALYST=JONES  LIFENR=9999999 | | | | | | | |
| INSURED | POLICY | MOBENFT ENDS | OWN OCC DATE | MAX PMT | PAID_TO | PREM_ANN | MAT_YR | BFTNR |
| JOHN J DOE | D899999 | 500 | 123194 | 071816 | 53194 | 0718 | 2016 | C00000 |

Review the file to determine if the Insured remains totally disabled from the principal duties of the regular occupation. If the file is well documented, and the Insured's inability to perform those duties is clear, document this on the Claim History/Requirements form.

If the Insured is working in another occupation, a proportionate benefit might apply if he or she has a qualifiable loss of earned income. Refer to the *Partial Disability* section of this manual.

If a re-evaluation of the Insured's condition is necessary, proceed with step [2].

[2]  Initiate a comprehensive medical re-evaluation including updated statements from attending physicians and any other sources of treatment. These statements should include a clinical description, a schedule of the course of therapy, and a prognosis.

Also consult with physicians and other practitioners to determine the Insured's motivation to return to work as well as the feasibility of rehabilitation.

CONFIDENTIAL

[3]   Communicate clearly with the Insured *(see ACS letters located in the subcategory "Own Occupation/Initial Period" for a guide)*. Explain the change in definition, and develop an updated personal profile. This should include all current activities: Are those activities in line with pre-disability duties? Can the Insured now perform some duties? What are the Insured's future plans?

[4]   If appropriate, refer the file to the Rehabilitation Committee (see *Rehabilitation Benefit* section of this manual).

[5]   Make a recommendation to your management referral person if you believe benefits should be denied or if you have any questions on how to proceed.

*What if the Insured is capable of working in some other occupation but chooses not to do so?* Even if suitable employment is available and offered, an Insured continues to qualify for total disability benefits if unable to perform his regular occupation and not gainfully employed in any other. The choice to return to work is the Insured's; proceed cautiously in these cases, and always verify that total disability for the regular occupation continues.

If it appears an Insured may be able to perform some of his occupational duties and chooses not to work, see the *Partial Disability* section of this manual.

**Claim Scenarios:**

- A disabled surgeon cannot either perform surgery or work as a general practitioner. He does, however, find employment in a wholly unrelated field with a significant income loss -- as a sales clerk, for example.
  <u>Pre-LL</u> - We pay total disability benefits. This is because the Insured is unable to perform an occupation for which he is qualified.
  <u>LL or later</u> - We pay only a partial benefit. The Insured would not be eligible for a total benefit because he is, in fact, employed.

- Another disabled surgeon whose only duty was surgery cannot perform surgery, but is able to work as a general practitioner. This surgeon, however, decides not to work.
  <u>Pre-LL</u> - Contractually, the pre-LL series language would prevent payment of benefits because the issue in these contracts is whether or not the Insured is *able* to work. As administrative practice, however, we use whichever definition is most beneficial to the Insured -- in this case, the LL definition.
  <u>LL or later</u> - We pay a total benefit. This is because the Insured is *not* employed. If this surgeon began working as a general practitioner at a lower income than before, he would be paid a partial benefit based on income loss.

CONFIDENTIAL

TOTAL DISABILITY -
DURING INITIAL PERIOD
AFTER INITIAL PERIOD
Rev. 3/97            Page 7

**Coding the System after the Initial Period**

| Situation | Action to Take |
|---|---|
| • Insured remains totally disabled from own occupation, chooses not to work | • Code the payment screens for total disability payment.<br>• Send Request for Continuance of Total Disability Benefits form. |
| • Insured remains totally disabled from own occupation, is working in another occupation | If contract series is pre-LL:<br>• Code the payment screens for total disability.<br>• Send Request for Continuance of Total Disability Benefits form.<br><br>Otherwise:<br>• Code the payment screens for partial disability.<br>• Send Request for Continuance of Proportionate Disability Benefits form. |
| • Insured is partially disabled from own occupation, chooses not to work | • Code the payment screens for partial disability.<br>• Send Request for Continuance of Proportionate Disability Benefits form. |
| • Insured is partially disabled from own occupation, is working in another | • Code the payment screens for partial disability.<br>• Send Request for Continuance of Proportionate Disability Benefits form. |

In any of these situations, continue to send the "End of Own Occupation" letter to the Insured at the appropriate time.


CONFIDENTIAL

Case 1:00-cv-01342-JFM    Document 83-2    Filed 06/07/2004    Page 8 of 11

Case 1:00-cv-01342-JFM    Document 83-2    Filed 06/07/2004    Page 8 of 11

### Specialty Occupations

An Insured whose occupation meets our criteria for a *specialty occupation* may be eligible for full benefits when unable to perform the principal duties of that specialty but able to work in a related field.

The QQ contract states:

**CONFIDENTIAL**

> "If the Insured is exclusively engaged in:
> - a medical or dental specialty for which board certification is available; or
> - the specialty of trial law
>
> that specialty is the "regular occupation".

This language is effective March 1, 1994 and is retroactive to all prior series of disability income contracts.

Our criteria for determining whether an occupation qualifies as a specialty for determining benefits are as follows:

✓ The occupation must be a medical or dental specialty for which board certification is available, or <u>trial</u> law.

✓ The Insured must be exclusively engaged in the specialty when the disability begins.

**Non-Claim Inquiries**

If you receive a request for information on specialty occupations when no claim has been filed, do not respond to these inquiries in writing. The sample language below can

**Claims**

When claim-related questions arise, the following sample language may be used as a guide:

> *Under the terms of these policies, "Total Disability" is defined in terms of your ability to perform your occupation. During the Initial Period, you would be considered totally disabled if you cannot perform the principal duties of the occupation in which you were engaged at the time you became disabled. After the Initial Period, you would be considered totally disabled if you were unable to*

*perform the principal duties of your occupation and were not gainfully employed in any occupation.*

*If you were engaged exclusively in a medical or dental specialty for which board certification is available or the specialty of Trial Law, the Northwestern Mutual will consider that specialty to be your occupation. Examples include oral surgery, therapeutic radiology, or <u>(insert a specialty occupation</u> – the specialty MUST be a recognized medical specialty or trial law).*

*As stated in the contract, "occupation" means the occupation you were engaged in at the time you became disabled. If you were regularly engaged in more than one occupation, all of the occupations would be combined together to be your "occupation".*

See your management referral person for any questions you may have.

**CONFIDENTIAL**

EMPLOYMENT OF INSURED
Rev. 1/95                    Page 11

### Determining Disability

These examples may help clarify how we determine disability in a specialty occupation situation.

*Example One:*

A surgeon spends 70% of her time performing surgery and 30% of her time consulting with patients before and after surgery. All of her patients are referred by other physicians; when she determines that a patient does not need surgery, she refers the patient to another physician. This Insured's medical impairment prevents her from performing surgery, and she opens a family practice. *Is she totally disabled?*

Yes. All of her job duties directly related to surgery, all of her income was generated by surgery, and all of her patients sought surgery at the time she became disabled. Therefore, we view surgery as her principal duty, and, because she is unable to perform that duty, she is totally disabled.

*Example Two:*

An attorney spends 40% of his time in court, 20% of his time on litigation that is settled before trial, and 40% of his time doing estate planning. His medical impairment prevents him from practicing trial law, but he continues to do estate planning. Is he *totally* or *partially* disabled?

*Partially disabled with benefits based on income loss.* Although we recognize trial law as an occupational specialty, the Insured was not engaged in trial law full time at the time his disability began. Since he is still able to perform one of his principal duties -- estate planning -- he would be considered partially disabled.

*Example Three:*

A trial attorney spends 45% of his time in the courtroom litigating cases and 55% of his time taking depositions, meeting with clients, settling cases, and preparing for trials. All of his income comes from litigation work. His medical impairment prevents him from making court appearances. Is he *totally* or *partially* disabled?

*This Insured is totally disabled.* All of his duties are related to his ability to conduct trials and all of his income is generated by litigation work. All of his clients come to him because of his litigation ability. Once again, we have an Insured with only one principal duty (courtroom advocacy) who is totally disabled under our DI contracts because he is unable to perform that principal duty.

CONFIDENTIAL

EMPLOYMENT OF INSURED
Rev. 1/95           Page 12

**Procedures**

[1] Gather information that provides you with a clear understanding of the Insured's pre-disability and post-disability job duties and the exact percentage of time spent at each of these duties. This is crucial in determining whether the Insured was exclusively engaged in a professional specialty and is now unable to engage in that specialty. Resources for you to use are as follows:

- Pattern Letter 322 *(DI Miscellaneous Letters)* for physicians

- Job Comparison Statement *(15-1428)*

- Disability Phone Survey *(15-1454)* with a follow-up letter summarizing the conversation, providing space for any additional information, and requesting the Insured's signature to verify the verbal information provided

- MED PHYS function to verify professional credentials *(see Computer Functions and Applications Manual)*

- American Board of Medical Specialties toll-free hotline -- 1-800-776-2378 -- to determine if a physician meets advanced ABMS Board Certification Standards and in what specialties *(about 2/3 of the nation's licensed MDs are ABMS board certified)*

- Wisconsin Board of Specialties -- 1-608-266-2811 *(contact Corporate Information Services for addresses and phone numbers of specialty boards in other states)*

[2] If the Insured appears to meet the criteria, submit a written referral to your management referral person outlining the information you've obtained.

[3] Even if you determine that the Insured is exclusively engaged in a specialty occupation at the time disability began, the Insured must be unable to perform the principal duties of that specialty occupation in order to qualify as totally disabled. For the surgeon specialty, there is only one principal duty -- the ability to perform surgery. There is also only one principal duty for the trial law specialty -- the ability to advocate in court on behalf of a client.

For other specialty occupations, such as a physician specializing in internal medicine, there are several principal duties based on the nature of the Insured's practice.

CONFIDENTIAL