**BROWN & JONES REPORTING, INC.**

IN THE UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------

CYNTHIA ANNE DIVEGLIA formerly CYNTHIA ANNE KAYLOR,

    Plaintiff,

  -vs-                       Case No. 1-CV-00-1342

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

    Defendant.

-----------------------------------------------------------

       Video Examination of SUZANNE BALISTRERI, taken at the instance of the Plaintiff, under and pursuant to the Federal Rules of Civil Procedure, pursuant to Notice, before JANE M. JONES, a Certified Realtime Reporter, Registered Merit Reporter and Notary Public in and for the State of Wisconsin, at Brown & Jones Reporting, Inc., 312 East Wisconsin Avenue, Milwaukee, Wisconsin, on the 24th day of April, 2001, commencing at 10:21 a.m. and concluding at 11:47 a.m.

```
 1   A    Yes, I could.
 2   Q    But you didn't, right?
 3   A    That's correct.
 4   Q    Now, when you say he's speculative, may I assume
 5        that you have a degree in oncology?
 6   A    No.
 7   Q    How do you know he was speculative?
 8   A    This was not the first time we had gotten that
 9        statement nor tried to clarify that statement.
10   Q    Absolutely, it wasn't the first time.  You got this
11        statement repeatedly over a two-year period, didn't
12        you?
13   A    Correct.
14   Q    From the time that Cynthia returned to the law
15        office in an administrative capacity, nontrial
16        lawyer capacity, this has been the consistent
17        statement of both Dr. Borgen and Dr. Seidman, isn't
18        that correct?
19             MR. HENEFER:  Objection to the form.  You
20        can answer.
21             THE WITNESS:  That is correct.
22   BY MR. DIVEGLIA:
23   Q    And you said that he was engaging in speculation.
24        Now, my question is, how do you know that this was
25        speculation that stress reduction would enhance her
```

```
 1            long-term remission?  What facts, what information
 2            do you have that stress reduction would not enhance
 3            her long-term remission?
 4      A     We've not been given any scientific studies, we've
 5            not been given any written documentation to confirm
 6            that.
 7      Q     But you have the opinion of two doctors from
 8            Sloan Kettering, do you not?
 9      A     Yes, I do.
10      Q     Don't you think it's unreasonable, when you have --
11            let me rephrase the question.  You're aware that
12            Sloan Kettering is considered the No. 1 cancer
13            research medical center in the United States?
14      A     Yes, I am.
15      Q     And you're aware that not only is it the No. 1
16            research center in the United States, but in the
17            entire world?  People from Saudi Arabia, kings and
18            queens come here for treatment.  You're aware of
19            that, aren't you?
20      A     I'm aware it's well-renowned.
21      Q     And so you take it upon yourself to doubt the
22            opinions and require more of physicians who work in
23            such an environment, is that what you're saying?
24      A     This would have been required of any physician.
25            This issue would come up.
```

1  A   Yes.
2  Q   Okay. And that is -- would you take the next
3      couple of moments and look through your log and
4      tell me whether you ever logged that, okay?
5  A   Sure.
6              VIDEOGRAPHER: We're off the record at
7      11:18 a.m.
8              THE WITNESS: I think I need a break.
9              (Short recess.)
10             VIDEOGRAPHER: We're back on the record
11     at 11:25 a.m.
12 BY MR. DIVEGLIA:
13 Q   Your answer to my prior question as to whether or
14     not you ever logged, if you asked for specific
15     data, is what?
16 A   I don't believe that's logged. I asked for a
17     medical referral to assist me with understanding
18     the medical issues on this claim.
19 Q   And am I correct that you never asked for any basis
20     for their -- let me ask you this. Maybe I'm
21     overreaching myself. Did either Dr. Powell or Pat
22     Sheehan ever say to you that the opinions of Drs.
23     Borgen and Seidman that trial work would be a major
24     stress factor, therefore, she shouldn't do it, to
25     have long-term remission, did they ever say to you

1    that that position of those two doctors was
2    contradicted by medical literature, medical
3    studies?
4  A   No.
5  Q   So if -- they didn't say that to you, you have no
6    literature or documents that indicate that, you
7    don't have anything to the contrary of their
8    position, do you?
9  A   I have nothing to support their position.
10 Q   No, no. My question is this. They said their
11    position. Before you get to that point, did you
12    have anything that would contradict their position?
13         MR. HENEFER: Whose position?
14 BY MR. DIVEGLIA:
15 Q   Drs. Borgen and Seidman?
16 A   Yes, I did.
17 Q   What was it that you had that contradicted their
18    position?
19 A   The opinion of our medical staff.
20 Q   I thought we just went through that. What was the
21    opinion of the medical staff?
22 A   I would have to look at the referral, but that
23    there was not documentation that stress would
24    enhance the likelihood of a recurrence.
25 Q   Now, because you didn't have any documents of your