**BROWN & JONES REPORTING, INC.**

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

------------------------------------------------

CYNTHIA ANNE DIVEGLIA formerly CYNTHIA ANNE KAYLOR,

Plaintiff,

-vs-                              Case No. 1-CV-00-1342

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

Defendant.

------------------------------------------------

Video Examination of DAVID GOSSE, taken at the instance of the Plaintiff, under and pursuant to the Federal Rules of Civil Procedure, pursuant to Notice, before JANE M. JONES, a Certified Realtime Reporter, Registered Merit Reporter and Notary Public in and for the State of Wisconsin, at Brown & Jones Reporting, Inc., 312 East Wisconsin Avenue, Milwaukee, Wisconsin, on the 24th day of April, 2001, commencing at 2:02 p.m. and concluding at 2:55 p.m.

20

|   |   |   |
|---|---|---|
| 1 |   | that of Dr. Powell? |
| 2 | A | Yes. |
| 3 | Q | And what did Dr. Powell tell you? |
| 4 | A | I'd have to characterize his memos, and I'm sure I'll be leaving some things out, but generally speaking, that the opinions expressed by these two doctors, he's not been able to find a basis that that is accurate, and despite efforts -- to you again, as I recall, you said you were aware of three studies, and you asked who did our research. Well, I can tell you we researched the heck out of it, and to this day, to my knowledge, those studies have not been presented. |
|   |   | I'm sure we certainly would like to see those if they are available, but the fact is that, again, our own medical analysis could not concur with the opinions of the two doctors. |
| 18 | Q | And you say we researched the heck out of it. You mean on that issue as to whether Drs. Borgen and Seidman were incorrect in their opinions? |
| 21 | A | No, as to the existence of studies. |
| 22 | Q | Oh, okay. Who did that research? |
| 23 | A | As I understand, Pat Sheehan and Dr. Powell. |
| 24 | Q | Dr. Powell? |
| 25 | A | Let me just generally say, the medical consultants. |

```
 1         I'm not sure if one, both, or whatever.
 2    Q    Well, did you say to them, at any point, well, even
 3         if you can't find something that confirms what
 4         they're saying, can you find me something that
 5         contradicts it?
 6    A    I'm sorry.  Contradicts what?  Please be specific.
 7    Q    In other words, they did research, somebody did
 8         research, researched the heck out of it, meaning
 9         researching as to whether the opinions of
10         Drs. Borgen and Seidman could be documented?
11    A    Let me stop you right there.  It's not their
12         opinions we were researching.
13    Q    What were you researching?
14    A    The existence of studies.
15    Q    Studies which showed what?
16    A    That would concur with their opinions that stress
17         will cause a reduction in recurrence possibilities.
18    Q    And when you spoke to -- who did you speak to?  Did
19         you speak to Dr. Powell, did you speak to Pat
20         Sheehan as to this research?
21    A    I did not speak with Dr. Powell.  I may have spoken
22         with Pat Sheehan.  I'm not certain as I sit here
23         today.
24    Q    And she said, "We researched the heck out of this,
25         and we couldn't find anything"?
```

1  A    I was told without use of the word heck that they
2       could not find any studies that confirm this
3       opinion.
4  Q    Were you left under the impression that they were
5       doing some kind of a search for any documentation
6       that could confirm these opinions?
7  A    That they were searching for studies. Again, I
8       want to get back to that. We're confusing opinions
9       with studies. They have their opinion, of course.
10      That is there, but we're looking for proof of that
11      assertion.
12 Q    Well, besides whether or not this actually
13      occurred, would I be correct that the policyholder,
14      the claimant has no duty other than to have her
15      doctors express the medical opinions and does not
16      have a duty to have the doctors provide studies
17      that back those opinions?
18           MR. HENEFER: Note an objection as in the
19      other depositions, to the extent it calls for a
20      legal conclusion. You can answer as to your
21      understanding.
22           THE WITNESS: The claims section of the
23      policy provides a good many obligations on the part
24      of the insured, not the least of which is
25      submission of proof of disability.