IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA ANNE DIVEGLIA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. 1: CV-00-1342 |
| v. | : | |
| | : | |
| NORTHWESTERN MUTUAL | : | |
| LIFE INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | (Judge McClure) |

**DEFENDANT'S BRIEF IN OPPOSITION TO
PLAINTIFF'S FIRST AND SECOND MOTIONS IN LIMINE**

Respectfully submitted,

STEVENS & LEE

By: _____

E. Thomas Henefer
Attorney I.D. 55773
Kirk L. Wolgemuth
Attorney I.D. 45792
111 North Sixth Street
P.O. Box 679
Reading, PA 19603

Attorneys for Defendant

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT..............................................................................................4

      A.  PLAINTIFF'S MOTION TO EXCLUDE MATTERS
          ALLEGEDLY COLLATERAL TO THE REASON FOR
          TERMINATION OF BENEFITS MUST BE DENIED. ...........................4

      B.  DEFENDANT IS NOT OFFERING EVIDENCE OF
          SETTLEMENT PROPOSALS...............................................................13

      C.  PLAINTIFF'S SOCIAL SECURITY DECISION IS RELEVANT
          AND ADMISSIBLE...............................................................................14

      D.  THE TESTIMONY OF BARBARA MUELLER.....................................16

      E.  THE TESTIMONY OF BARBARA WEBER, M.D. IS RELEVANT
          AND ADMISSIBLE...............................................................................16

      F.  DOCUMENTS NOT PRODUCED THROUGH DISCOVERY. .............16

      G.  PLAINTIFF CANNOT EXCLUDE THE CHANGES MADE IN
          THE ERRATA SHEETS. ......................................................................17

      H.  THE TESTIMONY OF NATALIE VERSNIK, KIM EVANS,
          MARY NEVLIN AND LAURIE HILT. ..................................................18

      I.  PLAINTIFF'S SECOND MOTION IN LIMINE TO EXCLUDE
          EARNINGS INFORMATION AND APPLICATIONS FOR
          MALPRACTICE COVERAGE MUST BE DENIED..............................19

III.  CONCLUSION.........................................................................................22

(i)

## TABLE OF AUTHORITIES

## CASES

Bay State HMO Management Inc. v. Tingley Systems Inc.,
    152 F. Supp. 2d 95 (D. Mass. 1995)......................................................17

Chocallo v. Bureau of Hearings and Appeals, SSA,
    548 F. Supp. 1349 (E.D. Pa. 1982).......................................................14

Daroczi v. Vermont Center for the Deaf,
    2004 U.S. Dist. LEXIS 1029 (Jan. 28, 2004 D. NH) ..............................17

Doe v. Provident Life and Accident Ins. Co.,
    No. 96-3951 (1997 U.S. Dist. LEXIS 5462)..........................................10

Elwell v. Conair Inc.,
    145 F. Supp. 2d 79 (D. Me. 2001).........................................................17

Greenway v. International Paper Co.,
    144 F.R.D. 322 (W.D. Ca. 1992) ..........................................................17

Krisa v. The Equitable Life Assur. Soc.,
    113 F. Supp. 2d 694 (M.D. Pa. 2000)....................................................11

Titanium Metals Corp. v. Erkem Management Inc.,
    191 F.R.D. 468 (W.D. Pa. 1998)...........................................................17

(ii)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA ANNE DIVEGLIA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. 1: CV-00-1342 |
| v. | : | |
| | : | |
| NORTHWESTERN MUTUAL | : | |
| LIFE INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | (Judge McClure) |

**DEFENDANT'S BRIEF IN OPPOSITION TO
PLAINTIFF'S FIRST AND SECOND MOTIONS IN LIMINE**

## I. INTRODUCTION

This case involves a claim by an attorney who seeks disability

benefits under a disability policy ("Policy") issued by defendant Northwestern

Mutual Life Insurance Company ("Northwestern").  Plaintiff has filed two motions

in limine seeking to exclude the following evidence:

1.  Evidence allegedly collateral to the stated reason for termination of

benefits;

2.  Evidence allegedly relating to settlement discussions;

3.  Evidence of the denial of Social Security benefits;

4.  Testimony of Barbara Mueller;

5.  Expert testimony of Barbara Weber, M.D.;

1

6.  Documents not produced through discovery concerning Northwestern's experience with other claims involving cancer;

7.  Defendant's errata sheets;

8.  Testimony by Natalie Versnik, Mary Nevlin, Laurie Hilt and Kim Evans; and

9.  Evidence of plaintiff's earnings.

Plaintiff's motion in limine must be denied because Northwestern is entitled to introduce information regarding its investigation of plaintiff's claim, her job duties before and after her disability, her earnings before and after her disability, and Northwestern's attempt to obtain this information and plaintiff's efforts to delay the investigation.  These matters are not collateral to Northwestern's stated reason for terminating benefits because plaintiff has to prove entitlement to benefits under the policy – which means she has to establish or satisfy all of the provisions of the policy to prove her breach of contract theory from March 17, 2000 to the present.  In other words, even if the jury concludes that Northwestern's conclusion on the medical evidence (i.e., that there is no link between stress and recurrence of cancer) was wrong, plaintiff must still address the other policy provisions to recover benefits which requires analysis of both pre- and post-disability occupational duties and earnings.

2

Plaintiff's motion to preclude evidence allegedly relating to settlement discussions must be denied because the evidence concerns Northwestern's investigation and not issues of settlement. At the time these discussions occurred, no complaint had been filed so there was no offer of settlement. Furthermore, the evidence is not being offered to establish plaintiff's settlement position. Rather, it is being offered to show the ongoing investigation of plaintiff's claim and plaintiff's refusal to provide the necessary and relevant information.

Contrary to plaintiff's motion, the Social Security decision is relevant because the Social Security Administration found plaintiff was capable of performing her position as a trial attorney. Similarly, as outlined below, plaintiff's hearsay objections are unfounded because the Federal Rules of Evidence give the Court discretion to admit such evidence even if technically hearsay.

As for witnesses, plaintiff's motion in limine to exclude the testimony of Barbara Weber, M.D. must be denied because her testimony is relevant in defending plaintiff's claim of breach of contract. The fact that Northwestern did not have Dr. Weber's opinion when the claim was denied is immaterial to the question of whether plaintiff can satisfy her burden of proof, an issue Dr. Weber's opinion addresses directly.

3

Plaintiff also seeks to exclude the testimony of Natalie Versnik, Kim Evans, Mary Neveln and Laurie Hilt. These witnesses have been identified as possible witnesses only because plaintiff may testify that one or more of Northwestern's employees were insensitive to her during the course of investigating the claim. If this testimony is permitted, Northwestern wants to introduce the individual or individuals allegedly involved in the conversations to refute this testimony.

## II. ARGUMENT

### A. PLAINTIFF'S MOTION TO EXCLUDE MATTERS ALLEGEDLY COLLATERAL TO THE REASON FOR TERMINATION OF BENEFITS MUST BE DENIED.

Plaintiff has moved to exclude defendant's Exhibits 1 to 31, 36 to 52, 56, 58 to 62, 65 to 67, 69 to 70, 75, 78, 91, 93 to 95, 97, 101 to 108, 114 to 115, 118, 124, 130, 132, 148 to 149, and 152 to 153. These documents can be divided into four categories. The four groups include (1) documents relating to medical documents, medical records, and attending physician statements,[1] (2) documents regarding the Policy and requirements of the Policy,[2] (3) documents regarding specific benefit issues[3] and (4) documents regarding Northwestern's investigation

---

[1]    Defendant's Exhibits 5, 14, 15, 21, 23, 25, 26, 29, 30, 69, 152.

[2]    Defendants Exhibits 1, 3, 27, 28, 31, 39, 59, 61, 65, 66, 93.

[3]    Defendant's Exhibits 45, 46, 49, 101, 104.

4

and attempt to obtain information from the plaintiff relevant to Northwestern's evaluation of her claim.[4]

### The First Group: Records on Medical Issues

The medical exhibits are relevant to the defense of Plaintiff's claim. In fact, Plaintiff has identified the same or similar records in her Exhibit list. (See Plaintiff's Exhibit List Nos. 12-18, 20-21, 29, 53 and 58). Plaintiff's medical status and capacity to work are issues in this matter. Such exhibits are therefore relevant.

### The Second Group: Policy and Claim Records

The records in the second group (the Policy and documents such as requests for continuing benefits) are also relevant to the breach of contract claim. The Policy is the basis for plaintiff's claim and Northwestern's defenses and is obviously relevant.

As for the requests for benefits, plaintiff identified the duties she was performing after she returned to work. (Ex. 65). Based upon this evidence, the jury may find that plaintiff was not totally disabled, only partially disabled or not disabled at all. Similarly, the exhibits regarding benefit issues such as the amount

---

[4]  Defendant's Exhibits 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, 20, 22, 24, 36, 37, 38, 40, 41, 42, 43, 44, 47, 48, 50, 51, 56, 58, 59, 60, 61, 62, 66, 67, 69, 70, 75, 78, 91, 94, 95, 97, 102, 103, 105, 106, 107, 148, and 149.

of benefits paid (Ex. 45) are relevant because they demonstrate that Northwestern did in fact comply with its contractual obligations.

### The Third and Fourth Groups of Exhibits

The last two groups of exhibits consist of documents plaintiff claims are collateral to the stated reason for termination of her benefits. These exhibits center on Northwestern's investigation and attempt to obtain documents and information from plaintiff that she refused to provide. Notably, when Northwestern attempted to obtain related information in discovery, the Court compelled its production.

Numerous attempts were made by Northwestern to obtain information regarding plaintiff's duties both before and after she stopped working. (Ex. 66, 70, 78, 95, 97, 102, 104, 105) Northwestern also requested tax information and earnings information to determine whether plaintiff was suffering a wage loss pursuant to the terms of the Policy. (Id.) (Northwestern recently learned after the Court compelled additional discovery that plaintiff had no wage loss for several years after her disability.)

The relevance of the information is confirmed by a number of relevant Policy provisions. First, the Policy insures against either "total" or "proportionate

6

disability" based on the insured's "regular occupation."  Total disability is defined,

in relevant part, as:

> Until the end of the Initial Period, the Insured is totally
> disabled when unable to perform the <u>principal duties of
> the regular occupation</u>. After the Initial Period, the
> Insured is totally disabled when both unable to perform
> the principal duties of the regular occupation and not
> gainfully employed in any occupation.
>
> If the Insured can perform one or more of the principal
> duties of the regular occupation, the Insured is not totally
> disabled;  however,  the  Insured  may  qualify  as
> proportionately disabled.  (Exhibit A)

Similarly, the Policy defines "proportionate disability" in terms of the insured's

inability to perform one or more, but not all, of the "principal duties of the regular

occupation" or "to spend as much time at the regular occupation as before the

disability started."  (See Ex. A).  Further, proportionate disability is based on the

percentage loss in earned income following disability.  The insured must have at

least a 20% loss in earned income and be gainfully employed in an occupation to

be eligible for proportionate disability benefits.

Significantly, "regular occupation" is defined as, "[t]he words 'regular

occupation' mean the occupation of the Insured at the time the Insured becomes

disabled."  (See Ex. A).  The Policy further notes that the regular occupation may

be "the specialty of trial law" if the insured is "exclusively" engaged in that

7

specialty. (Id.) Plaintiff contends that she was engaged in the specialty of trial law

as defined by the Policy.

　　　　The Policy places the burden on plaintiff to substantiate her claim

under the Policy's proof of loss provisions which provide, in relevant part:

> For a claim to be payable, the Company must be
> provided with satisfactory written proof of loss. This is
> information that the Company deems necessary to
> determine whether benefits are payable, and if so, the
> amount of benefits. The proof of loss will include
> information about the Insured's health, occupational
> duties, income both before and after the disability started
> (including income tax returns for the Insured and for
> businesses in which the Insured has or had an interest),
> overhead expenses and disability benefits along with
> other information as may be required by the Company
> from time to time. (Ex. A).

The Policy's proof of loss provisions further require, among other things, that the

insured complete and return medical authorizations and comply with financial

examinations.

　　　　In short, to determine whether plaintiff is entitled to benefits under the

Policy, plaintiff must establish, among other things, her medical condition, her

occupation at the time her alleged disability began, and the "principal duties" of

her regular occupation at the time her alleged disability began. Further, because

plaintiff began working part-time as an attorney in 1998 during the pendency of

her claim, plaintiff must establish her income and duties (before and after her

8

claim) to prove that she is entitled to "proportionate disability" benefits. Since she has the burden to prove these elements of her claim, Northwestern's attempts to obtain this information is relevant in defending her claim.

The evidence is relevant if it establishes Northwestern's defenses. While plaintiff may wish to present her claim as an all or nothing proposition (i.e., total disability benefits or none at all), Northwestern is allowed to defend by arguing that (a) if the jury finds some level of disability, (b) the evidence concerning earnings and occupational duties permits a finding of proportionate (rather than total) disability; and (c) damages are therefore lower than those plaintiff claims. Accordingly, plaintiff cannot limit Northwestern's evidence by attempting to limit the issues in the case to "medical documentation issues" as Northwestern is entitled to introduce evidence to establish its defenses.

Further, the exhibits are directly relevant to plaintiff's burden of proof. Contrary to plaintiff's apparent position, she has the burden to prove her claims at trial and her burden does not end with the medical issue of whether stress and recurrence of cancer are linked. And Northwestern is plainly entitled to introduce evidence to support a defense based on plaintiff's inability to satisfy her burden of proof.

9

Specifically, for purposes of her claim for breach of contract, plaintiff has the burden of proving that she was "disabled within the meaning of the policy and to prove that defendant breached its obligation to pay benefits." Doe v. Provident Life and Accident Ins. Co., No. 96-3951 (1997 U.S. Dist. LEXIS 5462)(E.D. Pa. Apr. 23, 1997) at * 4 (citations omitted). As the Doe court held, "the burden of proof, the burden of going forward, and the burden of ultimate persuasion at trial is cast upon plaintiff to show that defendant breached the contract at issue." Id.

As for plaintiff's breach of contract theory, she has the burden of proving that she is entitled to benefits under the policy. Doe, 1997 U.S. Dist. LEXIS 5462 at * 4. That is, she must establish, among other things, (a) what her regular occupation was, (b) what the principal duties of her occupation were, (c) why she allegedly can no longer perform them, (d) that her disability was total and not proportionate, and (e) if proportionate, the amount of benefits she is entitled to receive on a month to month basis. It is not enough for plaintiff to claim, as she does here, that because the denial of benefits ultimately referred to her medical condition, she is relieved of her burden of proof as to all other aspects of the Policy's provisions. This is especially appropriate here because plaintiff

10

repeatedly refused Northwestern's requests for financial and occupational

information while Northwestern was attempting to administer the claim.

Moreover, even if plaintiff were correct that <u>her</u> burden of proof was

limited to the sufficiency of the medical information submitted, Northwestern is

still entitled to introduce evidence to determine whether her claim satisfies the

other requirements of the Policy. For example, although plaintiff claims to be

unable to work as a trial lawyer, she has repeatedly advertised for clients for a

variety of types of litigation. She has also acknowledged taking a case to trial in

January 2003. Northwestern is entitled to introduce evidence to refute plaintiff's

eligibility for benefits under the Policy.

Simply put, Northwestern's defense to plaintiff's contractual claim

should not be limited to the issues plaintiff chooses to pursue for her claim.

Rather, Northwestern is entitled to introduce evidence relevant to its own defenses,

which may include evidence that plaintiff did not (and likely cannot) satisfy

numerous requirements under the Policy.

For example, in <u>Krisa v. The Equitable Life Assur. Soc.</u>,

113 F.Supp. 2d 694 (M.D. Pa. 2000), the Court held that similar information the

defendant had requested during its investigation of an attorney's claim of disability

was "plainly pertinent" to the claim. 113 F. Supp. 2d at 703. Thus, <u>Krisa</u> further

11

underscores that the evidence defendant intends to introduce here is relevant to the applicable policy terms and plaintiff's motions in limine must be denied.

Here, there is no dispute that most of the exhibits concern Northwestern's attempt to obtain occupational and financial aspects of plaintiff's claim. (See Exs. 66, 102, 107, 95, 70, 78; attached as Ex. B). This information is relevant to plaintiff's claims and/or Northwestern's defenses. Northwestern asked for the types of legal matters plaintiff handled, and the specific tasks she performed before her claim for disability benefits. This information relates directly to her occupation immediately before her claim arose, whether she was engaged "exclusively" in "trial law" and what she is currently able to do. (See e.g. Ex. Nos. 66, 70, 78, 102).

Plaintiff wants to exclude evidence of defendant's attempts to obtain this information. Documents regarding Northwestern's investigation are relevant because plaintiff has the burden to establish her entitlement to benefits each and every day from the date of denial to the present. If plaintiff testifies what her job duties were both before and after her disability and her subsequent return to work, defendant is entitled to introduce evidence of its attempt to obtain this information and establish the fact that plaintiff steadfastly refused to provide this information during Northwestern's investigation. The effect of this evidence is to establish that

12

plaintiff failed to satisfy the provisions in the policy by refusing to provide the requested information. Accordingly, the motions in limine must be denied.

### B. DEFENDANT IS NOT OFFERING EVIDENCE OF SETTLEMENT PROPOSALS.

Plaintiff argues that Northwestern is attempting to introduce into evidence documents relating to settlement discussions between plaintiff and defendant. (Plaintiff's Brief, p. 8). Specifically, plaintiff identifies Exhibits 102, 105, 107, and 115 as exhibits that reflect settlement discussions between the parties. Plaintiff is wrong in her argument. At the time this correspondence exchanged hands, there was no claim filed in this Court. Rather, Northwestern was attempting to investigate plaintiff's claim to see if she was entitled to further benefits. The only dispute that arose between plaintiff and Northwestern at that time was plaintiff's steadfast refusal to provide information such as tax returns and information regarding her job duties. The relevance of this information and evidence of Northwestern's attempts to obtain this information has been discussed in the previous section.

Furthermore, even if these exhibits would evidence settlement negotiations, Rule 408 of the Federal Rules of Evidence does not require exclusion of the exhibits where the evidence is offered for other purposes. As noted above, these exhibits all reflect Northwestern's attempt to obtain information that plaintiff

13

refused to provide regarding her eligibility for benefits under the Policy. Thus, they prove that plaintiff has not satisfied the proof of loss provisions of the Policy. Accordingly, plaintiff's motion must be denied.

### C. PLAINTIFF'S SOCIAL SECURITY DECISION IS RELEVANT AND ADMISSIBLE.

Plaintiff next argues that the Social Security Administration's denial of plaintiff's application for Social Security Disability Income ("SSDI") benefits (Exhibit 46), should not be admissible. Plaintiff claims there is a different standard relating to disability in the SSDI (which considers a broad array of occupations in determining whether one is disabled) as compared to her Northwestern Policy (which limits the inquiry to an inability to perform one's own occupation).

In this case, however, the fact that different standards apply for measuring disability under the Northwestern Policy and SSDI does not render the SSDI decision inadmissible. Instead, the SSDI decision is relevant because the Social Security Administration found that she was not disabled from trial work. Plaintiff is bound by this finding by the doctrine of collateral estoppel. She was a party in the administrative proceeding before the Social Security Administration, she fully litigated her claim and she was found to be able to perform the duties of a trial lawyer. This finding is binding on her in this case. Chocallo v. Bureau of

14

Hearings and Appeals, SSA, 548 F. Supp. 1349, 1362 (E.D. Pa. 1982); aff'd w/o
op, 716 F.2d 889 (3rd Cir. 1983), cert. den., 464 U.S. 983 (1983).

        If anything, the fact that different standards apply means that the SSDI
decision is even more relevant because the Social Security Administration could
have simply denied the claim by contending that there were other types of work
plaintiff could perform. Instead, however, because plaintiff's claim that she is
disabled from trial work was so dubious, Social Security took the unusual step of
finding her not disabled from her own occupation.

        Plaintiff also complains that the SSDI decision is hearsay. But
Rule 807 of the Federal Rules of Evidence provides an exception to the hearsay
rule because the Social Security decision has "guarantees of trustworthiness."
Under Rule 807, the Social Security's finding that plaintiff was not disabled as a
trial lawyer is being offered as evidence of a material fact and it corroborates the
conclusions of Northwestern and its expert, Dr. Barbara Weber. For purposes of
the Rules of Evidence, the interests of justice will best be served by admitting the
statement into evidence. The SSDI decision is an unbiased statement of plaintiff's
capabilities. Finally, defendant has notified plaintiff well in advance that it intends
to use this Exhibit for purposes of trial. Accordingly, plaintiff's motion must be
denied.

15

### D.  THE TESTIMONY OF BARBARA MUELLER.

Given the Court's dismissal of plaintiff's bad faith claim, Barbara Mueller is not expected to testify.

### E.  THE TESTIMONY OF BARBARA WEBER, M.D. IS RELEVANT AND ADMISSIBLE.

Plaintiff claims the testimony of Barbara Weber, M.D. is not relevant as to whether Northwestern committed bad faith.  (Plaintiff's Brief, pp. 11-14). With the bad faith claim dismissed, plaintiff's argument is not relevant.  In any event, it is clear that Dr. Weber's testimony concerning the lack of medical support for a link between stress and recurrence of cancer is relevant in the remaining breach of contract claim.  Northwestern's medical employees also held the same opinion and concluded that stress avoidance was not a valid medical reason for plaintiff to avoid trial work.  Dr. Weber corroborates and confirms the beliefs held by Northwestern's medical personnel.  This evidence is therefore relevant.

### F.  DOCUMENTS NOT PRODUCED THROUGH DISCOVERY.

Plaintiff claims defendant should be prohibited from introducing documents not produced through discovery.  She moves to exclude evidence of prior cases that defendant's physicians relied upon in deciding that plaintiff could return to her position as a trial lawyer.  Defendant, however, has no intention of introducing any documentary evidence of these other cases.  Instead, its witnesses

16

may testify that the recommendations of plaintiffs' doctors were inconsistent with what they had seen in other cases. This type of experience-based testimony is certainly admissible (indeed, one would suspect plaintiff's physicians would say that their recommendations were consistent with their own experience). Accordingly, plaintiff's motion should be denied.

### G.   PLAINTIFF CANNOT EXCLUDE THE CHANGES MADE IN THE ERRATA SHEETS.

Plaintiff argues certain deposition errata sheet revisions must be excluded and cites Greenway v. International Paper Co., 144 FRD 322 (W.D. Ca. 1992) for support. Greenway, however, represents a minority view not followed in the Third Circuit.

Rule 30(e) of the Federal Rules of Civil Procedure allows a deponent 30 days to make "changes in form or substance" to the transcript. The majority of the courts that have reviewed this issue interpret the rule as written and permit changes on form or substance. See Daroczi v. Vermont Center for the Deaf, 2004 U.S. Dist. LEXIS 1029, *17 (Jan. 28, 2004 D. NH), Elwell v. Conair Inc., 145 F.Supp. 2d 79, 86-87 (D. Me. 2001); Titanium Metals Corp. v. Erkem Management Inc., 191 FRD 468, 472 (W.D. Pa. 1998); Bay State HMO Management Inc. v. Tingley Systems Inc., 152 F.Supp. 2d 95, 120 (D. Mass.

17

1995). The majority of the courts that allow the changes require that both responses be read so the jury can judge the veracity of the changes.

Accordingly, plaintiff's motion must be denied.

## H. THE TESTIMONY OF NATALIE VERSNIK, KIM EVANS, MARY NEVELN AND LAURIE HILT.

Plaintiff moves to exclude testimony by Natalie Versnik, Kim Evans, Mary Neveln and Laurie Hilt on the grounds that these witnesses were identified late. There was no late disclosure as plaintiff had access to these witnesses from the earliest stages of the case. In any event, these individuals were identified as potential witnesses only to rebut any testimony by plaintiff that one Northwestern employee, Mary Nevlin, made insensitive remarks to her. Because of plaintiff's complaints, Nevlin was removed from adjusting the file and another adjuster was assigned to handle this claim.

Northwestern has moved in limine to prevent plaintiff from testifying about Nevlin's alleged insensitive remarks which are irrelevant to plaintiff's breach of contract claim. If defendant's motion is granted, these employees will not have to testify. However, if it is not and plaintiff presents such testimony, Northwestern must be able to refute the allegations.

18

## I. PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EARNINGS INFORMATION AND APPLICATIONS FOR MALPRACTICE COVERAGE.

Plaintiff's Second Motion in Limine seeks to exclude her earnings and applications for liability insurance. This information is highly relevant and is therefore admissible.

The Policy purchased by the plaintiff provides for a proportionate disability benefit:

> The Insured is proportionately disabled when: (a) the Insured is unable: to perform one or more but not all of the principal duties of the regular occupation; or to spend as much time at the regular occupation as before the disability started; (b) the Insured has at least a 20% Loss of Earned Income; and (c) the Insured is gainfully employed in an occupation. (See Ex. A).

While plaintiff claims she was totally disabled from March 2000 to the present because she was unable to perform trial work, she has revealed in discovery responses that she has engaged in trial work as early as January of 2003. Indeed, plaintiff has been performing many of the same pre-disability job duties when she returned to work in February of 1998. Prior to April 1997, plaintiff tried about one case per year (Diveglia Dep. pp. 19-20; attached as Ex. C). She prepared discovery (p. 25), prepared payroll (p. 25), performed legal research (p. 26), interviewed clients (p. 27), prepared settlement demands and briefs (p. 27), and engaged in negotiations (p. 27). After she returned to work, plaintiff prepared

19

discovery responses (p. 28), payroll (p. 28), legal research (p. 29), interviewed

clients (p. 30), prepared settlement documents (p. 31), prepared correspondence

(p. 32), prepared briefs (p. 33), reviewed new cases (p. 33), and engaged in

settlement negotiations (p. 33). The only thing she alleges she did not do is go into

court, although she has advertised for trial work for many years and performed trial

work at least since January, 2003.

Defendant can defend plaintiff's total disability claim by arguing that

plaintiff was only partially disabled during part or all of the relevant time period.

To be eligible for proportionate disability benefits, plaintiff must establish a 20%

earnings loss. Her earnings are clearly relevant to the issue of proportionate

disability. In fact, her post-disability earnings were quite substantial and often

resulted in no loss of income.

Moreover, the Policy also provides for a transition benefit:

> [A] proportionate benefit for up to the first 12 months
> after the Insured's recovery from a disability, provided:
> the Insured was disabled until the Beginning Date; the
> Insured has returned to continuous full-time employment;
> the Insured has at least a 20% Loss of Earned Income for
> the month for which the benefit is claimed; and the
> month for which the benefit is claimed is within the
> Maximum Benefit Period. (See Ex. A).

Plaintiff may claim that she is entitled to a transition benefit when she

returned to trial work in January of 2003. Once again, plaintiff must show at least

20

a 20% loss of earned income in order to be entitled to the transition benefit.

Clearly, her earned income is relevant to this issue. Plaintiff argues that she was a

trial lawyer and is disabled from appearing in Court, therefore her earnings are

irrelevant. Defendant intends to present evidence that plaintiff could and can still

perform trial work as well as all of the duties she performed before her diagnosis.

Plaintiff returned to work in 1998 and engaged in many of the duties that she

performed prior to her disability. Indeed, plaintiff has acknowledged that as of

January 2003, she is once again handling trials. The jury may decide that rather

than being totally disabled, plaintiff can perform all of her pre-disability duties but

simply for not as much time and is therefore entitled to a proportionate benefit

rather than a total disability benefit. Thus, evidence of her earnings since she

returned to work in 1998 is very relevant to the issues in this case.

      Northwestern also intends to introduce applications for plaintiff's

malpractice insurance renewal. The purpose of presenting this evidence is to show

that the nature of plaintiff's practice did not change during the course of her

alleged disability. In this regard, the applications completed by plaintiff's partner

established that plaintiff is engaged in the practice of personal injury law. If

plaintiff was disabled from practicing this type of law and appearing in Court and

had to change the focus of her practice to family law as plaintiff now alleges, this

21

information should have been revealed to her malpractice carrier. The fact that this information was not revealed to the malpractice carrier calls into question plaintiff's credibility regarding her occupational activities. Thus, the evidence is relevant in this proceeding.

## III. CONCLUSION

Based upon the above, Northwestern respectfully requests that plaintiff's motions in limine be denied in their entirety.

Respectfully submitted,

STEVENS & LEE

By: _E. Thomas Henefer_
E. Thomas Henefer
Attorney I.D. 55773
Kirk L. Wolgemuth
Attorney I.D. 45792
111 North Sixth Street
P.O. Box 679
Reading, PA 19603

Attorneys for Defendant Northwestern
Mutual Life Insurance Company

22

SL1 447010v1/05843.001

## CERTIFICATE OF COUNSEL

I, E. Thomas Henefer, Esquire, certify that the number of words in the foregoing brief is 4986.

E. Thomas Henefer

23

## CERTIFICATE OF SERVICE

I, E. THOMAS HENEFER, ESQUIRE, certify that on this date I

served a true and correct copy of the foregoing Brief on the following counsel of

record by hand delivery:

> Archie V. Diveglia, Esquire
> Two Lincoln Way West
> New Oxford, PA  17350

Dated:  June  8  , 2004

E. Thomas Henefer

24

SL1 447010v1/05843.001