# EXHIBIT A

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the Insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.

~~CHAIRMAN~~ AND C.E.O. PRESIDENT — SECRETARY

## IMPORTANT NOTICE CONCERNING STATEMENTS IN THE APPLICATION FOR YOUR INSURANCE

Please read the copy of the application attached in this policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied. Carefully check the application and write to THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, 720 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202, within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. The application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

## DISABILITY INCOME POLICY

**Eligible For Annual Dividends.**

Guaranteed Renewable with Guaranteed Premiums to Age 65

Conditionally Renewable to Age 75

**Right To Return Policy** -- Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

QQ.DI.PA

Northwestern Mutual Life®

| | | | |
|---|---|---|---|
| INSURED | Cynthia A Kaylor | AGE AND SEX | 44 Female |
| POLICY DATE | July 28, 1994 | POLICY NUMBER | D1 070 572 |
| PLAN | Disability Income | | |

Exclusions--See Section 3.

QQ.DI

**This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company. Read your policy carefully.**

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. GENERAL TERMS AND DEFINITIONS**

Insured and Owner. Terms on schedule of Benefits and Premiums. Regular Occupation. Total Disability. Partial Disability. Licensed Physician. Consumer Price Index.

**SECTION 2. BENEFITS**

Disabilities covered. Full Benefit payable for total disability. Proportionate Benefit payable for partial disability. How the Proportionate Benefit is determined. Transition Benefit. Lifetime Benefit payable for Presumptive Disability. Waiver of Premium Benefit.

**SECTION 3. EXCLUSIONS AND LIMITATIONS**

**SECTION 4. CONDITIONAL RIGHT TO RENEW TOTAL DISABILITY COVERAGE TO AGE 75**

**SECTION 5. CLAIMS**

How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Limits on when you may start a legal action.

**SECTION 6. OWNERSHIP**

Rights of Owner. Assignment as collateral.

**SECTION 7. PREMIUMS AND REINSTATEMENT**

Payment of premiums. Grace Period of 31 days to pay premiums. Refund of unused premium at death. How to reinstate the policy.

**SECTION 8. THE CONTRACT**

Changes. Time limit on certain defenses. Change of plan. Conversion to level premium disability insurance. Dividends. Definition of dates. Termination.

**ADDITIONAL BENEFITS** (if any)

**APPLICATION**

QQ.DI

# BENEFITS AND PREMIUMS

Date of Issue - July 28, 1994

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|
| Disability Income | $ 4,200 | see page 3A | 22 Years |
| Social Security Substitute (SSS) Benefit | 1,300 | see page 3A | 22 Years |
| Future Increase Benefit Effective until July 28, 2003 - Renewable | | | |

Renewal of coverage beyond age 65 may require an increase in the premium. See Section 4.

A premium is payable July 28, 1994 and every July 28 after that.

The first premium is $2,631.20.

The premium for this policy is on a nonsmoker basis for Occupation Class 6A.

BEGINNING DATE

| | |
|---|---|
| Disability Income | 91st day of disability in the first 180 days after the start of disability. |
| SSS Benefit | 91st day of disability in the first 180 days after the start of disability. |

MAXIMUM BENEFIT PERIOD

| | |
|---|---|
| Disability Income | To the first policy anniversary (July 28, 2016) following the Insured's 65th birthday, but not less than 24 months of benefits. |
| SSS Benefit | To the first policy anniversary (July 28, 2016) following the Insured's 65th birthday. |

INITIAL PERIOD (Coverage for the Insured's own occupation)

| | |
|---|---|
| Disability Income | To the first policy anniversary (July 28, 2016) following the Insured's 65th birthday, but not less than 24 months of benefits. |
| SSS Benefit | To the first policy anniversary (July 28, 2016) following the Insured's 65th birthday. |

| | | | |
|---|---|---|---|
| OWNER | Cynthia A Kaylor, The Insured | | |
| STATE OF ISSUE | Pennsylvania | | |
| INSURED | Cynthia A Kaylor | AGE AND SEX | 44 Female |
| POLICY DATE | July 28, 1994 | POLICY NUMBER | D1 070 572 |
| PLAN | Disability Income | | |

Exclusions--See Section 3.

775

BENEFITS AND PREMIUMS

Date of Issue - July 28, 1994

| | FULL BENEFIT PER MONTH |
|---|---|
| Disability Income | |
| Annually Renewable Premium | $ 4,200 # |
| Social Security Substitute (SSS) Benefit | |
| Annually Renewable Premium | 1,300 # |

# THIS AMOUNT IS CONVERTIBLE TO LEVEL PREMIUM UNTIL JULY 28, 2009.

TABLE OF ANNUAL PREMIUMS

| FOR POLICY YEARS BEGINNING JULY 28, | DISABILITY INCOME ANNUALLY RENEWABLE | ADDITIONAL BENEFIT SSS | TOTAL |
|---|---|---|---|
| 1994 | $ 2,126.80 | $ 504.40 | $ 2,631.20 |
| 1995 | 2,143.60 | 504.40 | 2,648.00 |
| 1996 | 2,181.40 | 508.30 | 2,689.70 |
| 1997 | 2,261.20 | 523.90 | 2,785.10 |
| 1998 | 2,416.60 | 553.80 | 2,970.40 |
| 1999 | 2,622.40 | 595.40 | 3,217.80 |
| 2000 | 2,849.20 | 640.90 | 3,490.10 |
| 2001 | 3,059.20 | 683.80 | 3,743.00 |
| 2002 | 3,059.20 | 715.00 | 3,774.20 |
| 2003 | 3,059.20 | 715.00 | 3,774.20 |
| 2004 | 3,059.20 | 715.00 | 3,774.20 |
| 2005 | 3,059.20 | 715.00 | 3,774.20 |
| 2006 | 3,059.20 | 715.00 | 3,774.20 |
| 2007 | 3,059.20 | 715.00 | 3,774.20 |
| 2008 | 3,059.20 | 715.00 | 3,774.20 |
| 2009 | 3,059.20 | 715.00 | 3,774.20 |
| 2010 | 3,059.20 | 715.00 | 3,774.20 |
| 2011 | 3,059.20 | 715.00 | 3,774.20 |
| 2012 | 3,059.20 | 715.00 | 3,774.20 |
| 2013 | 3,059.20 | 715.00 | 3,774.20 |
| 2014 | 3,059.20 | 715.00 | 3,774.20 |
| 2015 | 3,059.20 | 715.00 | 3,774.20 |

| | | | |
|---|---|---|---|
| INSURED | Cynthia A Kaylor | AGE AND SEX | 44 Female |
| POLICY DATE | July 28, 1994 | POLICY NUMBER | D1 070 572 |
| PLAN | Disability Income | | |

Exclusions--See Section 3.

776

# SECTION 1. GENERAL TERMS AND DEFINITIONS

This policy provides benefits when the Insured is totally or proportionately disabled. Section 1 gives information about or the meaning of several terms that are used in the policy.

### 1.1 INSURED AND OWNER

The Insured and Owner are named on page 3.

### 1.2 TERMS ON SCHEDULE OF BENEFITS AND PREMIUMS

The schedule of Benefits and Premiums (page 3) has a number of important terms that are used in this policy. These terms are:

**Full Benefit.** This is the maximum amount of monthly income payable under this policy.

**Beginning Date.** This is the date on which benefits begin to accrue after the Insured becomes disabled. Benefits are not payable for the time the Insured is disabled before the Beginning Date. Days of disability due to different causes will be accumulated to satisfy the Beginning Date.

**Maximum Benefit Period.** This is the longest period of time that benefits are payable for disability. In determining the maximum length of time for which benefits are payable, periods of total and proportionate disability are added together. If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then see Section 2.7.

**Initial Period.** (Coverage for the Insured's own occupation). During the Initial Period the definition of total disability is based on the Insured's regular occupation at the time the disability starts. The Initial Period starts on the Beginning Date and continues, while the Insured is disabled, for the length of time shown on page 3.

### 1.3 REGULAR OCCUPATION

The words "regular occupation" mean the occupation of the Insured at the time the Insured becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time the disability starts will be combined together to be "the regular occupation."

If the Insured is exclusively engaged in:

- a medical or dental specialty for which board certification is available; or
- the specialty of trial law

that specialty is the "regular occupation."

### 1.4 TOTAL DISABILITY

Until the end of the Initial Period, the Insured is totally disabled when unable to perform the principal duties of the regular occupation. After the Initial Period, the Insured is totally disabled when both unable to perform the principal duties of the regular occupation and not gainfully employed in any occupation.

If the Insured can perform one or more of the principal duties of the regular occupation, the Insured is not totally disabled; however, the Insured may qualify as proportionately disabled.

### 1.5 PROPORTIONATE DISABILITY

The Insured is proportionately disabled when:

a. the Insured is unable:
   - to perform one or more but not all of the principal duties of the regular occupation; or
   - to spend as much time at the regular occupation as before the disability started;

b. the Insured has at least a 20% Loss of Earned Income; and

c. the Insured is gainfully employed in an occupation.

During a period of proportionate disability following the Beginning Date, the Proportionate Benefit may be payable. Until the Proportionate Benefit has been payable for six months, the Insured need not have a 20% Loss of Earned Income to be proportionately disabled if:

- the Insured is unable to perform one or more principal duties which accounted for at least 20% of the time the Insured spent at the regular occupation before the disability started; or
- the Insured has at least a 20% loss of time spent at the regular occupation.

### 1.6 LICENSED PHYSICIAN

Licensed Physician means a physician, other than the Insured, who is acting within the scope of his or her license. If disability is due to a mental or nervous condition, Licensed Physician means psychiatrist or licensed doctoral level psychologist other than the Insured.

### 1.7 REGULAR CARE OF A LICENSED PHYSICIAN

Regular Care of a Licensed Physician means personal care and attention appropriate to the condition causing disability. This care must be at such intervals and frequency as will lead to the Insured returning to the principal duties of the regular occupation.

If the Company determines that Regular Care of a Licensed Physician would be of no further use to the Insured, the requirement of such care will be waived.

777

**1.8 CONSUMER PRICE INDEX**

A consumer price index is used to determine the Indexing Factor as described in Section 2.4 of this policy. The consumer price index used in this policy is the Consumer Price Index for All Urban Consumers, United States City Average, All Items ("CPI-U"). The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company and the insurance supervisory official of the state to serve the same purpose.

The "consumer price index for the year the disability started" is the CPI-U for the fourth month before the start of disability. The "consumer price index for the current year of disability" is the CPI-U for the fourth month before the most recent anniversary of the start of disability.

**1.9 SOCIAL SECURITY SUBSTITUTE (SSS) BENEFIT**

This policy may have the SSS Benefit. If so, the schedule of Benefits and Premiums will show the Full Benefit, Beginning Date and Maximum Benefit Period applicable to the SSS Benefit. The terms and conditions of the SSS coverage are set out in the SSS Benefit.

# SECTION 2. BENEFITS

**2.1 DISABILITIES COVERED BY THE POLICY**

Benefits are provided for the Insured's total or proportionate disability only if:

- the Insured becomes disabled while this policy is in force;
- the Insured is under the Regular Care of a Licensed Physician during disability;
- the disability results from an accident that occurs or a sickness that was diagnosed or treated while this policy is in force; and
- the disability is not excluded under Section 3.

Sickness means sickness or disease of the Insured which is diagnosed or treated while this policy is in force.

Accident means accidental bodily injury sustained by the Insured and which occurs while this policy is in force.

**2.2 FULL BENEFIT FOR TOTAL DISABILITY**

The Full Benefit is payable at the end of the month for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period. When a total disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of total disability.

**2.3 PROPORTIONATE BENEFIT FOR PROPORTIONATE DISABILITY**

The Proportionate Benefit is payable at the end of the month for each month of proportionate disability between the Beginning Date and the end of the Maximum Benefit Period. When a proportionate disability lasts for a part of a month, 1/30th of the Proportionate Benefit will be payable for each day of proportionate disability.

**2.4 HOW THE PROPORTIONATE BENEFIT IS DETERMINED**

The Proportionate Benefit is intended to compensate for a loss of earned income caused by the Insured's disability. The amount of each monthly benefit is the Full Benefit multiplied by Loss of Earned Income and divided by Base Earned Income. Thus, the Proportionate Benefit amount equals:

$$\text{Full Benefit} \times \frac{\text{Loss of Earned Income}}{\text{Base Earned Income}}$$

However, if the Insured has at least an 80% Loss of Earned Income, the Proportionate Benefit amount will be 100% of the Full Benefit. In no event will the amount payable be more than 100% of the Full Benefit.

As required by Pennsylvania Law, the Proportionate Benefit will not duplicate benefits payable under an automobile insurance policy issued to comply with the Motor Vehicle Financial Responsibility Law or Worker's Compensation.

**Choice Of Benefit Amount For First Six Months.** For each of the first six months in which a Proportionate Benefit is payable, the Owner may choose:

- to receive 50% of the Full Benefit; or
- to receive a Benefit based on Loss of Earned Income.

The Owner may alternate between these two choices as to each of the six months. However, the Owner may not change the choice after the Benefit is paid for that month.

The Choice of Benefit Amount does not apply to a Transition Benefit payable under Section 2.5.

**Loss Of Earned Income.** This is:

- the Insured's Base Earned Income; less
- the Insured's Earned Income for the month for which the Benefit is claimed.

The Loss of Earned Income must be caused by the disability for which claim is made.

**Earned Income.** For an Insured who is an employee, Earned Income is:

- the sum of salary, bonuses and commissions paid to the Insured as reported for federal income tax (FIT) purposes; plus
- amounts earned by the Insured which would have resulted in current taxable employee compensation, but instead were contributed by the Insured to a benefit or retirement plan; less
- unreimbursed employee business expenses as reported by the Insured for FIT purposes.

For an Insured who is an owner of a sole proprietorship or a partnership interest, Earned Income is based on amounts as reported for FIT purposes on individual and business tax returns and is:

- the share of gross income from each business, earned by the Insured or others under the Insured's supervision or direction; less
- the Insured's share of normal and customary business expenses. (However, any form of compensation for the Insured's spouse is not deducted as an expense unless the spouse was a paid employee working at least 30 hours per week in the business during the 30 day period before the start of disability.)

For an Insured who is an owner-employee of a corporation or who has Earned Income from more than one source, Earned Income is calculated using all five items of Earned Income as described above.

For amounts in the current or recently ended tax year which have not yet been reported on FIT returns, the calculations above will be based on amounts that will be reported for FIT purposes. Earned Income is determined before the deduction of federal, state and local income taxes. Earned Income does not include forms of unearned income such as: benefits from disability coverage, from deferred compensation, or from retirement plans; dividends; interest; or annuity payments.

At the time a claim for a Proportionate Benefit begins, the Owner must choose:

- to have all items of Earned Income, as described above, credited to the period in which they are earned (accrual basis); or
- to have all items of Earned Income, as described above, credited to the period in which they are received (cash basis). However, income received during a period of disability for work performed prior to the start of the period of disability will not be included in income during the period of disability.

The accounting basis chosen by the Owner will be used to determine both Base Earned Income and Earned Income during a period of disability.

**Base Earned Income.** During the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured for:

- a 12 consecutive month period during the 24 month period before the start of disability; or
- any two of the five calendar years before the start of disability.

The period which generates the highest average (and therefore the highest benefit amount) will be used.

After the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured multiplied by an Indexing Factor. The Indexing Factor is:

- the consumer price index for the current year of disability; divided by
- the consumer price index for the year the disability started.

Thus, after 12 months of a disability, Base Earned Income equals:

$$\text{average monthly Earned Income} \times \frac{\text{consumer price index for the current year of disability}}{\text{consumer price index for the year disability started}}$$

In the event the Indexing Factor is less than one, a value of one will be used.

**2.5 TRANSITION BENEFIT**

The Company will pay a Proportionate Benefit for up to the first 12 months after the Insured's recovery from a disability, provided:

- the Insured was disabled until the Beginning Date;
- the Insured has returned to continuous full-time employment;
- the Insured has at least a 20% Loss of Earned Income for the month for which the benefit is claimed; and
- the month for which the benefit is claimed is within the Maximum Benefit Period.

The amount of this Benefit will be determined under Section 2.4. A Loss of Earned Income is used to determine the amount of Transition Benefit to the extent that it is caused by the disability from which the Insured has recovered.

A disability occurring while the Transition Benefit is payable is considered as a continuation of the previous disability.

This Benefit is payable for up to 12 months for each separate disability. For any month this Benefit is payable, premiums will be waived.

**2.6 TRANSPLANT DONOR**

If the Insured donates an organ for transplant to another person, a disability caused by the donation will be considered as caused by sickness.

**2.7 LIFETIME BENEFIT FOR TOTAL DISABILITY**

If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then the Full Benefit is payable as long as total disability continues during the lifetime of the Insured, provided:

- the Insured is totally disabled on the policy anniversary that follows the 60th birthday of the Insured;
- the total disability continues without interruption to the policy anniversary that follows the 65th birthday of the Insured; and
- the total disability continues without interruption beyond the policy anniversary that follows the 65th birthday of the Insured.

**2.8 LIFETIME BENEFIT FOR PRESUMPTIVE TOTAL DISABILITY**

Even if the Insured is able to work, the Insured will be considered totally disabled if the Insured incurs the total and irrecoverable loss of:

- sight in both eyes;
- use of both hands;
- use of both feet;
- use of one hand and one foot;
- speech; or
- hearing in both ears.

The Full Benefit is payable for this loss provided: the loss occurs while this policy is in force; the loss occurs before the first policy anniversary that follows the 65th birthday of the Insured; the loss results from an accident or sickness; and the loss is not excluded under Section 3. The Insured does not need to be under the care of a physician.

The Full Benefit for the loss:

- is payable monthly;
- starts with the date of loss, not the Beginning Date;
- is payable for as long as the loss continues during the lifetime of the Insured; and
- is in lieu of other benefits payable for total or partial disability.

**2.9 WAIVER OF PREMIUM BENEFIT**

The Company will waive premiums which become due on this policy while the Insured is totally or partially disabled if:

- the disability lasts for at least 90 days; or
- the disability lasts beyond the Beginning Date, if sooner.

The Waiver of Premium Benefit is not limited by the Maximum Benefit Period.

If premiums are waived, the Company will also refund that portion of a premium paid which applies to a period of disability beyond the policy month in which the disability began. If a premium is to be waived on a policy anniversary, an annual premium will be waived.

The Company will not waive the payment of premiums after the end of the disability (except where the waiver continues under Section 2.5). The Owner may then keep the policy in force by resuming the payment of premiums as they become due.

**2.10 REHABILITATION BENEFIT**

At the Insured's request, the Company will consider joining in a program to rehabilitate the Insured. The Company's role in the program will be determined by written agreement with the Insured. Benefits will continue during the program under the terms of the agreement.

**2.11 DISABILITY WITH MULTIPLE CAUSES**

If the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes.

**2.12 BENEFITS FOR SEPARATE DISABILITIES**

Each separate time the Insured is disabled, a new Initial Period, Beginning Date and Maximum Benefit Period start. A disability is considered a separate disability if:

- Full, Proportionate, or Transition Benefits were, but no longer are, payable for the earlier disability; and either
  - the cause of the later disability is not medically related to the cause of the earlier one, and the Insured had resumed on a full-time continuous basis the principal duties of an occupation for at least 30 consecutive days; or
  - the cause of the later disability is related to the cause of the earlier one, and the later disability starts at least 12 months (or 6 months if this contract has a 24 month or 60 month Maximum Benefit Period) after Full, Proportionate, or Transition Benefits cease being payable for the earlier one.

All other disabilities are considered to be a continuation of the prior disability.

780

# SECTION 3. EXCLUSIONS AND LIMITATIONS

### 3.1 PRE-EXISTING CONDITIONS

There will be no benefits for a disability or loss that:

- results from an accident that occurred within five years before the Date of Issue; or
- results from a sickness that was diagnosed or treated within five years before the Date of Issue

if the accident or sickness was not disclosed or was misrepresented in the application.

### 3.2 OTHER EXCLUSIONS

There will be no benefits for a disability or loss that:

- is caused or contributed to by an act or incident of war, declared or undeclared; or
- is excluded from coverage by an Agreement for Limitation of Coverage.

There will be no benefits for a disability or loss which results from the Insured committing or attempting to commit a felony.

### 3.3 LIMITATION REGARDING PREGNANCY AND CHILDBIRTH

For a disability caused by normal pregnancy or childbirth, the Beginning Date will be the 91st day of disability or the Beginning Date shown on page 3, if later. This limitation does not apply to a disability caused by complications of pregnancy or childbirth.

Complications are physical conditions physicians consider distinct from pregnancy even though caused or worsened by pregnancy. For purposes of this policy, a non-elective caesarian birth is a complication of pregnancy. Examples of conditions that are not complications include false labor, fatigue, and morning sickness. Examples of complications of pregnancy are conditions requiring medical treatment prior or subsequent to the termination of pregnancy that your physician considers to be a complication of pregnancy.

# SECTION 4. CONDITIONAL RIGHT TO RENEW TOTAL DISABILITY COVERAGE TO AGE 75

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if:

- the Insured is actively and gainfully employed at least 30 hours per week; and
- premiums to renew this policy are paid.

Actively and gainfully employed means performing the principal duties of an occupation for salary or income.

This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a policy that is renewed, benefits are provided only for total disability. The total disability must be one:

- which occurs while this policy is in force; or
- which commences within 30 days of an accident which occurred while this policy was in force, provided the disability results from the accident.

The premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal.

781

# SECTION 5. CLAIMS

## 5.1 CLAIM FOR POLICY BENEFITS

**Notice Of Claim.** To start a claim for benefits, written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible. The notice should:

- give the Insured's name and policy number; and
- be sent to the Home Office or be given to an authorized agent of the Company. Mail sent to the Home Office should be addressed as follows:

  The Northwestern Mutual Life Insurance Co.
  Attn: Disability Benefits
  720 East Wisconsin Avenue
  Milwaukee, Wisconsin 53202

**Proof Of Loss.** For a claim to be payable, the Company must be provided with satisfactory written proof of loss. This is information that the Company deems necessary to determine whether benefits are payable, and if so, the amount of the benefits. The proof of loss will include information about the Insured's health, occupational duties, income both before and after the disability started (including income tax returns for the Insured and for businesses in which the Insured has or had an interest), overhead expenses and disability benefits along with other information as may be required by the Company from time to time. The Company will also need to be provided information as described below under "Other Requirements."

The Company will furnish claim forms for an initial written proof of loss within 15 days after receiving notice of claim. These forms will need to be completed by the Owner, the Insured and the Insured's physician. If these forms are not furnished within the 15 day period, this initial written proof of loss may be made without the use of the Company's forms.

The Company will furnish additional claim forms from time to time while a claim for monthly benefits continues.

Written proof of loss must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible. In any event, the proof required must be given no later than one year and 90 days after the end of each monthly period for which which benefits are claimed unless the Owner was legally incapacitated.

**Other Requirements.**

- **Authorizations.** From time to time, the Company will furnish the Insured with authorizations to obtain information. These authorizations must be signed by the Insured and returned to the Company.
- **Medical Examination.** The Company may have the Insured examined by a health care practitioner.
- **Personal Interview.** The Company may conduct a personal interview of the Insured.
- **Financial Examination.** The Company may have the financial records of the Insured or the Owner examined.

Any examination or interview will be performed:

- at the Company's expense;
- by a health care practitioner, interviewer or financial examiner of the Company's choice; and
- as often as is reasonably necessary in connection with a claim.

## 5.2 TIME OF PAYMENT OF CLAIMS

When the Company has received satisfactory proof of loss and other information as required by section 5.1 and the Company has determined that benefits are payable, the Company will pay benefits on a monthly basis.

## 5.3 PAYMENT OF CLAIMS

Benefits will be paid to the Owner or to the Owner's estate.

## 5.4 LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of loss has been given. No legal action may be brought after three years (or a longer period that is required by law) from the time written proof is required to be given.

# SECTION 6. OWNERSHIP

## 6.1 POLICY RIGHTS

All policy rights may be exercised by the Owner, or the Owner's successor or transferee.

## 6.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will take effect as of the date it was signed. The Company may require that the policy be sent to its Home Office for endorsement to show the transfer.

## 6.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will not be responsible to an assignee for any payment or other action taken by the Company before receipt of the assignment in writing at its Home Office.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 6.2.

# SECTION 7. PREMIUMS AND REINSTATEMENT

## 7.1 PREMIUMS

**Payment.** All premiums after the first are payable at the Home Office or to an authorized agent. A premium must be paid on or before its due date. A receipt signed by an officer of the Company will be furnished on request.

**Frequency.** Premiums may be paid annually, semi-annually or quarterly at the published rates of the Company. A change in premium frequency will take effect on the Company's acceptance of the premium for the new frequency. Premiums may be paid on any other frequency approved by the Company.

**Grace Period.** A grace period of 31 days will be allowed for payment of a premium that is not paid on its due date. This policy will be in full force during this period.

The policy will terminate at the end of the grace period if the premium is not paid.

**Premium Refund At Death.** The Company will refund that portion of any premium paid for a period beyond the date of the Insured's death.

## 7.2 REINSTATEMENT

**Within Late Payment Period.** The late payment period is the first 31 days after the grace period. Within the late payment period, the policy will be reinstated as of the date the overdue premium is paid. No evidence of insurability will be required.

**After The Late Payment Period.** After the late payment period, the cost to reinstate must be paid to the Company. The Company may also require an application for reinstatement and evidence of insurability. The policy will be reinstated as of the date the cost to reinstate was paid to the Company if:

- the application is approved by the Company; or
- notice that the application has been disapproved is not given within 45 days from the date the Company receives the application.

The policy will be reinstated as of the date the Company accepts payment of the cost to reinstate if the Company does not require an application.

**Coverage.** If no evidence of insurability is required, the reinstated policy will cover only a disability that starts after the date of reinstatement. If evidence of insurability is required:

- the reinstated policy will cover only a disability that results from an accident that occurs, or from a sickness that was diagnosed or treated after the date of reinstatement; and
- the Company may attach new provisions and limitations to the policy at the time of reinstatement. All other rights of the Owner and the Company will remain the same.

**Duty With Armed Forces.** If the policy terminates while the Insured is on active duty with the armed forces of any nation or group of nations, the policy may be reinstated without evidence of insurability. The policy will be reinstated as of the date a written request and the pro-rata premium for coverage until the next premium due date are received by the Company. The request must be received:

- no later than 90 days after the Insured's release from active duty; and
- no later than 5 years after the due date of the unpaid premium.

# SECTION 8. THE CONTRACT

## 8.1 ENTIRE CONTRACT; CHANGES

This policy with the application and attached endorsements is the entire contract between the Owner and the Company. No change in this policy is valid unless approved by an officer of the Company. The Company may require that the policy be sent to it to be endorsed to show a change. No agent has authority to change the policy or to waive any of its provisions.

## 8.2 TIME LIMIT ON CERTAIN DEFENSES

In issuing this policy, the Company has relied on the application. The Company may rescind the policy or deny a claim due to a material misstatement in the application. However, after this policy has been in force for two years from the Date of Issue, no misstatement, except a fraudulent misstatement, in the application may be used to rescind the policy or to deny a claim for a disability or loss that starts after the two year period.

In addition, a claim may be denied on the basis that a disability or loss is caused by a Pre-Existing Condition (see Section 3.1). However, the Company may not reduce or deny a claim on that basis if the disability or loss:

- starts after two years from the Date of Issue; and
- is not excluded from coverage by an Agreement for Limitation of Coverage.

783

**8.3 CHANGE OF PLAN**

The Owner may change this policy to any plan of disability insurance agreed to by the Owner and the Company. The change will be subject to:

- payment of required costs; and
- compliance with other conditions required by the Company.

All premiums and dividends after the date of change will be the same as though the new plan had been in effect since the Policy Date.

**8.4 CONVERSION TO LEVEL PREMIUM DISABILITY INSURANCE**

The Owner may convert the Annually Renewable Premium (ARDI) coverage, if any, shown on page 3 to a level premium disability income insurance policy. The conversion may be done on or before the the conversion date shown on page 3. No evidence of insurability will be required. The right to convert is not available if the premiums are being waived for this policy.

A portion of the ARDI coverage may be converted, subject to conditions set by the Company.

The new policy will be in the form and have the same terms as policies being issued by the Company at the time of conversion. The terms available for the new policy will be based on the classification of risk of this policy. The new policy will have the following terms:

- the amount of the Full Benefit will be the amount of benefit converted;
- the Maximum Benefit Period and Initial Period will not be longer than the Maximum Benefit Period and Initial Period of this policy;
- the Beginning Date will be any Beginning Date offered at the time the new policy is purchased that is not earlier than the Beginning Date of this policy; and
- the new policy will be issued with additional benefits which are on the converted coverage and which are then available to new Insureds.

**Limitations Of Coverage.** The new policy will include any Agreement for Limitation of Coverage that is a part of this policy.

**Premium.** The premium for the new policy is determined as of its date of issue by:

- the Company's premium rates then in effect in the state where the Insured then resides;
- the Insured's age on the policy date of the new policy;
- the plan and amount of insurance issued; and
- the classification of risk of this policy.

**Cost Of Conversion.** The cost of conversion will be the first premium for the new policy less any dividend and premium credit for the benefit amount converted.

**Effective Date.** The new policy takes effect on the date the Company receives the application or the cost of conversion, whichever is later.

**8.5 MISSTATED AGE OR SEX**

If the age or sex of the Insured has been misstated, the benefits will be those which the premiums paid would have purchased at the correct age or sex.

**8.6 CONFORMITY WITH STATE STATUTES**

Any provisions of this policy which, on the Date of Issue, are in conflict with the statutes of the State of Issue on that Date are amended to conform to such statutes. The State of Issue is shown on page 3.

**8.7 DIVIDENDS**

This policy will receive its share of the divisible surplus, if any, of the Company. Divisible surplus is determined annually. This policy's share will be credited as an annual dividend.

Dividends will be:

- used to reduce premiums; or
- paid to the Owner when premiums are being waived.

**8.8 DATES**

Provided the first premium is paid, this policy will take effect on the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3 of this policy.

**8.9 TERMINATION**

If premiums are paid when due, this policy will not terminate until the first policy anniversary following the 65th birthday of the Insured or, if later, when the right to renew the policy ends (see Section 4). However, if the Insured is disabled on the date determined above, the termination will not take effect until benefits are no longer payable due to that disability.

784

# SOCIAL SECURITY SUBSTITUTE (SSS) BENEFIT RIDER

## 1. THE BENEFIT

The Company will increase the amount of the monthly income payable under the policy when disability benefits are not available from Social Security, subject to the terms and conditions stated below.

Between the SSS Benefit Beginning Date and the end of the SSS Benefit Maximum Benefit Period, the Full Benefit otherwise payable under the policy will be increased by either:

- the amount of the SSS Benefit when the Insured is not entitled to Social Security benefits based on the Insured's disability; or
- 40% of the amount of the SSS Benefit when the Insured, but no member of the Insured's family, is entitled to Social Security benefits based on the Insured's disability.

This increase can occur only while the SSS Benefit is in force. The Full Benefit, as increased, will be used to determine the amount of the Proportionate and Transition Benefits. The six month period for which a 50% benefit is available under the Proportionate Benefit is measured from the Beginning Date for disability income coverage, not the SSS Benefit Beginning Date.

The premium for and the amount of this Benefit are shown on page 3. The SSS Benefit Beginning Date and the SSS Benefit Maximum Benefit Period are also shown on page 3.

The SSS Benefit is not convertible.

## 2. EXCEPTIONS

**No Benefits After 65.** In no event will the Full Benefit be increased by the terms of the SSS Benefit after the first policy anniversary that follows the 65th birthday of the Insured. At that time, the SSS Benefit will terminate.

**Social Security Benefits.** The Full Benefit is not increased by the terms of the SSS Benefit:

- when both the Insured and at least one member of the Insured's family are entitled to Social Security benefits based on the disability of the Insured; or
- when the Insured has elected to receive retirement benefits from Social Security.

## 3. PROOF OF SOCIAL SECURITY BENEFITS

For the Full Benefit to be increased by the terms of the SSS Benefit, evidence as required by this section must be given to the Company. These requirements are in addition to those set out in the Claims Section of the policy.

**Entitlement To Benefits.** At the request of the Company, written proof must be given to the Company that the Insured is not entitled at that time to Social Security benefits based on the Insured's disability. The proof must show:

- that the Insured has applied for Social Security benefits based on the Insured's disability; and
- the decision made by Social Security on the application.

If the Insured's application is denied and the Insured appears to the Company to be entitled to Social Security benefits, the proof must show:

- that the Insured has asked for a reconsideration of the decision; and
- if the decision is not changed, that the Insured has appealed the decision further.

The Company must also be given the Insured's written authorization to obtain information from Social Security about the Insured's claim.

**Benefits Pending Decision By Social Security.** Once the Insured has applied for benefits from Social Security, the Full Benefit will be increased under the terms of the SSS Benefit:

- for six months; or
- until the Insured receives the decision from Social Security, if sooner.

The Company will continue the increases beyond six months if it is satisfied that Social Security has not made a decision on the Insured's claim for reasons which are beyond the Insured's control. If increases have been stopped and Social Security later denies the Insured's claim, the Company then will pay those increases that would have been paid under the SSS Benefit had they not been stopped.

**Change In Status.** The Company must be notified at the time there is a change in the Insured's entitlement to Social Security benefits based on the status of the Insured's disability.

**Proof As To Family Member.** When a member of the Insured's family may be entitled to Social Security benefits based on the Insured's disability, the terms of this section as to the Insured also apply to that member.

## 4. ADDITIONAL DEFINITIONS

**Social Security.** The words "Social Security" mean the program established under the federal Social Security Act in its present form or as it may be amended or replaced in whole or in part.

**Member Of Family.** A member of the Insured's family is one who is entitled to Social Security benefits due to a relationship to the Insured.

## 5. TERMINATION

The SSS Benefit will terminate on the earliest of the following dates:

- the date of termination of this policy;
- the first policy anniversary that follows the 65th birthday of the Insured; or
- the date on which the Home Office receives the Owner's written request.

John M. Bremer

Secretary
THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

QQ.DI.SSB.PA

# FUTURE INCREASE BENEFIT RIDER (FIB)

## 1. THE BENEFIT

The Company will annually index the Full Benefit on each policy anniversary to reflect increases in consumer price levels, subject to the terms and conditions in this Benefit. The increased coverage which results from the indexing will remain in effect for as long as the policy is in force and premiums are paid for the increased Full Benefit. Any benefit that is based on the amount of the Full Benefit will be increased in proportion to the increase in the Full Benefit.

**Increases Deferred During Disability.** Increases will not be made during a period for which premiums are waived. However, increases that would have been made during a period of disability but for the limitation in the prior sentence will take effect after premiums cease to be waived. The increases will be in effect for a separate disability suffered by the Insured (see Section 2.12 of the policy). The period for which premiums are waived includes any period for which the Transition Benefit is payable.

## 2. PREMIUM INCREASE

The premium for this policy will increase on the same date as each increase in the Full Benefit takes effect. The amount of each premium increase will be based on the increase in the Full Benefit and the premium rates as shown on page 3A.

When the Full Benefit is increased, the Company will provide an amendment to the schedule of Benefits and Premiums.

## 3. HOW AN INCREASED FULL BENEFIT IS DETERMINED

The Full Benefit for a policy year will be the Full Benefit for the prior policy year multiplied by the Indexing Factor. For purposes of determining the amount of the increase, the "Full Benefit" will be the sum of the disability income Full Benefit and any Social Security Substitute Full Benefit. The increase will be subject to a minimum and maximum described below. The Indexing Factor is:

- the consumer price index for the prior calendar year; divided by
- the consumer price index for the next prior calendar year.

Thus, the new Full Benefit equals:

$$\text{prior year Full Benefit} \times \frac{\text{consumer price index for the prior calendar year}}{\text{consumer price index for the next prior calendar year}}$$

**Minimum And Maximum Increase.** The Full Benefit for a policy year will not be less than 104% of the Full Benefit for the prior policy year. The Full Benefit for a policy year will not be more than 108% of the Full Benefit for the prior policy year.

**Consumer Price Index.** The "consumer price index for the prior calendar year" is the Consumer Price Index for All Urban Consumers, United States City Average, All Items (CPI-U) for the month of September of the prior calendar year. The "consumer price index for the next prior calendar year" is the CPI-U for the month of September for the calendar year before the prior calendar year.

The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company and the insurance supervisory official of the state to serve the same purpose.

## 4. WHEN INCREASES IN THE FULL BENEFIT OCCUR

Except for increases that are deferred during a period for which premiums are waived, an increase in the Full Benefit will occur on each policy anniversary if the Owner has the right to receive increases at that time. The right to receive increases starts on the first policy anniversary and continues until:

- the Owner refuses two increases; or
- the last date on which this Benefit is in effect, as stated on page 3, if earlier.

The Owner can refuse to accept an increase:

- by not paying the increased premium resulting from this Benefit; or
- by sending a written notice to the Home Office of the Company before the increase takes effect.

If increases have stopped due to two refusals of increases, or because the Insured did not meet the Company's financial underwriting standards when this Benefit was previously renewable, the Owner will regain the right to receive further increases starting on the earlier of:

- the date, if any, this Benefit may be renewed under Section 5 of this Benefit, provided the Insured meets the Company's financial underwriting standards that are then in effect and the renewal date is not later than the first policy anniversary following the 55th birthday of the Insured; or
- the first policy anniversary after the Insured meets all of the Company's standards of insurability that are then in effect. These standards include the Insured's health, activities, and occupation as well as the Insured's financial condition.

**5. RENEWAL**

Page 3 shows the last date on which this Benefit is in effect. However, if it is stated on page 3 that this Benefit is renewable, the Owner may renew this Benefit for subsequent five-year periods. In no event will the Benefit be in effect after the first policy anniversary after the 64th birthday of the Insured.

To renew this Benefit, the Insured must meet the Company's financial underwriting standards that are then in effect. These standards include:

- the Insured's earned and unearned income;
- the Insured's net worth;
- the amount and type of disability coverage that the Insured has or for which the Insured may be eligible after a qualifying period of employment; and
- the Company's issue limits.

Satisfactory evidence of insurability must be provided to the Company no more than 90 days and no less than 45 days before the anniversary on which this Benefit is to be renewed.

For purposes of Section 8.2 of the policy, the Date of Issue for increases during any renewal of this Benefit will be the policy anniversary on which this Benefit is renewed.

**Conditional Renewal Excluded.** This Benefit will not be in force if the policy is in force under the Conditional Right to Renew Total Disability Coverage to Age 75.

**6. TERMINATION**

The Future Increase Benefit will terminate on the earliest of the following dates:

- the date the policy terminates;
- the date the Home Office receives the Owner's written request; or
- the first policy anniversary that follows the Insured's 64th birthday.

John M. Bremer

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

PA 001278

Policy Number: D10705 72

# DI DISABILITY INSURANCE APPLICATION

Northwestern Mutual Life Insurance Company • Milwaukee, Wisconsin

•Complete entire application for individual business and MultiLife Association Business.
•Complete the application omitting the shaded areas for MultiLife Employer Sponsored Business.

For MultiLife Business, complete Supplement #17-1052 - Enter MultiLife Discount Plan Number: ______

☑ NEW ISSUE ☐ APB OPTION | CONVERSION
☐ GROUP LTD APB OPTION | ☐ ARDI ☐ Interim Term ☐ Group LTD Original Policy Number: ______

Has an application or informal inquiry ever been made to Northwestern Mutual Life for annuity, life or disability insurance on the life of the Insured? ☐ Yes ☑ No If yes, the last policy number is ______

**INSURED**

**1** A. Name: ☐ Mr. ☐ Mrs. ☑ Ms. ☐ Dr. ☐ Other ______ FIRST CYNTHIA MIDDLE INITIAL A LAST KAYLOR

B. ☑ Female ☐ Male

C. Social Security Number: 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

D. Birthdate: MO 12 DAY 22 YR 50

E. State of Birth (or Foreign Country): PA

F. Primary Residence: STREET & NO OR RFD 216 Willis Rd CITY Etters STATE PA ZIP 17319

**APPLICANT** - *IF OTHER THAN INSURED*

**2** A. Name: ☐ Mr. ☐ Mrs. ☐ Ms. ☐ Dr. ☐ Other ______ FIRST MIDDLE INITIAL LAST

B. Relationship to Insured: ______ C. Address: STREET & NO OR RFD CITY STATE ZIP

**OWNER** - *DO NOT COMPLETE FOR KEYPERSON OR BUYOUT*

**3** The OWNER of the policy(ies) will be:
☑ Insured ☐ Applicant ☐ Other (Full Name and Relationship) ______

**PREMIUM PAYER**

**4** A. Send premium notices and other notices for this policy(ies):
TO: ☑ Insurance Service Account (ISA) Payer | ☐ Insured ☐ Applicant ☐ Owner ☐ Other ______ FULL NAME
OR AT: ☐ Insured's Address in #1F. ☐ Applicant's Address in #2C.
☐ Other ______ STREET & NO OR RFD CITY STATE ZIP

B. Daytime Telephone Number: Area Code (717) 231-4081

C. Taxpayer ID Number: (See TIN Instructions p.14)
☑ Insured's SS# in 1C, or ☐ Other: # ______ TIN NUMBER

D. Has the premium for the policy applied for been paid in exchange for the Conditional Disability Insurance Agreement with the same number as this application? ☑ Yes ☐ No

E. Payable: ☑ Annually ☐ Semiannually ☐ Quarterly

F. Will the Insured's employer pay the whole premium for this disability insurance? If yes, answer G and H. ☐ Yes ☑ No

G. Will any part of the premium be included in the Insured's taxable income? ☐ Yes ☐ No

H. Will the Insured reimburse the employer for any part of the premium? ☐ Yes ☐ No

**OCCUPATION**

**5** A. Name of Employer or Business: Diveglia & Kaylor P.C.

B. Product or service the employer provides: Legal Services

C. Employer's Address: STREET & NO. OR RFD 119 Locust St CITY Harrisburg STATE PA ZIP 17101

D. PRIMARY Occupation: Attorney

E. Other Occupations: —

F. Professional Degree or Credentials: J.D. Dickinson School of Law

G. Professional Specialty, if any: Litigator

H. Describe Insured's occupational duties by stating the percentage of time spent on these duties:
(Do not complete if the Insured's occupation is an attorney, dentist, or physician.)
____% Managerial/Admin. ____% Travel ____% Sales ____% Keyboard work ____% Physical/Manual 100% Other: Litigation

I. Average number of hours worked per week 60 hrs.

J. Business located in the home? ☐ Yes ☑ No
Average hours per week worked outside of home ______

K. Length of time: In current occupation 5 With current employer 3
If less than 3 years, state prior occupation(s) and employer(s) for the last 3 years:

L. Current State of Employment: PA

M. Does the Insured intend to change occupation, employer, or employment status in the next six months? ☐ Yes ☑ No
If yes, explain: ______

**ADDITIONAL PURCHASE BENEFIT OPTION** - *COMPLETE THIS SECTION IF EXERCISING AN APB OPTION*

**6**

NOTE: If available, up to two Regular or two Special/Advance options may be exercised.

A. List the policy number(s) and purchase amount(s) for each option used:

1. Policy Number ____________ Regular $ ____________ Special/Advance $ ____________
2. Policy Number ____________ Regular $ ____________ Special/Advance $ ____________
3. Policy Number ____________ Regular $ ____________ Special/Advance $ ____________

B. Special or Advance Purchase applied for within 90 days after: (check one)

☐ Marriage* ☐ Birth of child* ☐ Adoption of child* ☐ Employer discontinued group DI coverage ☐ Increase in annual earned income

*Name: ☐ Spouse ☐ Child *Date and place of marriage, birth or final decree of adoption:

FIRST MIDDLE INITIAL LAST ___/___/___ MO DAY YR CITY STATE

**POLICY APPLIED FOR**

**7**

| | Monthly Benefit | Maximum Benefit Period | Beginning Date | Initial Period to Age |
|---|---|---|---|---|
| ☒ DISABILITY INCOME POLICY | | | | |
| Level Premium | $ | | | ☐ 65 ☐ 70 |
| Level Premium/Annually Renewable Premium | $ ____ (LEVEL) / $ ____ (ARDI) | | | ☐ 65 ☐ 70 |
| Step Rate Premium | $ | | | ☐ 65 ☐ 70 |
| Step Rate/Annually Renewable Premium | $ ____ (STEP) / $ ____ (ARDI) | | | ☐ 65 ☐ 70 |
| Annually Renewable Premium | $ 4,200 | 65 | 91 | ☑ 65 ☐ 70 |
| ☐ INTERIM TERM POLICY (term period ____ (1-5 years)) | $ | | | ☐ 65 ☐ 70 |

☐ DISABILITY OVERHEAD EXPENSE POLICY

☐ Business ☐ Professional

Aggregate Benefit ☐ 12 ☐ 24 (times monthly maximum benefit)

| | | |
|---|---|---|
| Level Premium | $ | |
| Level Premium/Annually Renewable Premium | $ ____ (LEVEL) / $ ____ (ARDI) | |
| Annually Renewable Premium | $ | |

☐ KEYPERSON POLICY (Complete Keyperson Supplement, form #90-1927)

☐ BUYOUT POLICY (Complete Buyout Supplement, form #90-1928)

**ADDITIONAL BENEFITS**

**8**

| | Amount on each Purchase Date | If more than one policy is applied for, indicate to which policy(ies) each benefit should be attached. |
|---|---|---|
| ☐ Additional Purchase Benefit (APB) | $ | |
| ☐ Business Additional Purchase Benefit (BAPB) | $ | |
| ☒ Social Security Substitute Benefit (SSSB) | $ 1,300 (MONTHLY BENEFIT) | |
| SSSB Beginning Date ____ (USED ONLY FOR CASH SICKNESS STATES) | | |
| ☐ Indexed Income Benefit (IIB - Cost of living adjustment) | | |
| ☑ Future Increase Benefit (FIB) | | |

**9** If Northwestern Mutual Life is not able to issue the policy and/or any additional benefit(s) as applied for, should the Company issue a policy if it can do so in a smaller amount, or on a different plan, or without an additional benefit? ☑ Yes ☐ No

**SPECIAL DATING** - *POLICY DATE*

**10**

A. Prepaid: ☐ Short term - Policy Date will coincide with ISA Payment Date. (For monthly ISA only)

☐ Short term to ___/___/___ (MONTH DAY YEAR) ☐ Date to save age ☐ Backdate to ___/___/___ (MONTH DAY YEAR)

B. Non-prepaid: ☐ Specified future date ___/___/___ (MONTH DAY YEAR) ☐ Date to save age ☐ Backdate to ___/___/___ (MONTH DAY YEAR)

PA 001278

Policy Number:

**INCOME**

**11**

Fill in the amounts that are (or will be) shown on the Insured's Individual and/or business income tax returns and supporting schedules. Do not list income that is not reported to the IRS. Use the "Remarks" section to explain significant changes between years or changes since the end of the last calendar year. Losses should be shown in parentheses. NOTE: The Company may request tax forms for underwriting or claim purposes.

A. INSURED'S EMPLOYER OR BUSINESS is a ☐ Sole Proprietorship ☐ Partnership ☐ C Corporation ☐ S Corporation ☑ Other P.C.

B. 1. Does the Insured have an ownership interest in the business? ☐ Yes ☑ No If yes, what is the percentage? ____%

2. How long has the Insured had ownership in the business? ____

C. Are the most recently filed tax returns or the most recent Form W-2 and pay stub being sent with this application? ☑ Yes ☐ No

This column is optional if tax returns have been filed with the IRS for the most recently ended calendar year.

| D. EARNED INCOME | Current Year Estimate Jan. 1 - Dec. 31, 19 96 | Most Recently Ended Calendar Year Jan. 1 - Dec. 31, 19 95 | Two Calendar Years Ago Jan. 1 - Dec. 31, 19__ |
|---|---|---|---|
| 1. Non-owner/employee's compensation. (Deduct unreimbursed business expenses reported on Form 1040, Schedule A) Source: Form W-2 | $ 120,000 | $ 85,000 | $ |
| 2. Owner/employee's compensation. Source: Form W-2. (Also see 3 or 4 below) | | IF | |
| 3. Share of after-tax C corporation net income or (loss) after expenses if the Insured owns at least 20% of the corporation. Source: Form 1120 or 1120A | THE ANSWER | | |
| 4. Share of S corporation net income or (loss) after expenses if the Insured is actively involved. Source: Form 1120S, Schedule K-1 | | IS | |
| 5. Sole proprietorship net profit or (loss) after expenses. Source: Form 1040, Schedule C | | | |
| 6. Share of partnership net profit or (loss) after expenses. Source: Form 1065, Schedule K-1 | | "NONE" | |
| 7. Pension, profit sharing, or before-tax savings contributions (e.g., 401(K) plans) that would cease if the Insured were disabled and that the Insured had the option to receive as salary. (Not for SEP, KEOGH or other amounts not deductible as a business expense) | | LEAVE | |
| 8. Other earned income (Explain source in Remarks) | | | |
| 9. **TOTAL EARNED INCOME:** Add the amounts above | $ 120,000 | $ 85,000 | $ |
| | | BLANK | |

E. UNEARNED INCOME: State if more than $5,000. This includes taxable and tax-exempt interest, dividends, capital gains, net rental income, income from businesses in which the Insured is not actively involved, pensions, annuities and alimony. $____ $____ $____

F. NET WORTH: Is the Insured's net worth (assets minus liabilities) more than $5,000,000? ☐ Yes ☑ No
If yes, complete an Insured's personal balance sheet or use Supplement #17-0912.

G. In the last 5 years, has the Insured, or a business in which the Insured has had a 10% or greater ownership interest, been in bankruptcy, or defaulted on any loans with an owed balance of more than $10,000? ☐ Yes ☑ No
If yes, describe the circumstances and amounts owed in Remarks.

Date of Discharge ____/____/____ (MONTH DAY YEAR) Bankruptcy Chapter ____ ☐ Personal ☐ Business

**ADDITIONAL REMARKS - *INCOME***

790

## DISABILITY COVERAGES

**12**

A. List and describe all disability benefits the Insured may be entitled to, including: Individual disability insurance and group disability insurance in all companies, including Northwestern Mutual Life; pension or retirement plans; salary continuation plans; association plans; credit insurance plans; overhead expense insurance; and any other coverage which provides disability benefits. Include coverage for which the Insured will become eligible within the next five years after a qualifying period of employment has been met.

**Type = Individual DI, Group LTD, Group STD, Association DI, Overhead, Buyout, Keyperson, Other**
**I,P,C = (I) In force, (P) Pending or (C) Contemplated. If none, check:** ☑ None

| Insurer | Type of Insurance | Benefit Amount | Benefit Period Accident | Benefit Period Sickness | I, P, C or Date of Eligibility | Check if Offset by Social Security | Employer Pays 100% of the Premium |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | N/A | | | | |
| | | | | | | | |

B. 1. Is additional contributory group DI coverage available through the Insured's employer? ☐ Yes ☑ No
2. Does the Insured have plans to participate in the future? ☐ Yes ☑ No
If yes, give details in Remarks.

C. ANSWER ONLY IF THE INSURED IS A LAST YEAR MEDICAL RESIDENT/FELLOW. If the Insured is covered by a group disability plan, does the Insured intend to continue or to convert to an individual policy? ☐ Yes ☐ No

D. Will the insurance applied for replace insurance with Northwestern Mutual Life? ☐ Yes ☑ No
If yes, complete the Conditional Surrender form #17-0789. The agent should submit any required papers.

E. Will the insurance applied for replace insurance from a source other than Northwestern Mutual Life? ☐ Yes ☑ No
If yes, complete the information below. The agent should submit any required papers.

When issuing insurance as a result of this application, Northwestern Mutual Life will rely on the fact that the coverage listed below can and will be terminated by the next premium due date which must be within 90 days of the date of this application. If the coverage listed is not terminated by that date, or if it is terminated and later reinstated, any policy issued and accepted will be rescinded and all premiums will be returned. Northwestern Mutual Life may contact a listed insurer to confirm that the coverage has been terminated.

| Insurance Company | Type of Insurance | Group or Association Name | Policy Number | Amount to be Replaced | Next Premium Due Date Month | Day | Year |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | N/A | | | | | |
| | | | | | | | |

## DISABILITY OVERHEAD EXPENSE POLICY - *IF APPLYING*

**13**

A. Using the Insured's percentage of ownership in the business, insert the Insured's share of the typical monthly tax deductible business expenses as reported on IRS forms and supporting schedules. (For principal on business loans, give the current monthly installment payment.)

Rent ........ $ ______
Heat ........ ______
Telephone ........ ______
Electricity ........ ______
Professional dues and license fees ........ ______
Maintenance ........ ______
Real estate taxes ........ N/A ______
Other taxes *(Itemize)*: ______
Interest on business loans ........ ______
Depreciation or principal on business loans *(Enter the larger of monthly depreciation expense or monthly principal on business loans)* ........ ______
Insurance premiums ........ ______
Legal and professional fees ........ ______
Employees' salaries *(Professional DOE only) Do not include salaries of employees in the same occupation as the Insured* ........ ______
Other normal expenses *(Itemize)*: ........ ______
TOTAL ........ $ ______

B. How many people are employed by this firm? *(Include the Insured in the total)*
Owners: Full-time______ Part-time______ Non-owners: Full-time______ Part-time______

C. How many of the employees are in the same occupation as the Insured? *(Include the Insured in the total)*
Owners: Full-time ______ Part-time______ Non-owners: Full-time______ Part-time______

**ADDITIONAL REMARKS -** *DISABILITY COVERAGES/DISABILITY OVERHEAD EXPENSE*

PA 001278

**PERSONAL HISTORY**

Policy Number:

**14.**

A. Have you ever had life, disability or health insurance declined, rated, modified (as by an exclusion rider), cancelled, or not renewed? If yes, explain in Remarks ☐ Yes ☑ No

B. When was your last examination or application for life, disability, or accidental death insurance? Month______ Year______ Company______ ☑ None

C. Marital Status: ☑ Single, Widowed or Divorced ☐ Married

D. 1. Citizen of: ☑ USA ☐ Other
If other: Visa Type______ Visa Number______
**If not a citizen of the U.S.A. complete 2 below.**
2. I have read this statement and agree to its terms ☐ Yes ☐ No
*"I am not a U.S. citizen but do not intend to travel to any location outside the U.S.A. for more than 90 days each year. If I am disabled while traveling, I will return to the U.S.A."*
If no, please explain:

E. Do you regularly travel outside the U.S.A. or do you have plans to leave the U.S.A. for travel or residence? ☐ Yes ☑ No
If yes, explain in the chart below.

| Destination (List all Cities and Countries) | No. of Trips Per Year This Yr. | No. of Trips Per Year Last Yr. | Duration of Each Trip (No. of Days) | Departure Date (Month/Year) | Purpose of Trip |
|---|---|---|---|---|---|
| | | | | | |
| | | | N/A | | |
| | | | | | |

F. Are you a member of, or do you plan on joining any branch of the Armed Forces or reserve military unit? ☐ Yes ☑ No
If yes, complete the Military Section.

G. Except as a passenger on a regularly scheduled flight, have you flown within the past 2 years, or do you have plans to fly in the future? If yes, complete the Aviation Section ☐ Yes ☑ No

H. In the past 2 years have you participated in or do you have plans to participate in: racing (automobile, snowmobile, motorcycle, boat or go-cart), underwater or sky diving, hang gliding, bungee jumping, mountain or rock climbing, or rodeos? If yes, complete the Avocation Section ☐ Yes ☑ No

I. 1. What is your automobile driver's license number? # 14 815 793 State PA
or, ☐ I do not have a driver's license.
2. In the past 5 years, have you been in a motor vehicle accident, been charged with a moving violation of any motor vehicle law, or had your license restricted, suspended or revoked? If yes, explain in the chart below ☐ Yes ☐ No

| Date | Type of Details (Speeding, Reckless Driving, Driving While Intoxicated, Etc.) | Action (Citation, Fine, Etc.) | Accident (Yes or No) |
|---|---|---|---|
| 1/94 | ACCIDENT ON ICE - ONLY 1 CAR | NO FINE | YES |
| | INVOLVED - NO INJURIES | | |
| | | | |

J. Have you ever been convicted of violating any criminal law other than a traffic violation? ☐ Yes ☑ No
If yes, provide full details in Remarks. Include dates, city and state, reason, charge convicted of, time served and the date of parole termination.

**ADDITIONAL REMARKS** - *PERSONAL HISTORY*

792

**15**

The Insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of the Insured's knowledge and belief. Answers and statements brought to the attention of the agent, medical examiner, or paramedical examiner are not considered information brought to the attention of the Company unless stated in the application. Statements in this application are representations and not warranties.

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid if the answers and statements in the application are still true to the best of the Insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no disability insurance will be in effect if Section I of the Conditional Disability Insurance Agreement applies.

(3) Receipt of an outline of coverage for the policy applied for is acknowledged.

(4) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

**INSURED'S AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION**

**16**

I authorize Northwestern Mutual Life, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application and to verify information in this application. This information will include: (a) age; (b) medical history, condition and care; (c) physical and mental health; (d) occupation; (e) income and financial history; (f) foreign travel; (g) avocations; (h) driving record; (i) other personal characteristics; and (j) other insurance. This authorization extends to information on the use of alcohol, drugs and tobacco, the diagnosis or treatment of HIV (AIDS virus) infection and sexually transmitted diseases; and the diagnosis and treatment of mental illness. During the time this authorization is valid it extends to information required to determine eligibility for benefits under any policy issued as a result of this application.

I authorize any person, including any physician, health care professional, hospital, clinic, medical facility, government agency including the Veterans and Social Security Administrations, the MIB, Inc., employer, consumer reporting agency, accountant, tax preparer, or other insurance company, to release information about me to Northwestern Mutual Life or its representatives on receipt of this Authorization. Northwestern Mutual Life or its representatives may release this information about me to its reinsurer, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

I have received a copy of the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize Northwestern Mutual Life to obtain an investigative consumer report on me.

☑ I request to be interviewed if an investigative consumer report is done.

This authorization is valid for 30 months from the date it is signed. A copy of this authorization is as valid as the original and will be provided on request.

**The signatures below apply to the authorization and to the application.**

x Cynthia A. Kay [signature]
Signature of APPLICANT

Signature of INSURED (if other than Applicant)

Signed at Harrisburg (CITY) Dauphin (COUNTY) PA (STATE)

Date 7 / 28 / 94 (MONTH / DAY / YEAR)

Richard H Love [signature]
Signature of LICENSED AGENT

State License No. (FLORIDA AGENTS ONLY)

793

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

INSURED'S NAME: CYNTHIA A. KAYLOR

# PARAMEDICAL QUESTIONNAIRE

CHECK PURPOSE: ☐ New Insurance ☐ Change ☐ Add Benefit ☐ Life EP, VA ☐ Payor Benefit ☐ Reconsideration (VA) ☐ Reinstatement

**Each question must be individually asked and answered. Give details of "Yes" answers below: 1) Identify question number. 2) State signs, symptoms and diagnosis of each illness or injury. 3) List the details and results of any treatment. 4) List the name, full address and dates of each health care provider consulted.**

| Question | YES | NO |
|---|---|---|
| **31.** a. Have you smoked cigarettes in the last 10 years? ☐ Current smoker ☐ Past smoker-Date last smoked a cigarette __/__/__ | ☐ | ✓ |
| b. Do you use a pipe, cigar, snuff or chewing tobacco? If yes, specify. | ☐ | ✓ |
| c. Are you currently using nicorette gum, nicotine patch or other form of nicotine? If yes, specify. | ☐ | ✓ |
| **32.** Are you taking medication or drugs (legal or illegal, prescription or nonprescription) for any reason? If yes, list and explain. | ✓ | ☐ |
| **33.** Have you ever, been medically advised or medically treated for: | | |
| a. Disorder of eyes (including double vision), ears, nose, mouth, throat or speech? | ✓ | ☐ |
| b. Dizziness, loss of balance, headaches, seizures or convulsions, muscle weakness, tremor, paralysis, stroke, memory loss, or any disease of the brain or nervous system? | ☐ | ✓ |
| c. Anxiety, depression, stress, or any psychological or emotional condition or disorder? | ☐ | ✓ |
| d. Persistent shortness of breath, hoarseness, cough, coughing up blood, asthma, emphysema, tuberculosis, or any lung or respiratory disorder? | ☐ | ✓ |
| e. Jaundice, hepatitis, intestinal bleeding, ulcer, hernia, colitis, diverticulitis, recurrent indigestion, or any disorder of the stomach, intestines, liver, gall bladder or pancreas? | ☐ | ✓ |
| f. High blood pressure, chest pain, chest discomfort, chest tightness, irregular heart beat, heart murmur, heart attack or any disorder of the heart or blood vessels? | ☐ | ✓ |
| g. Sugar, albumin, blood or pus in the urine, sexually transmitted or venereal disease, or any disorder of the kidney, bladder, prostate or reproductive organs? | ☐ | ✓ |
| h. Diabetes, thyroid or any glandular (endocrine) disorder? | ☐ | ✓ |
| i. Cancer, tumor, polyp, or disorder of the lymph gland(s) or breast(s)? | ✓ | ☐ |
| j. Anemia, bleeding tendency, or any disorder of the blood? | ☐ | ✓ |
| k. Arthritis, sciatica, gout, or any disorder of the muscles, bones, joints, spine, back or neck? | ☐ | ✓ |
| l. Chronic or unexplained fatigue, fever, or illness? | ☐ | ✓ |
| m. Any allergies? | ☐ | ✓ |
| n. Any disorders of the skin? | ☐ | ✓ |
| o. Deformity, lameness or amputation? | ☐ | ✓ |
| **34.** a. Have you ever sought or received counseling or medical treatment for the use of alcohol or drugs or ever missed work because of alcohol or drug use? | ☐ | ✓ |
| b. In the last 10 years, have you used marijuana, cocaine, heroin, amphetamines or hallucinogens? | ☐ | ✓ |
| c. In the last 10 years have you used any tranquilizers, sedatives or narcotic drugs? | ☐ | ✓ |
| d. In the last 10 years, have you used legally prescribed drugs in excess of dosages prescribed by a physician or medical practitioner? | ☐ | ✓ |
| **35.** Are you pregnant? If yes, due date: ______ | ☐ | ✓ |

**Details**

#33A - at age 5 - admitted 7 Days to Good Samaritan Hosp. Lebanon, PA - ophthalmologist Dr Theodore [illegible]. Both eyes - surgery to tighten eye muscles to due "Lazy eye". Completed recovery. No complications. Reexamined @ age 10 1960 - had to only 1 eye have redone. ? which one. Same procedure & hospital & doctor. Complete recovery & no recurrent problems. Has current Rx - annual eye visits c Dr [illegible] Benton 717-233-0[illegible] 92 Tuscarora St Harrisburg, PA 17101. Last visit 1993 Normal results. Does not wear current corrective lens.

#33I - (L) Breast Biopsy 1985 - Had questionable findings in [illegible]. [illegible] findings [illegible] [illegible] [illegible]. Applicant [illegible] Breast [illegible]. Outpatient procedure @ Carlisle Hosp Carlisle, PA. Dr. William [illegible] (Plastic Surgeon) Completed recovery. No recurrent problems.

(E) Has annual gynecological exams. Last one 1993. Dr Herbert B Jordan 121 [illegible] Rd Camp Hill, PA 17011 717-763-8111. Included Pap smear & mammogram. Normal results.

#32 Takes as needed [illegible] maintained - takes water pill - HCTZ 25 mg 1 tab. for 5 days. Prescribed by Dr Jordan For the past 5 yrs.

**Each question must be individually asked and answered. Give details of "Yes" answers below: 1) Identify question number. 2) State signs, symptoms and diagnosis of each illness or injury. 3) List the details and results of any treatment. 4) List the name, full address and dates of each health care provider consulted.**

| | YES | NO | Details |
|---|---|---|---|
| **36.** Other than as previously stated on this application, have you: | | | |
| a. Consulted any other health care providers (medical doctor, psychiatrist, psychologist, osteopath, chiropractor, counselor, therapist or other)? | ☐ | ✓ | |
| b. Been a patient in a hospital, clinic or medical facility? | ☐ | ✓ | |
| c. Had any diagnostic studies (EKG, x-ray, blood tests or any other)? | ☐ | ✓ | |
| d. Had surgery? | ☐ | ✓ | |
| e. Been advised to have any test, consultation, hospitalization, or surgery which was not completed? | ☐ | ✓ | |
| **37.** a. During the last 6 months have you worked in your regular occupation less than your usual number of hours per week because of any sickness or injury? | ☐ | ✓ | |
| b. Have you ever requested or received payments, benefits, or a pension because of any injury, accident, sickness or disability? | ☐ | ✓ | |
| **38.** a. Do you have a family history of diabetes, cancer, melanoma, heart or kidney disease, mental illness or suicide, or any hereditary disease? | ✓ | ☐ | |

b. Family History

| | Age if Living | Medical History or Cause of Death | Age at Death |
|---|---|---|---|
| Father | 77 - | healthy | |
| Mother | | 1st MI ? Diabetes | 1993/70 CVA |
| Brothers or Sisters | 20 - 47/49 | [illegible] & [illegible] | /70 |
| | 15 - 57 | 3 healthy | |

**39.** a. Height 5 ft. 0 in. b. Weight 112 lbs. [illegible] 17 years

c. Have you lost weight in the past 6 months? ☐ YES ✓ NO

If yes, loss was 0 lbs.

Reason for weight loss ______

**40.** (Do not complete for Disability Insurance)

If the insured is under age 1, what was the weight at birth? ______ lbs. N/A ozs.

| | YES | NO |
|---|---|---|
| **41.** a. Have you ever been told that a test for the virus that causes AIDS, the HIV virus, has been positive, reactive or that you are infected with HIV? | ☐ | ✓ |
| b. Have you ever been medically diagnosed as having HIV infection, ARC (AIDS Related Complex), or other disorder or condition of the immune system, or as requiring treatment of immune disease? | ☐ | ✓ |

**42.** Who is your regular or personal physician, doctor or health care provider? ☐ None

Name: Dr. Robert D. McTarol [illegible] 717-763

Address: 890 Poplar Church Rd 0154

City, State & Zip Code: Camp Hill Pa 17011

Date last seen: 2/ /94 Phone number: (717) 763-0154

Reason: 1st [illegible] visit - upper respiratory prob[illegible] - Pharyngitis [illegible] No RX [illegible]

No medication prescribed [illegible]

795

I declare that my answers and statements are correctly recorded, complete and true to the best of my knowledge and belief. Statements in this application are representations and not warranties.

Signed in my presence [signature] PARAMEDICAL EXAMINER [signature] Signature of INSURED (or Informant)

Date 7 / 27 / 94
Month Day Year

SANDRA M. NALLY
PORTAMEDIC EXAMINER
(717) 761-3061

PORTAMEDIC
P.O. BOX 45
CAMP HILL, PA 17001-0045

90-4C (0194) PENNSYLVANIA

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
Milwaukee, Wisconsin 53202

# PENNSYLVANIA NOTICE OF AIDS VIRUS ANTIBODY TESTING AND AUTHORIZATION FOR TESTING AND DISCLOSURE

To evaluate your insurability, a blood sample will be tested for the presence of the AIDS virus (HIV) antibody. Before consenting to this test, you are urged to read the following information about AIDS, the nature of the test and our policy concerning confidentiality of test and other AIDS-related information. After you read this material, you will find a request for your written authorization to be tested for the AIDS virus and for subsequent disclosure of test results. You should be aware that a positive test result will cause the denial of your insurance application.

**INFORMATION ABOUT AIDS.** AIDS is a condition caused by the human immunodeficiency virus (HIV). In some individuals the virus reduces the body's normal defense mechanisms against certain diseases or infections. The brochure provided with the test materials discusses the symptoms and complications of this disease process.

**HIV ANTIBODY TEST.** The HIV antibody test is actually a series of tests designed to detect the presence of antibodies to the AIDS virus rather than detect the virus itself. Antibodies to the AIDS virus are found in the blood of most patients with AIDS and AIDS-related complex (ARC), and can be found in people who do not have AIDS or ARC but have been exposed to the virus.

Your blood sample will first be subjected to a test known as ELISA (enzyme-linked immunosorbent assay). If the result of this test is positive, the ELISA test will be repeated. If this repeat ELISA test is also positive, your blood specimen will then be subjected to another, more specific technique called the Western blot test, for confirmation. Your test result is considered positive only after positive results are obtained on two ELISA tests and a Western blot test.

**Positive Test Results.** In general, if you receive such a positive test result, there is a high probability that you have HIV antibodies in your blood.

A positive test result does not mean that you have AIDS. The diagnosis of AIDS is established using a patient's history, symptoms and physical examination. A positive test result does mean, however, that you are at risk of developing AIDS or AIDS-related conditions. It also means that you may transmit the virus to other people.

If your test result is positive, the test result will be sent to the doctor or organization that you designate on this form. It is strongly recommended that you consult a physician or obtain counseling to learn more about the meaning of such a result.

**Negative test results.** If your test result is not positive, you most likely have not been infected by the virus. However, it is possible to have been infected with the virus within the past year and not yet have developed antibodies that cause a positive test result.

**COUNSELING AND ALTERNATIVE TESTING.** You may experience anxiety as a result of having this test performed. Many public health organizations recommend that before a person takes an AIDS-related test, he or she obtain counseling about the test, alternative testing and AIDS. A source of information about AIDS and counseling is the Department of Health of the Commonwealth of Pennsylvania (phone 717-783-0479), any local health department or community based organization designated by the Department of Health of the Commonwealth of Pennsylvania.

**CONFIDENTIALITY.** Under Pennsylvania law we must treat all AIDS-related information (including test results) as highly confidential. We have established safeguards within our company that will protect the privacy of any AIDS-related information that is in your files. We have designated employees who are responsible for keeping this information confidential.

**Medical Information Bureau (MIB).** If your test result is positive, we will make a report indicating a nonspecific abnormal blood test result to the Medical Information Bureau, Inc. (MIB). The nature of the test will not be reported; there will be no record with the MIB that you had a positive HIV antibody test. AIDS-related information, other than a positive test result, and other information may be reported to the MIB as indicated in the notice given you at the time of application.

**AUTHORIZATION.** I have read and understand this Notice of AIDS Virus Antibody Testing and Authorization for Testing and Disclosure. I understand that if I test positive I will be denied the insurance for which I have applied. I authorize the drawing and testing of my blood for HIV antibodies and the disclosure of the test results as stated on this form.

**NOTICE OF TEST RESULTS.** If your test results are negative, no routine notification will be sent to you. We will confirm the negative results at your request. In the event of a positive test result, we will send the results to the physician, Department of Health of the Commonwealth of Pennsylvania, local health department or community-based organization (see list on reverse side) as directed below:

Please send any positive test results to:

| | | |
|---|---|---|
| PHYSICIAN OR ORGANIZATION | CYNTHIA A KAYLOR<br>NAME OF PROPOSED INSURED | |
| ADDRESS | [signature]<br>SIGNATURE OF PROPOSED INSURED | 7/28/94<br>DATE |
| CITY STATE ZIP CODE | SIGNATURE OF LEGAL GUARDIAN, IF ANY | DATE |

WHITE COPY - SIGN AND SEND WITH APPLICATION YELLOW COPY - GIVE TO PROPOSED INSURED

17-0979 (7/92) PENNSYLVANIA

OPS

**It is recommended that you ...**

read your policy.

notify your Northwestern Mutual agent or the Company at 720 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202, of an address change.

call your Northwestern Mutual agent for information -- particularly on a suggestion to terminate or exchange this policy for another policy or plan.

**Election Of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**DISABILITY INCOME POLICY**

**Eligible For Annual Dividends.**

Guaranteed Renewable with Guaranteed Premiums to Age 65

Conditionally Renewable to Age 75

QQ.DI.PA

Countersigned by ______________________________
Licensed Resident Agent