# EXHIBIT B

0604

MINNIE ARMSTRONG
Disability Benefits Analyst - (414) 299-5531
Disability Benefits Division
Policy Benefits Department



March 18, 1998

MS CYNTHIA A KAYLOR
246 WILLIS RD
ETTERS  PA  17319

Re:  Cynthia A. Kaylor
     D1070572

Dear Ms. Kaylor:

As you requested, below is a list of all benefits paid to you during the period of July 17, 1997 to December 17, 1997.

| Date | | Amount |
|---|---|---|
| 12/09/1997 | PAID | $5,949.00 |
| 11/10/1997 | PAID | $5,949.00 |
| 10/13/1997 | PAID | $5,949.00 |
| 09/11/1997 | PAID | $5,949.00 |
| 08/08/1997 | PAID | $5,949.00 |

Sincerely,

Minnie Armstrong
th

cc:  BRADLEY R  NEWMAN,
     TURNER AGENCY (072)

0604

The Northwestern Mutual Life Insurance Company • 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202-4797 • 414 271-1444

☐ **RUSH**

## DISABILITY BENEFITS PHONE MEMO

TO: ☐ TEAM ASSISTANTS E7 ☐ SET UP CLAIM FILE ☐ ORDER CLAIM FILE/ASSIGN TO ANALYST
☐ REFER TO _____

☐ **NOTICE OF DISABILITY OF:** ☐ INSURED ☐ PAYOR ☐ TOTAL ☐ PARTIAL
DATE OF DISABILITY: _____ CAUSE OF DISABILITY: _____

☐ Status of check?   ☐ Status of claim?          ☐ Returned your call
☐ Info via system    ☐ Would not give addt'l Info ☐ Requests that you call by: _____
☐ Check dated: _____ ☐ Will call again            ☐ No call back required

| DATE/TIME | REMARKS |
|---|---|
| 3/18/98 | The Insured called to request that we send her via Fax the total benefits paid to her for 1997. Her fax no is (717) 932-2870 Please her when faxing info — She says she must be at machine in order for the fax to go thru. |
| 3/18 2:49 | Payments from 7/17/97 to 12/17/97 (See attached) Called insured to let her know I was going to fax over letter. |

Spoke to: _____
☒ Insured ☐ Agent ☐ Agent's Asst.
☐ Spouse ☐ Attorney ☐ Dr.'s Asst.
Fax # (____) _____
Area Code & Phone # (717) 932-1114

Insured Cynthia Kaylor
Policy D1070,522
Date/Time 3/18/98
Analyst MMA
Service Rep. _____

0605

15-1410 (12/93)

Q#9

| DATE/TIME | REMARKS (Continued) |
|---|---|
| | |

0606

```
14:00:12  CLM CLWP  PAYMENT HISTORY CHECK SELECT    ITNI8 ARM11 H7217  98/03/18
INSURED  CYNTHIA A  KAYLOR                          CLAIM NUMBER  C 0000 083 322

ENTER ONE OF THE FOLLOWING "OPTIONS" FOR ADDITIONAL DETAIL
  'C' - CHECK DETAIL                (CHECK: AMT, STATUS, PAYEE, SERIES)
  'F' - FORMS & STMT NOTES DETAIL   (FORMS: TYPE, QUANTITY; STMT NOTES)
  'M' - MAILING DIRECTION DETAIL    (DESTINATION, METHOD)
  'L' - LIAB/PAYMENT PERIOD DETAIL

                     CHECK                       CHECK
OPTION   CHECK DATE  STATUS      CHECK AMOUNT    TYPE    PAYEE NAME
  :  :   03/17/1998  OUTSTANDNG    $5,949.00    DISBLTY  CYNTHIA A   KAYLOR
  :  : * 02/19/1998  PAID          $5,949.00    DISBLTY  CYNTHIA A   KAYLOR
  :  : * 01/13/1998  PAID          $5,949.00    DISBLTY  CYNTHIA A   KAYLOR
  :  : * 12/09/1997  PAID          $5,949.00    DISBLTY  CYNTHIA A   KAYLOR
  :  : * 11/10/1997  PAID          $5,949.00    DISBLTY  CYNTHIA A   KAYLOR
  :  : * 10/13/1997  PAID          $5,949.00    DISBLTY  CYNTHIA A   KAYLOR
  :  : * 09/11/1997  PAID          $5,949.00    DISBLTY  CYNTHIA A   KAYLOR
  :  : * 08/08/1997  PAID          $5,949.00    DISBLTY  CYNTHIA A   KAYLOR
PAGE 1       F3=RETRIEVE ALL PYMT HIST   * = FORMS EXIST   F12=FUNCTION KEY HELP
```

S. Balistreri

# Law Office
## of
## Diveglia and Kaylor, P.C.
### Archie V. Diveglia
### Cynthia A. Kaylor
#### Attorneys at Law

A Professional Corporation
Providing Legal Services
Fax: (717) 231-4083

119 Locust Street
Harrisburg, Pennsylvania 17101
(717) 236-5985

8-17-98

Northwestern Mutual Life
Suzanne Balestrieri
P.O. Box 2918
Milwaukee, WI
53201-2918

Re: CYNTHIA A KAYLOR
Pol # D1670592

[stamp: POLICY BENEFITS CENTRAL SERVICES C — 1998 AUG 20 P 2:13]

Dear Ms Balestrieri

Please excuse the handwritten letter. Dictation is backed-up and I wanted this out today. Enclosed you will find the attending Physician Statement of Dr. Borgan & Ms Kaylor's Total disability claim form. If you have any questions, please call me.

Sincerely,

Archie V. Diveglia

0560

EILEEN MILLER CARTER
Sr. Disability Benefits Consultant - (414) 299-4758
Disability Benefits Division
Disability Income Department

Northwestern
Mutual Life®

August 21, 1998

ATTY ARCHIE DIVEGLIA
119 LOCUST STREET
HARRISBURG  PA 17101

Re:   Cynthia A. Kaylor
      D1070572

Dear Mr. Diveglia:

Thank you for your letter dated August 6, 1998 directed to Sue Balistreri who referred the letter to me so that I can respond on her behalf. The purpose of my involvement on this aspect of Ms. Kaylor's claim is to determine whether Northwestern Mutual Life's request for federal tax returns, billing records and other financial information of Ms. Kaylor related to her law practice is in accordance with policy requirements. Our position is that the request for such information is undoubtedly within the authority of the policy language and is reasonable in light of the claim.

Ms. Kaylor's policy, section 5.1 entitled <u>Proof Of Loss</u>, provides in relevant part the following:

> For a claim to be payable, the Company must be provided with satisfactory written proof of loss. This is information that the Company deems necessary to determine if benefits are payable, and if so, the amount of the benefits. The proof of loss will include other information about the Insured's health, occupational duties, income both before and *after* the disability started (including income tax returns for the insured and for businesses in which the Insured has or had an interest), overhead expenses and disability benefits *along with other information as may be required by the Company from time to time*. The Company will also need to be provided information as described below under "Other Requirements". (emphasis added).

The section entitled <u>Other Requirements</u> also provides the Company authority to make requests upon Ms. Kaylor for productivity and financial information and provides that the Company may unconditionally request financial information of the insured as often as is reasonably necessary in connection with a claim. Nowhere in that section does there exist any limitation on the extent or nature of the information. Additionally, the request for such is not contingent upon the nature or degree of the insured's disability; information may be requested or utilized in either case of partial or total disability and regardless of the occupation of the insured.

Secondly, your assertion that Ms. Kaylor's disability is soundly established by reason of medical documentation, therefore dispensing with the need for financial information, does not resolve the remaining claims issues. An essential aspect of the claim is identifying Ms. Kaylor's work productivity during the period of her disability to determine whether she is prevented from performing the principal duties of her occupation. The disablity policy is intended to protect Ms. Kaylor's income loss resulting from a loss or infringement on her principal duties she performed

The Northwestern Mutual Life Insurance Company • 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202-4797 • 414 271-1444

0558

Atty Archie Diveglia
August 21, 1998
Page 2

in her occupation at the time of the disability. Ms. Kaylor's attending physician had indicated that she is capable of returning to work full time without restriction and that she is partially disabled from her existing occupation.

It is true that if Ms. Kaylor is determined to be totally disabled during the initial period and rendered unable to perform the principal duties of her profession, which is trial law, her employment activities outside the scope of her principal duties will not effect her benefits. If however, she is considered partially disabled, her employment activites would be germane to the question whether and to what extent she continues to be disabled. Because Ms. Kaylor has been medically approved to resume work and has in fact been working for some time, discerning the nature and extent of her productivity is an inevitable inquiry in the claims process.

Any query posed to Ms. Kaylor or her agents is presented to the extent possible in the least burdensome and intrusive fashion, to avoid embarrassment to her and with the single minded purpose of administering her claim as efficiently and thoroughly as possible. As part of the claims process we find it necessary often times to utilize our authority and make inquiries as necessary to verify the existence and extent of a disability. Medical conditions in and of themselves do not supply the complete information and prove all losses protected under the contract.

Based on the above, I renew the Company's earlier request for billing information and financial information. It is our hope this can be provided without delay so as not to interrupt the payment of benefits to Ms. Kaylor.

Thank you for providing the executed Authorization Forms for Drs. Borgan and Seidman. We do reserve our right to require an unrestricted Authorization to Obtain Information should we deem such to be necessary and our acceptance of the limited authorizations should not be construed as a waiver of NML's right to obtain any such information.

If you have any questions or concerns, please do not hesitate to contact me at 414-299-4758. Thank you for your attention to the above.

Sincerely,


Eileen Miller Carter

cc: BRADLEY R NEWMAN, CLU,
    TURNER AGENCY (072)

0559

EILEEN MILLER CARTER
Sr. Disability Benefits Consultant - (414) 299-4758
Disability Benefits Division
Disability Income Department

**Northwestern Mutual Life®**

September 17, 1998

ATTY ARCHIE DIVEGLIA
119 LOCUST STREET
HARRISBURG PA 17101

Re: Cynthia A. Kaylor
D1070572

Dear Mr. Diveglia:

This letter responds to yours of September 1, 1998.

Your assertion that our request for the financial and billing information is based on an APS (albeit erroneous by your assertion) is baseless for the reason that the policy issued to Ms. Kaylor spefically reserves NML's right to obtain proof of loss including financial, health, occupational matters not only before but during the disability as provided in section 5.1 and cited to you in previous correspondence. Accordingly, our request for such is based on our contractual rights and is not exclusivey contingent upon the contents of the APS.

In reference to your exclamation concerning the validity of a recent APS referenced in my last letter, what information do you have that allows you to assume that it or my interpretation of it is erroneous? On his May 5, 1998 APS, Dr. Seidman noted that she was partially disabled effective February 2, 1998 to the present and had a lifting restriction which is not particularly germane to the performance of her principal duties. Dr. Borgen expressed a similar physical restriction in his APS of February 3, 1998 and August 30, 1998. Based on that information, we determined it is possible she may be partially disabled from her own occupation, a reasonable conclusion, not borne of bad faith but of the physicians' express words.

We understand and appreciate the fact that currently both Drs. Seidman and Borgan recommend a reduction in stress to enhance long term remission and thus a sabatical from trial work. However, prevention of stress alone will not suffice as a medical basis for disability. There is not a medically based finding in the medical field concerning the impact of stress on recovery and hence stress avoidance is not recognized by the Company as a basis for disability. If Ms. Kaylor experiences stress which poses the possibility of a medical impediment, we would expect her to receive qualified and appropriate treatment addressing such. The policy provides that the insured must be under the care of a licensed physician who is acting within the scope of his or her license. If disability is due to a mental or nervous condition, licensed physician means a pyschiatrist or licensed doctoral level psychologist other than the insured.

In light of the foregoing, our request for financial and business information is reasonable and justified. We must have a better, more objective understanding of current duites and roles in the firm. There is nothing unreasonable about our attempt to obtain contractually required information from our insured so that we can administer her claim. As Ms. Kaylor's partner, you

The Northwestern Mutual Life Insurance Company • 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202-4797 • 414 271-1444

0551

can provide financial and billing records attributable to her work and accordingly, please construe this letter as a direct request to you for same. We also request from her once again her 1997 1040 and 1120 tax forms. I have no choice but to notify you that if this information is not sent forthwith, I will direct a financial audit of Ms. Kaylor's business and personal financial information.

We are still continuing our review of the medical compenent of this claim and will advise you accordingly once we have received and reviewed the financial information.

Again, we acknowledge receipt of the executed Authorization Forms for Drs. Borgen and Seidman. We reserve our right to require from Ms. Kaylor an unrestricted Authorization to Obtain Information and our acceptance of the limited authorizations should not be construed as a waiver of NML's right to obtain any information not expressly identified in the limited authorizations.

If you have any questions or concerns, please do not hesitate to contact me at 414-299-4758. Thank you for your attention to the above.

Sincerely,


Eileen Miller Carter

cc: BRADLEY R NEWMAN, CLU,
 TURNER AGENCY (072)

**EILEEN MILLER CARTER**
Sr. Disability Benefits Consultant - (414) 299-4758
Disability Benefits Division
Disability Income Department



October 22, 1998


ATTY ARCHIE DIVEGLIA
119 LOCUST STREET
HARRISBURG  PA 17101



Re:   Cynthia A. (Kaylor) Diveglia
      D1070572

Dear Mr. Diveglia:

This letter responds to yours of September 1, 1998.

It is our position that the APS of Dr. Seidman dated May 5, 1998 and that of Dr. Borgan's dated February 3 and August 14, 1998 (my previous correspondence inaccurately referenced an August 30 APS) do not indicate a regression in her condition.  They indicate stress should be avoided in order to enhance remission and lifting in excess of ten pounds should be avoided.  No part of either APS was misrepresented.  Neither APS indicates a physical medical basis that would prevent Ms. Diveglia from resuming her predisability duties.  We are still awaiting the medical records which will hopefully help us better appreciate as to the medical basis upon which they opine regarding non physical limitations.

Thank you for your explanation concerning the firm's billing practices.  However, I renew my request for Ms. Diveglia's 1996 and 1997 1040 and 1120 tax forms, records of payroll and disbursements made to Ms. Diveglia from January 1, 1998 to the present.  I must caution you that our request for such has been repeatedly made for months and that without that information, we are no longer able to determine her eligibility for benefits. The insured's refusal to provide us with that information is a breach of the policy. Thus, please be advised that effective with the November payment, we have no choice but to suspend payment of benefits.  It may be of value to your client if you review the contract language and reconsider your position in respect to the release of these records.

A point in your letter requires clarification.  On page two, you indicate that if the insured is released to work as a trial attorney, she will not release her tax returns to us and will elect the fifty percent benfeit.  Please be advised that the fifty percent benefit is available as an election for the first six months of her partial disability and thereafter, assuming eligibility for the benefit is established,  the insured must submit financial records to receive a proportionate benefit which by its definition is calculated in proportion to the actual loss of earned income due to the disability.

Again, we acknowledge receipt of the executed Authorization Forms for Drs. Borgen and Seidman and our acceptance of the limited authorizations should not be construed as a waiver of NML's right to obtain any information not expressly identified in the limited authorizations.  Under the policy we have a right to require from Ms. Diveglia an unrestricted Authorization to

0503

Atty Archie Diveglia
October 22, 1998
Page 2

Obtain Information. Accordingly, please consider this a renewed demand for an unrestricted signed authorization. For your convenience I have enclosed a form which I ask that Ms. Diveglia sign and return as soon as possible.

If you have any questions or concerns, please do not hesitate to contact me at 414-299-4758. Thank you for your attention to the above.

Sincerely,


Eileen Miller Carter
Enc.
cc: BRADLEY R NEWMAN, CLU,
    TURNER AGENCY (072)

0504

DISABILITY INCOME DEPARTMENT
DISABILITY BENEFITS DIVISION



Northwestern Mutual Life®
P.O. Box 2918
Milwaukee, Wisconsin 53201-2918

# AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

**TO THE INSURED:** During the course of your claim, information will be needed in order for Northwestern Mutual Life (NML) to determine your eligibility for benefits. Any information obtained with this Authorization will be kept confidential. Please promptly complete, sign and date and return this Authorization to help avoid delays in the evaluation of your claim.

I, __Cynthia (Kaylor) Diveglia__, AUTHORIZE any physician, healer or other medical practitioner, hospital,
    (INSURED)
clinic, medically related facility or association, pharmacy, insurance support organization, Motor Vehicle Agency, Government Agency including the Social Security Administration, or other insurance company, or other persons or institutions to release full information about my health and medical condition, including any psychiatric condition and drug or alcohol use, sexually transmitted diseases, genetic information and genetic test results and any disorder of the immune system, HIV, Acquired Immune Deficiency Syndrome (AIDS), and any related syndromes or complexes or test for HIV and to release copies of all records with respect to my physical or mental condition, diagnoses, treatments, prognoses, consultations, examinations, tests or prescriptions to The Northwestern Mutual Life Insurance Company ("NML") or its legal representatives, for the purpose of evaluating an insurance claim. **NOTE:** In the state of Minnesota, this Authorization excludes the release of information about HIV (AIDS Virus) tests which were administered (1) to a criminal offender or crime victim as a result of a crime that was reported to the police; (2) to a patient who received the services of emergency medical services personnel at a hospital or medical care facility; (3) to emergency medical personnel who were tested as a result of performing emergency medical services. The term "emergency medical personnel" includes individuals employed to provide pre-hospital emergency services; licensed police officers, firefighters, paramedics, emergency medical technicians, licensed nurses, rescue squad personnel, or other individuals who serve as volunteers of an ambulance service who provide emergency medical services; crime lab personnel, correctional guards, including security guards, at the Minnesota security hospital, who experience a significant exposure to an inmate who is transported to a facility for emergency medical care; and other persons who render emergency care or assistance at the scene of an emergency, or while an injured person is being transported to receive medical care and who would qualify for immunity under the good samaritan law. I further authorize any employer, business associate, insurance company, government agency including the Social Security Administration, financial institution, consumer reporting agency, accountant, tax preparer, or other persons or institutions to give full information concerning me, my occupation, work history, earnings or finances, benefits, unemployment benefits and application for insurance to NML or its authorized representative, for the purpose of evaluating an insurance claim.

I AUTHORIZE NML, its affiliates, its authorized representatives, or its reinsurers, to request and obtain a report from the Medical Information Bureau ("MIB") for the purpose of evaluating an insurance claim. MIB is an association of life insurance companies that operates the Health Claims Index ("HCI") for subscriber insurers. An HCI report contains the date(s) of past or present claims filed by me and the name(s) of the companies but does not contain medical or other personal information. I understand that NML may also report to MIB the date(s) of any past or present claims filed by me.

I AUTHORIZE NML, or its authorized representatives, to release the above-described information to its affiliate(s), reinsurer(s) or to any person performing services for NML in connection with my claim.

I UNDERSTAND that I or my authorized representative have the right to receive a copy of this Authorization.

I AGREE that a photocopy of this Authorization shall be as valid as the original.

I AGREE that this Authorization shall be valid for the duration of the claim.

| Date | Signature of Insured | _____ |
|---|---|---|
| | Street & No. | _____ |
| | City, State, Zip | _____ |
| | If Representative, give relationship to Insured | _____ |

POLICY NUMBER(S)
D1070572

0505

15-0665 (0998)                                                                                                                                                    WORD 8

**SUZANNE BALISTRERI**
Disability Benefits Specialist (414) 299-3857
Disability Benefits Division
Disability Income Department


Northwestern Mutual Life®

May 7, 1999                                   FILE COPY

CYNTHIA A DIVEGLIA
41 BERKY RD
EAST BERLIN PA 17316

Re: CYNTHIA A DIVEGLIA
D1070572

As part of our ongoing claims administration, we routinely ask for financial information relating to your request for disability benefits. Please forward signed and dated copies of your personal Federal income tax return, including all W-2's, Schedules and Forms, for 1998.

In addition, if you are the owner of a corporation, limited liability company or a partner in a partnership, please send a signed and dated copy of your Federal income tax return for 1998 relating to the business entity(ies). Include all attached schedules and statements. If a corporation in which you have ownership has deducted pension or profit sharing expense on your behalf, please note your share of that expense on the business tax return or on a separate sheet of paper.

If you have filed for an extension with the IRS beyond the April 15th filing deadline for your personal and/or business tax returns, please send me a copy of the application(s) for extension as soon as possible.

If you have already sent us your personal and business income tax returns, please disregard this letter.

Finally, it is a routine procedure of NML to keep an updated Authorization to Obtain Information form in our files. Please complete, sign and date the enclosed form so I can update your file.

Your cooperation is appreciated. If you have any questions, please let me know.

Sincerely,

SUZANNE BALISTRERI

cc: 072/64046

0359

The Northwestern Mutual Life Insurance Company • 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202-4797 • 414 271-1444

Northwestern Mutual Life®

July 21, 1999

Mr. Archie V. Diveglia
Attorney-at-Law
119 Locust Street
Harrisburg, PA 17101

      Re: CYNTHIA A. DIVEGLIA
          D1070572

Dear Mr. Diveglia:

I have just completed a review of Ms. Diveglia's claim file in my role as a senior claim administrator for the Northwestern Mutual.

Unfortunately, I believe we have come to a point in the administration of this claim where your client's failure to provide information that is clearly and unambiguously required of her by the contract makes it difficult to continue benefits to her even on a reservation of rights basis as has been the case since March 17, 1999. For example, we have repeatedly asked for her 1997 (and I now include with that request the 1998 tax forms). Under Proof of Loss, as you have reviewed on several occasions, the provision does not distinguish between persons who claim to be either totally or partially disabled. It simply requires an Insured to provide tax returns if the Company requests them. To assert that this "boiler plate language" as you refer to this and other policy provisions does not apply to her claim is simply a misinterpretation of clear and unambiguous language.

I think our handling of the authorization shows reasonable patience and we've expressed our willingness to work with you and your client in terms of information that we need that an authorization would allow us to obtain.

Overall, I think you miss the point that we have a duty and an obligation to all of our policyholders to investigate claims on all of our insureds, in order to reasonably come to a conclusion that the claim they make and assertions made by them or on their behalf are accurate and objectively verifiable to as reasonable an extent as possible.

As to the medical opinions we've received regarding her advice to avoid stressful situations, we were told by Dr. Seidman in February of 1999 that he recommend 6 to 12 more months of a "sabbatical." After that, he indicates he would not recommend that she resume trial work assuming she is cancer free at that point, due to the potential for increased fatigue and stress that may inevitably increase her risk of recurrence. Our medical staff is unaware of any objective medical basis for this reasoning and Dr. Seidman does not provide any. Your letter of October 2, 1998 indicates that you are aware of three studies that correlates stress to recurrence of cancer. As this discussion

0340

Mr. Archie V. Diveglia
July 21, 1999
Page 2

regarding Ms. Diveglia's eligibility for benefits may continue, I request that you provide to us a copy of these studies.

In stepping back from the technicalities of disability claim administration, I appreciate and understand the fact that Ms. Diveglia is going through a life threatening illness and is at a high risk of relapse for the disease. In the spirit of compromise and in giving Ms. Diveglia the benefit of the doubt in terms of her failure thus far to fully comply with various policy provisions, I will offer to you a proposal for your consideration.

We will pay benefits without reservation of rights and without additional information from Ms. Diveglia or attending physicians, until January 17, 2000. At that time, if further benefits are claimed, we would ask Ms. Diveglia's agreement now that at that time she will provide to the Company the following:

- Complete copies of her 1997, 1998 and when available by April 15, 2000, 1999 tax returns, both personal and business.

- Access to all medical records and testing that has occurred in the interim.

- An in-depth interview with her by an employee of the Northwestern Mutual to discuss her activities at work in-depth, activities outside of work and her future plans as well as other information as may be necessary to obtain a complete understanding of her activity level at that time. A signed statement will be requested, or in the alternative, the conversation could be recorded.

- Ms. Diveglia's signature and date on an unrestricted authorization with the understanding that we will advise Ms. Diveglia of inquires we may make at that point before we make them.

- I can also envision the possibility of professional rehabilitation evaluation that point in order to determine how we may assist Ms. Diveglia in returning to trial law if she has been unable to do so by then. This evaluation would be done by the company with her cooperation and at no cost to her.

Please let me know if your client will accept my proposal.

Sincerely,


David Gosse
Assistant Director –
Disability Benefits
Disability Income Department

vld

0341

**SUZANNE BALISTRERI**
Disability Benefits Specialist - (414) 299-3857
Disability Benefits Division
Disability Income Department

**Northwestern Mutual Life**®

August 11, 1999

MR ARCHIE DIVEGLIA
119 LOCUST ST
HARRISBURG PA 17101

Re: Cynthia A. Diveglia
D1070572

Dear Mr. Diveglia:

Thank you for your patience and cooperation as we continue to review the above disability claim.

Recognizing the Insured's need for funds, I am willing to make a benefit payment as an accommodation while the review continues. This accommodation payment should not be construed as a waiver of any rights that Northwestern Mutual may have, nor is it an admission of liability under this policy.

Enclosed is a check representing benefits from July 17, 1999 to August 17, 1999. Premiums will also be waived as an accommodation under this policy.

We again acknowledge receipt of the executed authorization forms for Dr. Borgen and Dr. Seidman and the alteration of authorizations contained on claim forms. We reserve our right to require from the Insured an unrestricted Authorization to Obtain and Release Information. Our acceptance of the limited authorizations should not be construed as a waiver of Northwestern Mutual Life's right to obtain any information not expressly identified in the limited authorizations.

If you have any questions, please feel free to contact me.

Sincerely,

Suzanne Balistreri

cc: 64046,
    TURNER AGENCY (072)

0336

The Northwestern Mutual Life Insurance Company • 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202-4797 • 414 271-1444

# File Memo

**Insured:** Cynthia A. Diveglia
**Policy:** D1070572

On the early afternoon of Wednesday, August 11, 1999, I telephoned Mr. Archie Diveglia, the Insured's husband and attorney representing her with respect to her claim. Mr. Diveglia himself answered the phone at which time I reminded him that I had written on July 21st and had not received a response to my letter and offer of compromise contained therein.

Mr. Diveglia profusely apologized explaining he has been in trial virtually non-stop since he received my letter and he's not really had an opportunity to sit down with Cynthia to discuss the matter in depth. Since I caught him by surprise, his remarks to me were somewhat disjointed but in essence he believes that we are being reasonable in our approach and he agrees that the time has come to find a solution to this ongoing debate. On the other hand, he considers himself to be a "black and white" person. That is, he believes based on his reading of the contract that we are not entitled to the things we request. We debated that at some length and eventually he conceded that he had not looked at the contract in over a year and will do so as part of formulating a response to me.

He tells me that Cynthia has been doing some work which may range from stopping in the office a couple of times a week to a 35 to 40 hour work week. She has not, however, been doing any trial work. She has an appointment in the latter part of September or early October to see the surgeon (I believe he said Dr. Borden). He explained her health in a manner that suggested to me that they felt something was not quite right and that a thorough reexamination was needed.

He went on to explain that Cynthia is most anxious to return to all aspects of her work and, if not trial work, then full-time work at the practice. He said he himself is being run ragged working 60 to 80 hours a week. He said that Cynthia would like to be able to work full-time by the end of the year and if that is the case, he said that she may not claim benefits thereafter.

In any event, we agreed because he has not really had an opportunity to talk to her about my proposal that he would do so in the next couple of weeks and that he would respond to my letter within three weeks. I told him we would make another payment on the same basis as we had been while we awaited the response.

We both agreed that this debate has been going on for a very long time and that resolution is needed. He again said that he felt we were being very reasonable in our efforts to resolve the matter and he will provide an answer to my letter soon.

*Diveglia.doc/mgb*

0335

# DISABILITY BENEFITS PHONE MEMO

☐ Rush

Refer to: Sue Balistreri

| SPOKE TO<br>Archie Diveglia | | RELATIONSHIP TO INSURED<br>Attorney/husband |
|---|---|---|
| PHONE NUMBER<br>717 236 5985 | | FAX NUMBER |
| INSURED<br>Cynthia Diveglia | | POLICY NUMBER(S)<br>D1070572 |
| DATE<br>10/13/99 | TIME<br>AM | ANALYST<br>David Gosse |

**Message:**
In our last conversation on 8/11/99, Mr. Diveglia had told me that he thought my letter was a good faith effort to resolve the situation and he wanted further time to consider the matter. He said he and his wife would be vacationing late in August and they would think about it then. We had discussed the contract then to some degree but Mr. Diveglia was not persuaded that they had obligations other than to submit medical proof of disability that they feel they have done. In any event, they would discuss my "reasonable solution" and they would obtain more medical insight at the next medical office visit in early September.

Not having received the promised response, I telephoned Mr. Diveglia and spoke with him on 10/13/99. He says their position is clear. They have 2 doctors that confirm disability for her occupation and they feel they have no further obligation. They feel they have no need to compromise or consider my "interesting proposal". There is "principle" involved. She is to see her MD later this month. We agreed I would send a form for the MD and he would see that it would be completed and office notes attached for our review. Within 1 week of that visit, Mr. Diveglia will formally respond in writing to my letter and provide their thinking on this claim and their position. I agreed that the payment due mid month would now be authorized as an accommodation. I said if he persists in the position he just stated to me, he will cause us to have to make some hard decisions about this claim.

*I will fax an APS to him today.*

0332

15-1670 (0798)                                                                                    WORD 97