# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CYNTHIA ANNE DIVEGLIA,  : CIVIL ACTION
           Plaintiff,  : NO. 1:CV-00-1342
                  :
      v.  : JUDGE McCLURE
                  :
NORTHWESTERN MUTUAL LIFE  :
INSURANCE COMPANY,  :
           Defendant.  :
                  :

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION IN LIMINE

Dated: June _14_, 2004           STEVENS & LEE

By _____
       E. Thomas Henefer
       Attorney I.D. No. 55773
       Kirk L. Wolgemuth
       Attorney I.D. No. 45792
       111 North Sixth Street
       P.O. Box 679
       Reading, Pennsylvania  19603
       (610) 478-2000

       Attorneys for Northwestern Mutual Life
       Insurance Company

## Table of Contents

Page

I.   INTRODUCTION ...................................................................1

II.  ARGUMENT.......................................................................2

    A.  Dr. Seidman's Attending Physician Reports Are Hearsay.........................2

    B.  The Medical Journal Articles Are Hearsay...................................3

    C.  Dr. Borgan's "Expert" Testimony Is Not Admissible.............................6

        1.  Legal Standard Governing Daubert Motions. ........................7

        2.  Dr. Borgan's Testimony Is Inadmissible............................13

    D.  Plaintiff's Testimony About The Demeanor of Defendant's
        Employees Must Be Precluded................................................20

III. CONCLUSION.....................................................................21

i

SL1 451928v1/05843.001

Page

# TABLE OF AUTHORITIES

Bobb v. Modern Products, Inc.,
   648 F.2d 1051 (5th Cir. 1981)....................................................................2

In re: Breast Implant Litigation,
   11 F. Supp. 2d 1217 (D. Colorado 1998).....................................13, 14, 15

Concord Boat Corp. v. Brunswick Corp.,
   207 F.3d 1039 (8th Cir. 2000), cert. denied, 121 S. Ct. 428 (2000)........12

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
   509 U.S. 579 (1993)......................................1, 2, 6, 7, 8, 9, 10, 11, 13, 14,
                                                    15, 16

Elcock v. Kmart Corp.,
   233 F.3d 734 (3d Cir. 2000).......................................................8, 11, 12

Emigh v. Consolidated Rail Corporation, et al.,
   710 F. Supp. 608 (W.D. Pa. 1989) ..........................................................2

General Electric Co. v. Joiner,
   522 U.S. 136 (1997)..................................................................................9

Government of Virgin Islands v. Sanes,
   57 F.3d 338 (3d Cir. 1995)......................................................................11

Jaurequi v. Carter Mfg. Co.,
   173 F.3d 1076 (8th Cir. 1999)................................................................11

Joy v. Bell Helicopter Textron, Inc.,
   999 F.2d 549 (D.C. Cir. 1993), reh'g denied, 1993 U.S. App.
   LEXIS 34667 (D.C. Cir. Sept. 21, 1993).................................................12

Lithuanian Commerce Corp. v. Sara Lee Hosiery Corp.,
   179 F.R.D. 450 (D.N.J. 1998), aff'd, 2000 U.S. App. LEXIS 31996
   (3d Cir. Nov. 13, 2000) ............................................................10, 12, 13

Meister v. Medical Engineering Corp.,

ii

TABLE OF AUTHORITIES
(continued)

Page

267 F.3d 1123 (D. D.C. 2001)........................................................15, 16

Minasian v. Standard Chartered Bank, PLC,
    109 F.3d 1212 (7th Cir. 1997)..................................................11

Oddi v. Ford Motor Co.,
    234 F.3d 136 (3d Cir. 2000), cert. denied, 121 S. Ct. 1357 (2001) .....8, 10

In re Paoli Railroad Yard PCB Litig. v. Southeastern Pennsylvania
    Transp. Auth.,
    35 F.3d 717 ..........................................................................8, 10

Pappas v. Sony Electronics, Inc.,
    136 F. Supp. 2d 413 (W.D. Pa. 2000) ......................................10

Rapp v. Singh,
    2001 U.S. Dist. LEXIS 5705 (E.D. Pa. May 1, 2001) ............................13

Reiff v. Convergent Technologies,
    957 F. Supp. 573 (D.N.J. 1997) ...............................................8

Saldana v. Kmart Corp.,
    84 F. Supp. 2d 629 (D.V.I. 1999), aff'd in part and rev'd in part,
    260 F. 3d 228 (3d Cir. 2001)....................................................13

Surace v. Caterpillar, Inc.,
    111 F.3d 1039 (3d Cir. 1997)...................................................11

SL1 451928v1/05843.001

## I. **INTRODUCTION**

Defendant, Northwestern Mutual Life Insurance Company ("Northwestern") previously filed a Motion in Limine to preclude evidence including Plaintiff's medical reports and articles, testimony from Plaintiff regarding the demeanor of Defendant's employees and expert testimony from Dr. Borgan. Exclusion of this evidence is proper because the medical reports and medical articles are inadmissible hearsay; plaintiff has not identified any expert medical witness to testify that the medical journal articles are authoritative and that their opinions were based upon the articles; and, the opinions contained in the articles would not withstand a Daubert challenge.

Northwestern also seeks exclusion of any expert testimony of Dr. Borgan because Plaintiff failed to identify him as an expert witness, failed to disclose the information required pursuant to Rule 26 of the Federal Rules of Civil Procedure, and, most importantly, because Dr. Borgan's "expert" testimony would not withstand a Daubert challenge.

Finally, Northwestern also moved to preclude any testimony from Plaintiff regarding conversations in which Northwestern employees allegedly made insensitive remarks. Exclusion is proper because the conversations are irrelevant and the testimony would cause unfair prejudice.

1

Plaintiff's memorandum in opposition to Northwestern's motion does not undermine any of Northwestern's positions. Moveover, Dr. Borgan's deposition testimony enhances Northwestern's position as his factual admissions confirm that his testimony is improper under Daubert.

## II. ARGUMENT

### A. Dr. Seidman's Attending Physician Reports Are Hearsay.

There is no doubt that the medical reports are hearsay and inadmissible. Further, the reports are not independently admissible under any exception to the hearsay rule. Bobb v. Modern Products, Inc., 648 F.2d 1051, 1055 (5th Cir. 1981) (cross-examination which attempts to impeach a witness by using hearsay evidence (medical report) will not be permitted); Emigh v. Consolidated Rail Corporation, et al., 710 F. Supp. 608, 610 (W.D. Pa. 1989).

Plaintiff, however, claims the attending physician statements from Dr. Seidman "are being offered not to 'prove' Plaintiff was disabled, but rather as three-fold evidence of other matters." (Plaintiff's Brief, p. 5). These matters allegedly include evidence that (1) Plaintiff complied with the terms of the policy by timely submitting medical forms, (2) that the opinions in the reports were consistent and corroborate the opinion of Dr. Borgan, and (3) to show that Northwestern terminated benefits without a change in Plaintiff's treating physicians' opinions.

Plaintiff's dubious arguments cannot hide the fact that she is attempting to get hearsay evidence before the jury precisely for the purpose of attempting to prove the opinions expressed in those reports, i.e,. that plaintiff should avoid the stress of trial law to prevent a recurrence of her cancer. Indeed, if plaintiff were truly interested in proving the matters outlined above, the solution is not to present improper hearsay to the jury. Instead, the solution is for the parties to stipulate that plaintiff timely submitted attending physicians' statements, that Dr. Seidman's opinions were consistent and that Northwestern terminated plaintiff's benefits even though her treating physicians did not change their opinions.

These stipulations would satisfy plaintiff's alleged "need" for this evidence, and yet exclude the hearsay opinions contained therein. Because it is unlikely that plaintiff would willingly enter such a stipulation (and thereby lose the chance to give the jury hearsay opinions), Northwestern's motion in limine to exclude the attending physician reports should be granted.

## B. **The Medical Journal Articles Are Hearsay.**

Plaintiff identified medical journal articles (the "Ramirez," "Spiegel," "Levy" and "Anderson" articles attached with expert reports at Exhibit A) which are hearsay and are not excepted by Fed. R. of Evid. 803(18). In fact, Dr. Borgan's testimony confirms that plaintiff has not laid a foundation for the Rule 803(18)

3

exception. Dr. Borgan did not testify that he relied on the articles as a basis of his opinion. Nor did he establish that the articles were reliable authorities. Indeed, Plaintiff cannot establish that these articles are reliable authorities because Northwestern's expert, Dr. Weber, has already commented on them and found them unreliable. The articles are therefore hearsay and inadmissible.

Trying to avoid the hearsay problem, plaintiff's claims she is not offering the articles for proof of the matter asserted, but rather for other purposes. She purportedly wants to use the articles to attack Northwestern's medical director's credibility because he will testify that he was unaware these articles. But the premise of the proposed cross examination is based on the assumption that the studies are reliable, which they are not. Plaintiff should not be allowed to use unreliable studies to cross examine a witness because such cross examination is nothing more than a "back door" way to get inadmissible and unreliable evidence before the jury.

However, if plaintiff wants to introduce medical journal articles that allegedly support a link between stress and cancer recurrence, she must identify an expert witness who relied upon "reliable" articles to form the basis of his opinion. Plaintiff has not done this.

Plaintiff claims the articles are admissible to show Northwestern's conclusion that there were no studies supporting a relationship between stress and

4

cancer recurrence was in error.  But the articles do not support the proposition plaintiff claims.  Rather, they suggest a relationship between stress reduction and "killer cells" or suggest the possibility of a relationship between stress and the recurrence of cancer.  These studies only suggest the possible relationship between stress and killer cell activity or recurrence and do not stand for the proposition that stress can cause recurrence of cancer.  In any event, the articles are hearsay and are inadmissible.

Plaintiff also claims the articles can be used to attack the credibility of a Northwestern employee who said Northwestern's medical employees had "researched the heck out of it."  (Plaintiff's Brief, p. 7).  Once again, plaintiff's argument fails because plaintiff has not, and cannot, lay a proper foundation (i.e. that the articles are reliable) as she must do before cross examining any witness with the articles.

Finally, plaintiff claims she will be at a severe disadvantage if she cannot use the articles to cross-examine Northwestern's expert, Dr. Weber. (Plaintiff's Brief, p. 8).  But plaintiff still has to lay a proper foundation for using the articles.  This entails having an expert testify that the articles are reliable.

Specifically, the hearsay exception in Rule 803(18) requires that the treatises "be established as a reliable authority" before they can be used (even then, they cannot be read to the jury).  Dr. Weber, however, has already stated that the

articles are not reliable.  (See Exhibit A).  And plaintiff has not obtained testimony from any other expert (including Dr. Borgan) to establish that the articles are reliable.  In short, absent a proper foundation that confirms the reliability of the articles, plaintiff cannot use the articles to cross examine Dr. Weber.

Finally, Plaintiff claims the medical articles were listed as exhibits on Northwestern's exhibit list and therefore she should be able to use them also. Northwestern only identified the exhibits in case the Court would allow the introduction of these exhibits.  If so, Defendant intends to use the exhibits in Dr. Weber's deposition to establish that they are not reliable.  Accordingly, Defendant's Motion in Limine must be granted.

## C.  Dr. Borgan's "Expert" Testimony Is Not Admissible.

Northwestern moved to exclude the untimely designated expert witness, Dr. Borgan, because of plaintiff's late identification of Dr. Borgan and because Dr. Borgan's "expert" testimony would not survive a Daubert challenge. Plaintiff's response to this argument is that Dr. Borgan is not offering expert testimony, but rather is offering testimony as plaintiff's treating physician (Plaintiff's brief, pp. 10-11).  But there is no question that where a treating physician offers opinions -- such as the opinion that plaintiff had to avoid stress to limit risk of cancer recurrence -- such opinions are subject to Daubert.  As such,

6

Plaintiff must abide by the federal rules and the requirements of <u>Daubert</u>.  Dr.

Borgan's testimony satisfies neither.

### 1.  Legal Standard Governing Daubert Motions.

### The Daubert Opinion

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993)

(Blackmun, J.), the Supreme Court held that a district court "must ensure that any

and all scientific testimony or evidence admitted is not only relevant, but reliable."

<u>Id.</u> at 589.  As a result, a district court must stand as the "gatekeeper" to the

admission of expert reports and testimony at trial.  <u>Id.</u> at 589-93.

The <u>Daubert</u> Court refused to "set out a definitive checklist" of factors

that bear on the district court's inquiry, but offered "some general observations."

<u>Id.</u> at 592.  Specifically, the Supreme Court discussed testing, peer review,

publication, error rates, the existence and maintenance of standards, and general

"acceptability" in the relevant scientific community, some or all of which might

prove helpful in determining the reliability of a particular "scientific theory or

technique."  <u>Id.</u> at 593-94.  As a result, relevant factors to be considered by a court

to determine if the proposed testimony is derived from reliable evidence include:

> (1)  whether the proposed expert's theory or hypothesis can be and
> has been tested;
>
> (2)  whether the theory or technique has been subject to peer review
> and publication;

7

(3)    what is the known or potential rate of error;

(4)    the existence of standards controlling the technique's operation;

(5)    whether the methodology has been generally accepted in the relevant scientific community;

(6)    the relationship of the proposed method or methodology to methods or methodology that have been shown to be reliable;

(7)    the qualification of the expert witness; and

(8)    the non-judicial uses to which the method has been put.

Daubert, 509 U.S. at 592-594; Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000) (McKee, J.), cert. denied, 121 S. Ct. 1357 (2001); Elcock v. Kmart Corp., 233 F.3d 734, 745-46 (3d Cir. 2000) (Becker, C.J.); In re Paoli Railroad Yard PCB Litig. v. Southeastern Pennsylvania Transp. Auth., 35 F.3d 717, 742 and n.8 (3d Cir. 1994) (Becker, J.), reh'g denied, 1994 U.S. App. LEXIS 29233 (3d Cir. Oct. 14, 1994), cert. denied, 513 U.S. 1190 (1995); see also Reiff v. Convergent Technologies, 957 F. Supp. 573, 577 (D.N.J. 1997) (Irenas, J.).  These factors have been referred to as the "Daubert factors."

        The Daubert Court also emphasized that the "inquiry envisioned by Rule 702 is … a flexible one," and noted that the "focus … must be solely on principles and methodology, not on the conclusions they generate."  Id. at 595. Finally, the Court held that the proponent of the expert testimony and report alone bears the burden of demonstrating admissibility.  Id. at 593 (citing Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)).

8

**The Joiner Opinion**

In General Electric Co. v. Joiner, 522 U.S. 136, 146-47 (1997), the Supreme Court clarified the scope of its holding in Daubert.  There, the Supreme Court first held that the correct standard of review of evidentiary rulings, including Daubert motions, is for abuse of discretion.  522 U.S. at 142.  Moreover, the Supreme Court rejected the petitioner's argument[1] that the district court had committed legal error when it disagreed with the conclusions the expert drew from the studies he had performed:

> [C]onclusions and methodology are not entirely distinct from one another.  Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

Id. at 146 (emphasis added).[2]

### Third Circuit Application of Daubert And Its Progeny

The Third Circuit has repeatedly affirmed the exclusion of proposed expert testimony under Daubert.  Three concepts are critical:  (1) an expert may not merely rely on his or her own intuition without proper testing or investigation of a

---

[1]   The petitioner had based its argument on the language in Daubert, quoted supra, that the "focus … must be solely on principles and methodology, not on the conclusions they generate."  509 U.S. at 595.

9

hypothesis; (2) the district court's role as a gate keeper requires it to exclude testimony that is unreliable under <u>Daubert</u>; and (3) a failure to satisfy <u>Daubert's</u> standards may not be cured by subjecting the expert to cross examination.

First, <u>Daubert</u> requires proper testing by the expert of the proposed opinion to satisfy the need for reliability. Simply put, experts may not rely on their own mere intuition alone. Or, as one District Court aptly observed, "before the gates to the courtroom will be opened in this Circuit, a proposed expert must do more than simply say 'let me in (because I say so).'" <u>Pappas v. Sony Electronics, Inc.</u>, 136 F. Supp. 2d 413, 422 (W.D. Pa. 2000).

For example, in <u>Oddi v. Ford Motor Co.</u>, 234 F.3d 136, 158 (3d Cir. 2000) (McKee, J.), <u>cert. denied</u>, 121 S.Ct. 1357 (2001), the Court held that expert testimony was properly excluded where the expert conducted no tests and "used little, if any, methodology beyond his own intuition." The Third Circuit has reached similar conclusions in numerous other cases. <u>E.g.</u>, <u>Lithuanian Commerce Corp. v. Sara Lee Hosiery Corp.</u>, 179 F.R.D. 450, 456-458 (D.N.J. 1998) (Orlofsky, J.), <u>aff'd</u>, 2000 U.S. App. LEXIS 31996 (3d Cir. Nov. 13, 2000) (Garth, J.) (NOT FOR PUBLICATION) (affirming <u>Daubert</u> analysis excluding damages expert); <u>In re Paoli Railroad Yard PCB Litig. v. Southeastern Pennsylvania Transp.</u>

---

[2]  *Ipse dixit* is defined in Black's Law Dictionary as "a bare assertion resting on the authority of an individual." Black's Law Dictionary 828 (6th ed. 1990).

Auth., 35 F.3d 717, 762 (3d Cir. 1994) (Becker, J.) (affirming district court's

exclusion of proposed experts where witnesses' conclusions were based only on

plaintiff's self representations, and calling such information unreliable), reh'g

denied, 1994 U.S. App. LEXIS 29233 (3d Cir. Oct. 14, 1994), cert. denied,

513 U.S. 1190 (1995); Surace v. Caterpillar, Inc., 111 F.3d 1039, 1055-56 (3d Cir.

1997) (Becker, J.); Government of Virgin Islands v. Sanes, 57 F.3d 338, 341 (3d

Cir. 1995) (Nygaard, J.) (district court did not abuse its discretion in excluding

unreliable testimony).

   Other Circuits agree that an expert cannot rely on intuition alone.

Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1084 (8th Cir. 1999) (Hansen,

J.)(affirming exclusion due to a lack of proper testing which rendered the opinion

little more than "unabashed speculation"); Minasian v. Standard Chartered Bank,

PLC, 109 F.3d 1212, 1216 (7th Cir. 1997) ("Our district judge was not snookered"

by witness' testimony which made conclusions without analysis).

   Second, while exclusion is within the Court's discretion, exclusion is

required where Daubert and its progeny are not satisfied.  For example, in Elcock

v. Kmart Corp., 233 F.3d 734, 750 (3d Cir. 2000), the Third Circuit held that the

district court erred by allowing a vocational rehabilitation expert to testify given

"serious doubts" about his methods.  Moreover, the Elcock Court held that the

District Court erred by admitting an expert's testimony on damages when the

11

"economic damages model relied on several empirical assumptions that were not supported by the record." Id. at 755-56. See also Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1056-57 (8th Cir. 2000), cert. denied, 121 S. Ct. 428 (2000).

Third, unreliable expert testimony cannot be admitted under the assumption that it is subject to cross examination and the fact finder can properly weigh the testimony. As one court cautioned: "[W]e must resist the temptation to answer objections to receipt of expert testimony with the shorthand remark that the [fact-finder] will give it 'the weight it deserves.'" Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 569 (D.C. Cir. 1993) (citations omitted), reh'g denied, 1993 U.S. App. LEXIS 34667 (D.C. Cir. Sept. 21, 1993).

This same issue was addressed in Lithuanian Commerce Corp., where the District Court held:

> To conclude that evidence is admissible because it is subject to such safeguards [of cross examination] is, therefore, circular. Consequently, I find that it was error for Judge Rosen, in exercising his gatekeeping function, to premise his determination of admissibility on Sara Lee's ability to rebut the proffered testimony.

179 F.R.D. at 458-59.

Applying these concepts, district courts within the Third Circuit have granted Daubert motions in a variety of contexts. See, e.g., Rapp v. Singh, 2001 U.S. Dist. LEXIS 5705 at *33 (E.D. Pa. May 1, 2001); Saldana v. Kmart Corp., 84

12

F. Supp. 2d 629, 635 (D.V.I. 1999), aff'd in part and rev'd in part, 260 F. 3d 228

(3d Cir. 2001).

### 2. Dr. Borgan's Testimony Is Inadmissible.

### Analogous Cases Applying Daubert Standards

There are a number of cases which have dealt with issues similar to

those presented here. Two good examples are Meister v. Medical Engineering

Corp., 267 F.3d 1123, 1126-32 (D. D.C. 2001), and In re: Breast Implant

Litigation, 11 F. Supp 2d 1217, 1233 n. 4 (D. Col. 1998). Both of these cases dealt

with claims that defective silicone breast implants caused personal injuries. More

importantly, both cases dealt with medical expert opinions which were not

supported by proper scientific evidence.

First, both courts dealt with the insufficiency of having treating

doctors offer causation evidence based on their treatment of the plaintiffs and the

resulting "differential diagnosis" (i.e., reaching a conclusion about the cause of an

illness based on eliminating other possible causes). 267 F.3d at 1129; 11 F. Supp.

at 1229. Neither court found this type of analysis proper for supporting an expert

opinion under Daubert.

The In re: Breast Implant Litigation case also dealt with physicians

offering causation evidence based on their "clinical experience." 11 F. Supp. 2d at

1230. The court held that clinical experience is little more than reliance on a series

13

of case reports (i.e., observations on a variety of specific patients).  The <u>In re:</u>

<u>Breast Implant Litigation</u> court held that such evidence was inadmissible because

such case reports lack the controls found in controlled clinical studies and are

therefore "universally regarded as an insufficient scientific basis for a conclusion

regarding causation…." 11 F. Supp. 2d at 1230 (citation omitted).

Next, both courts dealt with physicians offering opinions that are not

supported by reliable medical articles or studies.  For example, in <u>Meister</u>, the

Court held that a treating physician's reliance on studies that merely suggested

(without establishing) causation was insufficient:

> Regarding the literature that he reviewed, Dr. Borenstein
> did not testify that any of the studies had actually
> concluded that scleroderma was caused by silicone breast
> implants.  At most, his testimony revealed that the
> authors indicated that their observations support or
> "suggest" a role for silicone in the etiology of
> scleroderma.

267 F.3d at 1129.  Similarly, the <u>In re:  Breast Implant Litigation</u> Court held that a

number of experts could not testify where they conceded there was no definite

support for their opinions or where the studies either (a) indicated a lack of support

for the opinion, or (b) reached a different conclusion than the witness.  11 F. Supp.

2d at 1236 and 1237.

14

In short, contrary to plaintiff's approach with Dr. Borgan, "[a] statement does not become scientific knowledge because it is uttered by a doctor." 11 F. Supp. 2d at 1234.

### Dr. Borgan's Testimony Lacks The Requisite Scientific Support

Dr. Borgan's testimony must be excluded when the <u>Daubert</u> factors are applied. First, Dr. Borgan's opinion that stress reduction will decrease the risk of cancer recurrence has not been tested or proved. In fact, Dr. Borgan admitted that there is currently no scientific proof of a relationship between stress reduction and recurrence in cancer. (Dr. Borgan's Testimony, pp. 40-41, 45-46, attached as Exhibit B). Dr. Borgan also candidly acknowledged that he has never conducted any relevant research and admitted that he could not prove his hypothesis scientifically. (Borgan Dep. Transcript, pp. 11-16, attached as Exhibit C).

Dr. Borgan's opinion also has not been subjected to peer review and publication. Dr. Borgan's mere statement that there is support in the medical literature for his proposition does not meet the <u>Daubert</u> mandate and does not reveal the basis for his alleged opinion. <u>In re: Breast Implant Litigation</u>, 11 F. Supp 2d at 1233 n. 4.

Dr. Borgan's opinion is therefore no more admissible than Dr. Borenstein's opinion which the Court held inadmissible in <u>Meister</u>, 267 F.3d at 1129. Like the opinion in <u>Meister</u>, Dr. Borgan's opinion is based on, at most,

15

medical literature that does not establish that stress will cause increased risk of cancer recurrence.

Dr. Weber's report confirms the deficiencies in Dr. Borgan's approach. Contrary to the position expressed by Dr. Borgen, Barbara L. Weber, M.D., the Director of the Breast Cancer and Genomics Program at the University of Pennsylvania, has stated that there is no standard of care in the treatment of Stage II breast cancer that dictates that otherwise healthy patients should avoid stress to lower the risk of a recurrence of the disease. This opinion is generally accepted in the oncologic community and is supported by the National Cancer Institute. (See Exhibit A (report and referenced articles)).

Dr. Weber also found no reliable evidence in the medical literature to support the position that stress may increase the risk of recurrence. The articles by Ramirez and Chen[3] were based upon studies of small subject groups and the methods employed were subsequently criticized.[4] Subsequent studies refuted the

---

[3]    Ramirez, A., Craig, T., Watson, J., Fentiman, I., North, W., and Rubens, R. Stress and the relapse of breast cancer. BMJ (1989) 298: 291-293.

Chen, C., David, A., Nunnerly, H. Mitchell, M. Dawson, J., Berry, H. Dobbs, J. and Fahy, T. Adverse life events and breast cancer. BMJ (1995) 311: 1527-1530.

[4]    McGhee, R., Williams, S. and Ellwood, M. Are life events related to the onset of breast cancer? Psychol Med (1996) 15: 361-387.

16

findings of the earlier studies.[5]  A recent meta analysis which attempts to combine the data of smaller trials, failed to support the hypothesis that stress causes cancer.[6] Furthermore, although there are studies that suggest that stress induces changes in the immune system, these studies do not support the proposition that stress leads to an increased risk of recurrence of breast cancer.[7]

Finally, Dr. Borgan did not testify as to what methodology he relied upon in forming his opinion and whether the methodology has been generally accepted in the scientific community.  Basically, Dr. Borgan relied upon his clinical experience and what he believes the practice at other cancer centers to be in formulating his opinion.  However, as noted above, opinions based on clinical experience are unreliable and do not satisfy Daubert.  In re:  Breast Implant Litigation, 11 F. Supp. at 1230.

---

[5]   Protheroe, D., Turvey, K., Horgan, K., Bensen, E., Bowers, D., House, A.  Stressful life events and difficulties and onset of breast cancer:  case-control study.  BMJ (1999); 319: 1027-1030.

Barraclough, J., Pinder, P., Cruddas, M., Osmond, C. Taylor, I., and Perry, M.  Life events and breast cancer prognosis.  BMJ (1992) 304: 1078-1081.

[6]   Petticrew, M. Fraser, J. and Regan M.  Adverse life events and the risk of breast cancer: a meta analysis.  Br. J. Health Psychol (1999) 4: 1-7.

[7]   Levy, S. Herberman, R., Lippman, M. and d'Angelo, T.  Correlation of stress factors with sustained depression of natural killer cell activity and predicted prognosis in patients with breast cancer.  JCO (1987) 5: 348-353.

Anderson, B., Farrar, W., Golden, Kreutz, D., Kutz, L., MacCallum, R., Courtney, M. and Glaser, R.  Stress and the immune response after surgical treatment for regional breast cancer. JNCI (1998) 90: 30-36.

17

## Plaintiff Cannot Avoid <u>Daubert</u>
## By Characterizing Dr. Borgan As A "Fact" Witness

Plaintiff claims <u>Daubert</u> is inapplicable because Dr. Borgan is Plaintiff's "treating physician" and not an expert witness identified under Rule 26 of the Federal Rules of Civil Procedure. Plaintiff's argument amounts to nothing more than a "back door" attempt to introduce evidence that is inadmissible under <u>Daubert</u> by characterizing Dr. Borgan as a non-expert "fact" witness. Plaintiff's argument finds no support under Rule 26, applicable law or common sense.

First, Rule 26 does not support plaintiff's argument. As the comment to the Rule makes clear, a treating physician may be excused from preparing an expert report in some cases where the physician has not been specifically retained to testify in Court.[8] This does not mean, however, that the physician's opinions can be equated with mere "factual" testimony that is not subject to <u>Daubert</u>.

---

[8] One of the comments to Rule 26 states:

> For convenience, this rule and refused Rule 30 continue to use the term "expert" to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters. The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report. By local rule, order, or written stipulation, the requirement of a written report may be waived for particular experts or imposed upon additional persons who will provide opinions under Rule 702.

> Thus, although Plaintiff may not have to provide a report pursuant to Rule 26, Dr. Borgan's testimony must still satisfy the <u>Daubert</u> requirements.

18

In other words, even if Dr. Borgan does not need to provide an expert report under Rule 26 because he is a treating physician, he is still offering expert medical testimony. Rules of Evidence 701 and 702 make this clear.

Rule 701 of the Federal Rules of Evidence specifically prohibits "fact" witnesses from offering opinions based on scientific, technical or other specialized knowledge within the scope of Rule 702. Under Rule 702, the evidence must be the product of reliable principles and methods. Dr. Borgan's testimony is clearly based on specialized knowledge. Thus, his testimony must meet the mandates of <u>Daubert</u> and Rule 702.

It is therefore not surprising that the courts apply <u>Daubert</u> to expert witnesses who are also a parties' treating physician. Indeed, this happened in both <u>Meister</u> and <u>In Re: Breast Implant Litigation</u>, where plaintiff's experts included treating physicians whose opinions were scrutinized under <u>Daubert</u>. <u>See</u>, <u>Meister</u>, 267 F.3d 1123, 1126-32; <u>In Re: Breast Implant Litigation</u>, 11 F. Supp. 2d at 1229-1240.

## Plaintiff's Erroneous "No Prejudice" Argument

Finally, plaintiff argues that even if Dr. Borgan is a Rule 26 expert, Northwestern cannot establish prejudice because it had his reports for years. (Plaintiff's Brief, p. 12). But Northwestern did not have the basis for Dr. Borgan's opinion. In fact, the basis for Dr. Borgan's opinion is still unclear. In his video

19

taped trial testimony, he merely stated that he relied on medical literature in forming his opinion, without identifying the alleged literature supporting his opinions.[9]  Plaintiff's "no prejudice" argument therefore fails.

More importantly, the issue is not one of prejudice.  Rather, the issue is whether Dr. Borgan's opinion satisfies Daubert.  If (as here) the opinion does not satisfy Daubert, it cannot be admitted under the notion that Northwestern can effectively cross examine and the jury can give the opinion its proper weight.  Joy, 999 F.2d at 569; Lithuanian Commerce Corp., 179 F.R.D. at 458-59.

Accordingly, Dr. Borgan's testimony must be precluded.

### D.  Plaintiff's Testimony About The Demeanor of Defendant's Employees Must Be Precluded.

Plaintiff should be precluded from introducing any testimony about the alleged demeanor of Northwestern's employees because such testimony is not relevant to any of the issues in this case.  Fed. R. of Evid. 402.  Even if this evidence were relevant, any probative value is substantially outweighed by the danger of unfair prejudice to Northwestern.  Fed. R. of Evid. 403.

Plaintiff, however, claims it would be unfair to allow Northwestern to introduce evidence of "unjustified snipes" at plaintiff and "unflattering portrayal of

---

[9]    As noted earlier, this is not sufficient to meet the Daubert mandates. In Re:  Breast Implant Litigation, 11 F. Supp. 2d 1223 (Reference to unspecified abstracts and articles does not comply with Rule 26 and witness will not be permitted to express opinion based upon such literature).

her" and not allow plaintiff to testify about the demeanor of Northwestern's employees.[10]  Northwestern believes that if the Court limits the testimony to issues that are relevant in this case, Northwestern will not introduce any evidence of "unjustified snipes" at plaintiff and plaintiff will be precluded from introducing irrelevant and prejudicial testimony about the alleged conduct of one of its employees.  This would resolve these issues.

### III.  CONCLUSION

For the foregoing reasons, Northwestern respectfully requests this Court to grant its motion in limine.

Dated:  June _14_, 2004

STEVENS & LEE

By _____

E. Thomas Henefer
Attorney I.D. No. 55773
Kirk L. Wolgemuth
Attorney I.D. No. 45792
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania  19603
(610) 478-2000

Attorneys for Northwestern Mutual Life
Insurance Company

---

[10]  Northwestern does not know what plaintiff means by "unjustified snipes."  Northwestern's witnesses are expected to offer only factual information during the trial.

## CERTIFICATE OF COUNSEL

I, Kirk L. Wolgemuth, Esquire, certify that the number of words in the foregoing brief is 4854.

_____
Kirk L. Wolgemuth

22

## <u>CERTIFICATE OF SERVICE</u>

I, KIRK L. WOLGEMUTH, ESQUIRE, certify that on this date, I

served a certified true and correct copy of the foregoing Defendant's Reply Brief

In Support Of Motion In Limine upon the following counsel of record, by

depositing the same in the United States mail, postage prepaid, addressed as

follows:

> Archie V. Diveglia, Esquire
> Diveglia and Kaylor, P.C.
> 2 Lincoln Way West
> New Oxford, Pennsylvania 17350

_____
Kirk L. Wolgemuth

Date:  June _14_ 2004

SL1 451928v1/05843.001