

ORIGINAL

FILED
HARRISBURG, PA

JUN 2 2 2004

MARY E. D'ANDREA, CLERK
Per ______

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA ANNE DIVEGLIA | § | |
| formerly CYNTHIA ANNE KAYLOR | § | |
| Plaintiff | § | |
| | § | Civil Action No. 1 CV-00-1342 |
| v. | § | |
| | § | |
| NORTHWESTERN MUTUAL LIFE | § | |
| INSURANCE COMPANY | § | |
| Defendant | § | (Judge James McClure) |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF A PORTION OF ORDER OF JUNE 17, 2004**

## I. STATEMENT OF RELEVANT FACTS

Plaintiff's Complaint in this action is for continuation of disability benefits under a specialty policy of defendant with that specialty being trial lawyer under the contract, there was but a singular duty for that specialty: Courtroom advocacy. (App. 1). Plaintiff did not plead in the alternative a claim for proportionate benefits. (App. 2) Defendant in its affirmative defenses specifically stated she was not disabled within the meaning of the policy (App. 3, Affirmative defense 5). Defendant terminated Plaintiff's disability benefits on April 14, 2001, setting forth

as the singular reason for termination that medical documentation provided did not support ongoing disability due to medical restrictions or limitations (App. 4). The termination letter further stated that, "As a result [lack of medical documentation] this disability claim has been terminated." (App. 4)[1] Thus, Northwestern clearly stated there was not an alternative claim for proportionate disability.

The adjuster who terminated benefits, Suzanne Balestreri and the adjuster who reviewed that decision, Sharon Hyde, both testified that this alleged lack of medical documentation was the sole reason benefits were terminated (App.5, N.T.10(13-25), 11(1-23); App.6 N.T. 11(1-20), 12(3-7), 28(13-19). A supervisor who also was involved in the claim testified that termination letters set forth a full laundry list of reasons for termination, but this particular letter had only the one specific reason, i.e. lack of medical documentation. App. 7 (N.T. 33 (23-25) , N.T. 34 (1-5).

Defendant's Claims Manual interpreting its policy clearly states as long as Plaintiff is disabled as a Trial Lawyer, regardless of the income she earned, she was entitled to disability and the benefits were due and payable. (App. 1, pages 11,12) Although the policy provides for proportionate disability, that

[1] Item in bracket added for clarity.

proportionate disability comes into play only when the insured is unable to perform one or more but not all of the principal duties of the regular occupation. (App. 8 p. 5, Section 1.5) However, as is set forth under the Claims Manual, an insured trial attorney has "only one principal duty (courtroom advocacy) . . ." (App. 1 p. 11, Example 3

Thus, a specially insured trial lawyer, such as Plaintiff, with the singular duty of courtroom advocacy is totally disabled under the policy if she cannot do courtroom advocacy, even if she can do all the other duties normally associated with trial work. Therefore, a specialty insured trial lawyer, by defendant's definition, cannot be proportionately disabled because the definition of proportionate disability requires multiple duties, whereas an insured trial lawyers by defendant's definition, for policy purposes, has but a singular duty, courtroom advocacy.

## II. ISSUE

WHETHER THE COURT'S BASIS FOR ALLOWANCE OF OCCUPATIONAL AND INCOME INFORMATION WAS FACTUALLY CORRECT? (p. 12-13 of Memorandum)

## III. DISCUSSION

**The Court's belief that a variety of occupational and income**

**information is admissible at trial "Because Plaintiff largely failed to provide Financial and occupational information defendant eventually discontinued benefits because it believed that the only information plaintiff did provide, medical information, was insufficient to establish total disability under the policy" is factually incorrect.**

Certainly, the defendant wanted a variety of information ranging from work logs and time slips to income tax returns. And certainly the defendant threatened to discontinue benefits if they did not receive such information. Nonetheless, the clear ,singular reason given for termination of benefits was lack of **medical** documentation.

The termination of Plaintiff's benefits for "lack of medical documentation" is clearly set forth in the termination letter (App. 4) and verified under oath in the depositions of the adjusters involved. (App.5, N.T. 10 (13-25), 11(1-23) and (App. 6. N.T. 11(1-20), 12 (3-7); 28 (13-19). Typically, all reasons are set forth in the termination letter. Here there was only the singular reason: "Lack of medical documentation." (App.7 N.T. 34(2-5)). The financial and occupational information requested would not address the critical question of whether or not the Plaintiff's condition would allow her to perform her singular duty as defined -

Courtroom advocacy. Only medical information could answer that question, and this the defendant believed it was not provided. As such, what is of consequence to the trial determination is evidence relating to whether Plaintiff had submitted sufficient medical documentation to be disabled from courtroom advocacy. If the Court is correct that the lack of providing financial and occupational information was needed to determine continuing disability, surely, the termination letter which typically sets forth all the reasons for terminating benefits would have so stated and so would the adjusters involved.

Of further importance is Defendant did not even plead this as a basis for termination either in its' answer or in any affirmative defense. Defendant's answer to Paragraph 9 of Plaintiff's Complaint (termination was for lack of medical documentation) admits that this was the basis of the denial of the claim, although Defendant did state "it is denied the averments in paragraph 9 of the complaint accurately or completely summarize the relevant terms of the letter which is in writing and speaks for itself." However, nothing in that letter refers to denying further benefits for any other reason. Nothing is mentioned about lack of financial or occupational information. (App. 4)

Plaintiff's earnings as reflected in her W-2's and corporate fees earned and in other records in no manner indicates the nature of her work duties after she returned to her office in February 1998. Again, under the policy, Plaintiff was permitted to return to employment and earn an unlimited income. Her disability benefits are only affected if she advocated before the court. (App. 1 )

The introduction of such evidence will be prejudicial to Plaintiff because once the jury learns of her earning, they, in all probability will conclude that Plaintiff was not substantially financially harmed, despite her disability. It will be difficult enough for the jury to comprehend the difference between principal duties of a trial lawyer as a matter of daily practice from the extremely limited singular duty under the contract. Introduction of income information will blur even further the issue they need to focus upon. Thus, their attention will be improperly diverted and the basis for the jury's verdict would be for a reason not related to the terms of the contract.

The court's second reason for allowance of financial information that "Moreover, defendant can also defend on the ground that Plaintiff was actually

proportionately disabled rather than totally disabled, which directly implicates plaintiff's financial and occupational status"(Memorandum at 12-13), is neither pleaded, nor contractually possible under this particular specialty policy.

Plaintiff did not plead proportionate disability as alternative payment. Defendant did not plead the defense of proportionate disability. In fact, its affirmative defense 5, specifically states she is not disabled within the meaning of the policy. This is consistent with the termination letter which states "As a result, this disability claim is terminated." (App. 4 ) Nothing in the letter states that there is a possible, lesser claim for proportionate disability. Rather, it states with finality the claim is terminated.

Further, the way the proportionate disability portion of the policy is written, a specialty occupation would not be eligible for proportionate benefits because it refers to principal duties, whereas, an insured trial lawyer, under the policy, has but a principal duty: courtroom advocacy. (App. 1) Thus, the insured can either not be able to do this duty and thereby be totally disabled, or do this duty no matter how limited, and thereby not be able to meet the definition of proportionate disability, i.e. "To perform one or more but not all the principal duties of the

regular occupation." For the specialty insured, if courtroom advocacy can be done, there are no other principal duties not to perform, so there is no proportionate disability.

The court's reference, to the defendant being able to defend the case on this basis when it was not pleaded nor does it seem contractually possible, gives the defendant two chances of prevailing. First, the income information will seriously divert the juries attention from the issues and facts of the specific policy in question. Second, even if the jury awards proportionate benefits, defendant may appeal on the basis such benefits are not available under the policy for the speciality occupation of trial lawyer.

Therefore, as part of its reconsideration, if the court affirms its Order and allows the income information into evidence, Plaintiff should thereby be allowed to assert proportionate disability as an optional finding by the jury.

## IV. CONCLUSION

The issue of proportionate benefits should be reconsidered by the court because: (a) a claim for proportionate benefits is not a claim brought in the pleadings of the Plaintiff; ( b) proportionate benefits is not a defense raised by the defendants either in their answer or in an affirmative defense to the Plaintiff's

claim; ( c) was not identified by Northwestern as a possible alternative claim in its termination letter; (d) it is not an option available under the subject policy for policy holders insured in the speciality profession of a trial lawyer; and (e) it's consideration would divert, prejudice, and confuse the jury. The simple issue before the jury in this claim, is whether or not the Plaintiff was totally disabled, according to the terms of her disability policy with Northwestern. For these reasons, Plaintiff respectfully requests this Honorable Court to reconsider that portion of the June 17, 2004 order to exclude the income information and occupational information from evidence at the trial of this matter.

Respectfully submitted,

By: ____________________

Archie V. Diveglia. Esq.
PA. Attorney I.D. 17104
2 Lincoln Way West,
New Oxford, PA 17350
Telephone: (717) 624-2500
Fax: (717) 624-3851

DIVEGLIA AND KAYLOR, P.C.

ATTORNEY IN CHARGE FOR
Plaintiff, Cynthia A. Diveglia

**CERTIFICATE OF SERVICE**

I, ARCHIE V. DIVEGLIA, attorney for Plaintiff Cynthia A. Diveglia, on this 22 nd day of June, 2004, do hereby state that I have served a copy of Plaintiff's Brief in Support of Motion for Reconsideration upon counsel for Defendant by placing a copy of the same in the United States mail, first class, postage prepaid to:

E. Thomas Henefer, Esquire
Stevens & Lee located at
P.O. Box 679
Reading, PA 19603-0679

Respectfully submitted,

By: ______________________
Archie V. Diveglia. Esq.
PA. Attorney I.D. 17140
2 Lincoln Way West
New Oxford, PA 17350
Telephone: (717) 624-2500
Fax: (717) 624-3851

DIVEGLIA AND KAYLOR, P.C.

ATTORNEY IN CHARGE FOR
Plaintiff, Cynthia A. Diveglia